**UNITED STATES COURT OF INTERNATIONAL TRADE**

| |
|---|
| KEYSTONE AUTOMOTIVE OPERATIONS, INC., *Plaintiff,* v. UNITED STATES, *Defendant.* |

**Court No.  21-cv-00215**

## COMPLAINT

Plaintiff Keystone Automotive Operations, Inc. ("Plaintiff" or "Keystone"), by and through its undersigned attorneys, alleges and states for its complaint as follows:

### JURISDICTION

1.      This is a civil action to contest the denial of protest under Section 515 of the Tariff Act of 1930 (19 U.S.C. § 1515).

2.      The Plaintiff is the owner and importer of record of the merchandise involved in this action and is the party that caused the protest and underlying protested entry referred to herein to be filed. The Plaintiff thus has standing in this action.

3.      Protest number 4601-21-126305 that is the subject of this action was timely filed on March 9, 2021, by certified mail, return receipt requested, within 180 days of the final liquidation of the underlying protested entry.

4.      The protest that is the subject of this action was "deemed" denied pursuant to 19 U.S.C. § 1515(b) on April 8, 2021.

5.     This action was timely commenced within 180 days after the underlying protest that is the subject of this action was deemed denied pursuant to 19 U.S.C. § 1515(b).

6.     All duties, charges, and exactions assessed at liquidation pertaining to the entry protested in the protest referred to herein were paid before commencement of the action.

7.     This court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(a).

## BACKGROUND AND DESCRIPTION OF MERCHANDISE INVOLVED

8.     On August 6, 2019, Polaris Industries Inc. ("Polaris") submitted an application for exclusion from Section 301 tariffs for merchandise described as "side armor protection." (*See* Exhibit A – Polaris's Exclusion Application).

9.     On April 22, 2020, the USTR granted Polaris's application for an exclusion modifying the language from "side armor protection" to "side protective attachments." (*See* Exhibit B – USTR Letter granting the exclusion request); 85 Fed. Reg. 23122, 23130 Apr. 24, 2020. This exclusion was extended by Federal Register notice on August 11, 2020. *See* 85 Fed. Reg. 48600, 48616 Aug. 11, 2020.

10.     The full language of the exclusion granted by the USTR and published in the Federal Register reads as follows:

"Tire carrier attachments, roof racks, fender liners, *side protective attachments*, the foregoing of steel (described in statistical reporting number 8708.29.5060)" – excluded under Subheading 9903.88.56 per HTSUS Chapter 99 Note 20(iii)(213). *See* 85 Fed. Reg. 48600, 48616 Aug. 11, 2020. *Emphasis added*.

11.     As indicated in the Federal Register notice, "the exclusions are available for any product that meets the description in the Annex, *regardless of whether the importer filed an exclusion request*. Further, the scope of each exclusion is governed by the scope of the product

2

descriptions in the Annex, and not by the product descriptions set out in any particular request for exclusion." *See* 85 Fed. Reg. 48600, 48601 Aug. 11, 2020. *Emphasis added*.

12.     Polaris's exclusion application described the intended item for coverage as a metal fabricated product used to modify or accessorize trucks, jeeps, and/or SUVs for use off-road claiming that the items enhance the useability of the vehicle and offer protection to the vehicle from damage. (*See* Exhibit A). The intended item shows that it affords protection to the door panels and provides a step-up to facilitate entry into the vehicle.

13.     Plaintiff is an importer and distributor of automotive parts, components, and accessories in the United States. The imported articles that are the subject of this action include various steel side protective attachments for motor vehicles, specifically side bars, nerf bars, and bars (collectively the "Subject Merchandise"), country of origin China, entered at the CBP Port of Newark, New Jersey on November 17, 2020, under entry number 600-1015721-6 (the "Subject Entry").

14.     Plaintiff's steel side bars, nerf bars, and bars attach to the frame of a vehicle, afford protection to the door panels, and provide a step-up to facilitate entry into the vehicle.

15.     Plaintiff originally entered the Subject Merchandise under Subheading 9903.88.56, HTSUS, as the Primary Subheading, and Subheading 8708.29.5060, HTSUS, as the Alternate Subheading because the Subject Merchandise meets the description of "side protective attachments" in the Annex, for which a tariff exclusion was granted to Polaris under Subheading 9903.88.56, HTSUS.

16.     On January 11, 2021, CBP issued a Notice of Action (CBP Form 29) stating that "Side Bars or Straight Nerf Bars of this entry [did] not qualify for Exclusion order 9903.88.56. ADVISORY HTS is 8708.29.5060/9903.88.03." (*See* Exhibit C – CBP Form 29).

17.     Following this Notice of Action, Plaintiff submitted a response to CBP arguing that its Subject Merchandise qualified for the exclusion order as "side protective attachments." (*See* Exhibit D – Plaintiff's response to CBP Form 29).

18.     On February 4, 2021, CBP replied to Plaintiff's response to Notice of Action rejecting Plaintiff's arguments. (*See* Exhibit E – CBP's Reply to Plaintiff's CBP Form 29 Response).

19.     On February 5, 2021, CBP liquidated the Subject Entry with a duty rate increase of 25% *ad valorem*.

20.     The duty rate increase was the result of CBP's failure to apply duly granted Section 301 tariff exclusions to the Subject Entry.

21.     On February 19, 2021, CBP reliquidated the Subject Entry only changing the interest rate amount.

22.     On March 9, 2021, Plaintiff timely protested CBP's classification of the Subject Merchandise under HTSUS Chapter 99, the denial of the relevant exclusion, and application of Section 301 tariffs to the Subject Merchandise. *See* protest No. 4601-21-126305.

23.     On March 9, 2021, Plaintiff also submitted a proper request for accelerated disposition of the protest pursuant to 19 U.S.C. § 1515(b) and 19 C.F.R. § 174.22.

24.     On April 8, 2021, Plaintiff's protest was deemed  denied, because the Center Director failed to allow or deny Plaintiff's protest within 30 days from the date of certified mailing of the request pursuant to 19 U.S.C. § 1515(b).

25.     This action is commenced in order to challenge the denial of Plainitff's protest No. 4601-21-126305 by Defendant, acting by and through U.S. Customs and Border Protection ("CBP").

## COUNT I

26.     The allegations of Paragraphs 1 through 25 are incorporated in this Paragraph by reference as if fully set forth herein.

27.     Plaintiff paid additional Section 301 duties on the Subject Entry at the time of importation assessed pursuant to Subheading 9903.88.03, HTSUS.

28.     Plaintiff is entitled to grant of its protest in full and a refund of duties paid as the Subject Merchandise is properly excluded from additional Section 301 duties.

29.     Defendant acted contrary to law in failing to grant the protest in full and not refunding Plaintiff duties assessed pursuant to Subheading 9903.88.03, HTSUS, to which Plaintiff is entitled.

30.     Plaintiff is entitled to recover the balance of additional Section 301 duties assessed pursuant to Subheading 9903.88.03, HTSUS, paid by the Plaintiff.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment in its favor, as follows:

(a)     overruling Defendant's denial of protest;

(b)     determining that the exclusions from additional tariffs under Section 301 of the Trade Act of 1930 apply to Subject Merchandise at issue in this action, as set forth by Plaintiff in Count I above;

(c)     ordering CBP to reliquidate the Subject Entry and refund the excess duties assessed pursuant to Subheading 9903.88.03, HTSUS, paid by the Plaintiff, together with interest as provided by law; and

(d)     granting such other additional relief as this honorable Court deems just and appropriate.

Resepctfully submitted

Dated: ___2 September 2021_____

_____
Eric R. Rock, Attorney

Michael G. Hodes
Serhiy Kiyasov
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For Plaintiff Keystone Automotive Operations, Inc.*

## **CERTIFICATE OF SERVICE BY MAIL**

I, Eric R. Rock, one of the attorneys for the plaintiff, certify that a copy of the foregoing

Complaint was served on all parties by depositing a copy in a United States mail receptacle at

or before 5:00 p.m. this Thursday, September 2, 2021, in a sealed envelope with proper postage

prepaid, addressed to each party or its attorney of record at the address(es) listed below:

Justin R. Miller
Attorney in Charge
U.S. Department of Justice
International Trade Field Office
26 Federal Plaza – Room 346
New York, New York 10278

Jamie L. Shookman
U.S. Department of Justice
International Trade Field Office
26 Federal Plaza
New York, New York 10278

Dated:    2 September 2021    

Eric R. Rock, Attorney

Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

# Complaint
# Exhibit A



(https://ustr.gov/)

# USTR Comments Portal (https://comments.ustr.gov)

**PUBLIC DOCKETS (HTTPS://COMMENTS.USTR.GOV/S/)**　　　　**LOG IN (/PORTAL)**

## Submitter Information

**USTR Exclusion Request ID**
USTR-2019-0005-5879

**Full Organization Legal Name**
Polaris Industries Inc.

**Third Party**
Yes

**Third Party Organization Name**
Akin Gump Strauss Hauer and Feld LLP

## Product Description

**HTSUS Item Number**
8708295060

**Product Name**
Smittybilt-branded metal fabrications.

**Product Description (e.g., dimensions, weight, material composition, etc.)**
Polaris subsidiary TAP Worldwide's Smittybilt metal fabrications are mainly made out of hot rolled flat steel or hot rolled tube steel. The steel is bent, pressed, formed and welded. Size of steel plate is usually 3/16" and the size of the tube varies between 1"- 2". The products are finally powder coated for a retail finish.

**Product Function, Application and Principal Use**
Metal fabricated products modify or accessorize trucks, jeeps, and/or SUVs for use off-road. They enhance the useability of the vehicle while off-roading, and include tire carriers and roof racks, fender flares, inner fender lines, hitches, and side armor protection. The products carry a heavier tire or attach overlanding gear. The products protect the vehicle from damage. Please see below Summary of Requestor Argument (Additional Information) and attached Proposed HTSUS Revisions.

## Submitter Arguments

**Requestor's relationship to the product**　　　　Importer

**Is this product, or a comparable product, available from sources in the United States?**　　　　Yes

**Public summary of availability argument from the United States**

**Is this product, or a comparable product, available from source in third countries?**　　　　Not Sure

| | |
|---|---|
| **Public summary of availability argument from a third country** | Polaris is in the process of re-sourcing a portion of these products from [ ], beginning in 2020. However, manufacturing in [ ] is limited; therefore, only a portion of the product range is likely to be re-sourced. The manufacturer will only be able to produce [ ] of current purchases from China.  The risk of establishing new suppliers increases the chance of late deliveries, which can cause loss of revenue. If we were to switch suppliers, we would incur significant tooling costs and require resources to certify new suppliers and products. The tooling cost is estimated to be approximately [ ].  Polaris actively explores and quotes suppliers globally, with intentions to partner with the supplier that can meet our technical, performance, quality and cost expectations regardless of location of manufacture. Polaris currently is in phase two of a five phase, five-year project to award over $3 billion in new supply contracts which may or may not include the subject products. Polaris has invited over 400 U.S. companies the opportunity to compete for that business. |
| **Please discuss any attempts to source this product from United States or third countries.** | Polaris actively explores and quotes suppliers globally, with intentions to partner with the supplier that can meet our technical, performance, quality and cost expectations regardless of location of manufacture. Polaris currently is in phase two of a five phase, five-year project to award over $3 billion in new supply contracts which may or may not include the subject products. Polaris has invited over 400 U.S. companies the opportunity to compete for that business. |
| **Is the Chinese-origin product of concern sold as a final product or an input used in the production of a final product or products?** | Final Product |
| **Summary of Requestor Argument** | Polaris respectfully submits that USTR mitigate the impact of the Section 301 tariffs on Polaris' U.S. manufacturing jobs by exempting from the Section 301 tariffs all parts that are used in manufacturing, repair and sale of powersports vehicles including off-road vehicles, motorcycles, snowmobiles, and accessories and garments used with powersports vehicles. This can be accomplished by including the language in the attached draft Annex in a Federal Register Notice that amends Chapter 99 of the Harmonized Tariff Schedule of the United States (HTSUS). |
| **Did you submit exclusion requests for the Section 301 $34 billion (Docket ID: USTR-2018-0025), or the $16 billion (Docket ID: USTR-2018-0032) tariff actions?** | Yes |
| **Please comment on whether the particular product of concern is strategically important or related to "Made in China 2025" or other Chinese industrial programs. You must explain in the box below why you believe the product of concern is or is not strategically important or related to** | |

**"Made in China 2025" or other Chinese industrial programs.**

This product is not produced from strategic or advanced technologies. Further, it is not remotely close to the 10 categories that China is targeting for development. Moreover, it is not part of the "Four Foundations" of China's Made in China 2025 initiative (digital control machines, railway transportation equipment, aerospace and aeronautics, and power generation equipment).  As stated above, one of China's goals is to move up the value chain, advancing from low-cost manufacturing to become a "global innovation power in science and technology." Polaris's imports of this product are not going to advance China up the value chain in any way. It is a mature technology and is not considered by China to be strategic or advanced.  Moreover, Polaris has not encountered any forced technology requirements or suffered any IP theft. Likewise, Polaris is not aware of any forced intellectual property transfers or IP rights infringements having taken place with regard to this product or parts thereof, or of related technologies or manufacturing processes.  In short, the additional tariffs on imports of this product that Polaris imports from China do not in any way influence the Chinese government to alter or change the policies and practices identified by USTR in its Section 301 Report. This product that Polaris imports simply has no connection to the targeted Chinese policies and practices identified in the USTR's Section 301 investigation.

## Attachments

| | |
|---|---|
| Re_USTR-2019-0005-5879.pdf | ⬇(/sfc/servlet.shepherd/document/download/069t00 |
| USTR-2019-0005-5879-AT-3191-Public Document | ⬇(/sfc/servlet.shepherd/document/download/069t00 |
| USTR-2019-0005-5879-AT-3193-Public Document | ⬇(/sfc/servlet.shepherd/document/download/069t00 |
| USTR-2019-0005-5879-AT-3192-Public Document | ⬇(/sfc/servlet.shepherd/document/download/069t00 |

## Public Responses and Organization Replies

# Complaint Exhibit B

EXECUTIVE OFFICE OF THE PRESIDENT
OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE
WASHINGTON, D.C. 20508

April 22, 2020

RE: Product Exclusion Request Number: USTR-2019-0005-5879

Polaris Industries Inc.:

I am pleased to notify you that the United States Trade Representative has determined to grant the above-referenced exclusion request submitted pursuant to the notice published at 84 FR 29576 ('the June 24 notice'). The exclusion determination is set out in a formal notice that has been submitted to Office of the Federal Register for publication ('the exclusion notice'). A pre-publication version of the exclusion notice has been posted on the USTR website, at https://ustr.gov/sites/default/files/enforcement/301Investigations/%24200_Billion_Exclusions_Granted_April_ .

An exclusion in response to your request has been granted by excluding from the additional tariffs products covered by a specially drafted description contained in the annex to the exclusion notice. The scope of the exclusion is governed by the scope of the 10-digit HTSUS subheadings and product descriptions in the annex to the product exclusion notice, and not by the product descriptions set out in any particular request for exclusion.

In accordance with the pre-publication version of the exclusion notice available April 20, 2020, the exclusion applies as of the September 24, 2018 effective date of the tariff action, and will expire on August 7, 2020. As stated in the exclusion notice, U.S. Customs and Border Protection will issue additional instructions on entry guidance and implementation.

Sincerely,

Joseph Barloon
General Counsel

# Complaint Exhibit C

DEPARTMENT OF HOMELAND SECURITY
U.S. Customs and Border Protection

## NOTICE OF ACTION
19 CFR 152.2

| **This is NOT A Notice of Liquidation** | 1. DATE OF THIS NOTICE 01/11/2021 |
|---|---|

| 2. CARRIER CMA-CGM | 3. DATE OF IMPORTATION | 4. DATE OF ENTRY 11/18/2020 | 5. ENTRY NO. 60010157216 |
|---|---|---|---|

| 6. MFR/SELLER/SHIPPER CNWINDON333FOS | 7. COUNTRY CN | 8. CBP BROKER AND FILE NO. V ALEXANDER & CO INC |
|---|---|---|

9. DESCRIPTION OF MERCHANDISE
Nerf and side bars

| 10. TO ▶ KEYSTONE AUTOMOTIVE 44 TUNKHANNOCK AVE EXETER, PA 18643-1221 US | 11. FROM ▶ consuela bryant-princivil 10426 ALTA DR FI 2 JACKSONVILLE, FL 32226-2302 US Duval |
|---|---|

12. THE FOLLOWING ACTION, WHICH WILL RESULT IN AN INCREASE IN DUTIES, ---

[ ] IS **PROPOSED**   ▶ IF YOU DISAGREE WITH THIS PROPOSED ACTION, PLEASE FURNISH YOUR REASON IN WRITING TO THIS OFFICE WITHIN 20 DAYS FROM THE DATE OF THIS NOTICE. AFTER 20 DAYS, THE ENTRY WILL BE EITHER LIQUIDATED AS PROPOSED OR CHANGED AS PROPOSED.

[✔] HAS BEEN **TAKEN**   ▶ THE ENTRY IS IN THE LIQUIDATION PROCESS AND IS NOT AVAILABLE FOR REVIEW IN THIS OFFICE.

**TYPE OF ACTION**
A. [✔] RATE ADVANCE
B. [ ] VALUE ADVANCE
C. [ ] EXCESS [ ] WEIGHT [ ] QUANTITY
D. [✔] OTHER (See below)

13. EXPLANATION (REFER TO ACTION LETTER DESIGNATIONS ABOVE)
Side Bars or Straight Nerf Bars of this entry do not qualify for Exclusion order 9903.88.56. ADVISORY HTS is 8708.29.5060/9903.88.03.   The entry will be rate advanced and a bill will be issued for duty owed.   Please review your records for the past five years and report any additional instances of similar discrepancies.  Provide a response to this office within 30 days from the date of this request.  CBP is requesting these records pursuant to 19 USC 1509 and 19 CFR 163.6.  Failure to comply with a lawful request for the production of records within the timeframe provided may result in the imposition of penalties.

| 14. CBP OFFICIAL consuela bryant-princivil | 15. TEAM DESIGNATION 063 | 16. TELEPHONE (904) 714-3079 |
|---|---|---|
| 17. FAX NUMBER | 18. EMAIL consuela.a.bryantprincivil@cbp.dhs.gov | |

# Complaint Exhibit D

## RESPONSE TO CF 29 - ENTRY # 600-10157216

**Rock Trade Law, LLC**
134 N LaSalle St Ste 1800
Chicago, IL 60602

On behalf of

**KEYSTONE AUTOMOTIVE OPERATIONS INC**
44 TUNKHANNOCK AVE
EXETER, PA 18643-1221

**Consuela Bryant-Princivil**
10426 ALTA DR, Fl 2
JACKSONVILLE, FL 32226-2302

**2/2/2021**

Ms. Consuela Bryant-Princivil,

On behalf of Keystone Automotive Operations Inc ("KAO"), we write in response to the Notice of Action issued January 11, 2021 for Entry # 600-10157216. *See* **Exhibit A.** Specifically, we are addressing CBP comments made in Box 13 which read:

"Side Bars or Straight Nerf Bars of this entry do not qualify for Exclusion order 9903.88.56. ADVISORY HTS is 8708.29.5060/9903.88.03. The entry will be rate advanced and a bill will be issued for duty owed. Please review your records for the past five years and report any additional instances of similar discrepancies. Provide a response to this office within 30 days from the date of this request. CBP is requesting these records pursuant to 19 USC 1509 and 19 CFR 163.6. Failure to comply with a lawful request for the production of records within the timeframe provided may result in the imposition of penalties."

As a preliminary matter, we note that we disagree with the notice of action taken against this entry and will separately file a protest to address the liquidation with additional duties owed for the subject merchandise.

With regards to potential past discrepancies, we are offering the following evidence to demonstrate that KAO was fully justified in its entry of merchandise under HTS subheading 9903.88.56. The claimed exclusion under 9903.88.56 provides for "Tire carrier attachments, roof racks, fender liners, *side protective attachments*, the foregoing of steel (described in statistical reporting number 8708.29.5060." *See* Chapter 99 Note 20(xx)(82); Note 20(iii)(213).

KAO claimed this exclusion because its side bars and nerf bars are "side protective attachments" as that term is used in the exclusion language and was intended, based on the initial exclusion application made to the U.S. Trade Representative ("USTR"). We have traced the relevant exclusion to a request submitted by Polaris Industries, Inc. pertaining to certain metal fabrications, which Polaris described as: "tire carriers and roof racks, fender flares, inner fender lines, hitches, and *side armor protection*." *See* USTR docket # 2019-0005-5879 and copy of the application attached as **Exhibit B**.

Polaris described the "side armor protection" as a metal fabricated product used to modify or accessorize trucks, jeeps, and/or SUVs for use off-road claiming that the items enhance the useability of the vehicle and offer protection to the vehicle from damage. *See* **Exhibit B.**

Polaris also supported its request with an image of the intended item for coverage. This consisted of an image of a "Smittybilt [branded] Side Armor." *See* **Exhibit C.** Online images of this item also indicate that this side armor functions as a "step" into the vehicle. *See* **Exhibit D.**

The Smittybilt Side Armor used by Polaris to support its USTR application is substantially identical in function and use to KAO's side bars and nerf bars. These items all attach to the frame of a vehicle. The items also afford protection to the door panels and provide a step-up to facilitate entry into the vehicle. Smittybilt's description of its side armor clearly states that: "Side Armor can be utilized as protection as well as a step at the same time." This is identical to how KAO's nerf bars and side bars are utilized. *See* **Exhibit E** for examples of KAO's side bars and nerf bars by way of comparison.

Based on this information, we conclude that the Smittybilt Side Armor used as the basis for the Polaris USTR application is substantially identical in function and use to KAO's side bars and nerf bars. For this reason, we conclude that there were no past duty underpayments related to the application of this exclusion and will file a protest on this liquidation accordingly. *To avoid further administrative burden on CBP and the importer, we further request that CBP stay any pending protest or post summary correction decisions regarding this merchandise until the protest on this entry is resolved.*

*Michael G. Hodes*

Michael G. Hodes, Attorney

Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois  60602
312-553-1441 (telephone)
mhodes@rocktradelaw.com (e-mail)

# Exhibit A

DEPARTMENT OF HOMELAND SECURITY
U.S. Customs and Border Protection

**NOTICE OF ACTION**
19 CFR 152.2

| This is NOT A Notice of Liquidation | 1. DATE OF THIS NOTICE<br>01/11/2021 |
|---|---|

| 2. CARRIER<br>CMA-CGM | 3. DATE OF IMPORTATION | 4. DATE OF ENTRY<br>11/18/2020 | 5. ENTRY NO.<br>60010157216 |
|---|---|---|---|

| 6. MFR/SELLER/SHIPPER<br>CNWINDON333FOS | 7. COUNTRY<br>CN | 8. CBP BROKER AND FILE NO.<br>V ALEXANDER & CO INC |
|---|---|---|

9. DESCRIPTION OF MERCHANDISE
Nerf and side bars

| 10. TO<br>► KEYSTONE AUTOMOTIVE<br>44 TUNKHANNOCK AVE<br>EXETER, PA  18643-1221<br>US | 11. FROM<br>► consuela bryant-princivil<br>10426 ALTA DR<br>FI 2<br>JACKSONVILLE, FL  32226-2302<br>US<br>Duval |
|---|---|

12. THE FOLLOWING ACTION, WHICH WILL RESULT IN AN INCREASE IN DUTIES, ---

☐ IS **PROPOSED**    ► IF YOU DISAGREE WITH THIS PROPOSED ACTION, PLEASE FURNISH YOUR REASON IN WRITING TO THIS OFFICE WITHIN 20 DAYS FROM THE DATE OF THIS NOTICE. AFTER 20 DAYS, THE ENTRY WILL BE EITHER LIQUIDATED AS PROPOSED OR CHANGED AS PROPOSED.

☑ HAS BEEN **TAKEN**    ► THE ENTRY IS IN THE LIQUIDATION PROCESS AND IS NOT AVAILABLE FOR REVIEW IN THIS OFFICE.

**TYPE OF ACTION**    A. ☑ RATE ADVANCE
B. ☐ VALUE ADVANCE
C. ☐ EXCESS ☐ WEIGHT    ☐ QUANTITY
D. ☑ OTHER (See below)

13. EXPLANATION (REFER TO ACTION LETTER DESIGNATIONS ABOVE)
Side Bars or Straight Nerf Bars of this entry do not qualify for Exclusion order 9903.88.56. ADVISORY HTS is 8708.29.5060/9903.88.03.   The entry will be rate advanced and a bill will be issued for duty owed.   Please review your records for the past five years and report any additional instances of similar discrepancies.  Provide a response to this office within 30 days from the date of this request.  CBP is requesting these records pursuant to 19 USC 1509 and 19 CFR 163.6.  Failure to comply with a lawful request for the production of records within the timeframe provided may result in the imposition of penalties.

| 14. CBP OFFICIAL<br>consuela bryant-princivil | 15. TEAM DESIGNATION<br>063 | 16. TELEPHONE<br>(904) 714-3079 |
|---|---|---|

| 17. FAX NUMBER | 18. EMAIL<br>consuela.a.bryantprincivil@cbp.dhs.gov |
|---|---|

CBP Form 29 (06/14)

Exhibit B



(https://ustr.gov/)

# USTR Comments Portal (https://comments.ustr.gov)

**PUBLIC DOCKETS (HTTPS://COMMENTS.USTR.GOV/S/)**      **LOG IN (/PORTAL)**

## Submitter Information

**USTR Exclusion Request ID**
USTR-2019-0005-5879

**Full Organization Legal Name**
Polaris Industries Inc.

**Third Party**
Yes

**Third Party Organization Name**
Akin Gump Strauss Hauer and Feld LLP

## Product Description

**HTSUS Item Number**
8708295060

**Product Name**
Smittybilt-branded metal fabrications.

**Product Description (e.g., dimensions, weight, material composition, etc.)**
Polaris subsidiary TAP Worldwide's Smittybilt metal fabrications are mainly made out of hot rolled flat steel or hot rolled tube steel. The steel is bent, pressed, formed and welded. Size of steel plate is usually 3/16" and the size of the tube varies between 1"- 2". The products are finally powder coated for a retail finish.

**Product Function, Application and Principal Use**
Metal fabricated products modify or accessorize trucks, jeeps, and/or SUVs for use off-road. They enhance the useability of the vehicle while off-roading, and include tire carriers and roof racks, fender flares, inner fender lines, hitches, and side armor protection. The products carry a heavier tire or attach overlanding gear. The products protect the vehicle from damage. Please see below Summary of Requestor Argument (Additional Information) and attached Proposed HTSUS Revisions.

## Submitter Arguments

**Requestor's relationship to the product**
Importer

**Is this product, or a comparable product, available from sources in the United States?**
Yes

**Public summary of availability argument from the United States**

**Is this product, or a comparable product, available from source in third countries?**
Not Sure

| | |
|---|---|
| **Public summary of availability argument from a third country** | Polaris is in the process of re-sourcing a portion of these products from [ ], beginning in 2020. However, manufacturing in [ ] is limited; therefore, only a portion of the product range is likely to be re-sourced. The manufacturer will only be able to produce [ ] of current purchases from China.  The risk of establishing new suppliers increases the chance of late deliveries, which can cause loss of revenue. If we were to switch suppliers, we would incur significant tooling costs and require resources to certify new suppliers and products. The tooling cost is estimated to be approximately [ ].  Polaris actively explores and quotes suppliers globally, with intentions to partner with the supplier that can meet our technical, performance, quality and cost expectations regardless of location of manufacture. Polaris currently is in phase two of a five phase, five-year project to award over $3 billion in new supply contracts which may or may not include the subject products. Polaris has invited over 400 U.S. companies the opportunity to compete for that business. |
| **Please discuss any attempts to source this product from United States or third countries.** | Polaris actively explores and quotes suppliers globally, with intentions to partner with the supplier that can meet our technical, performance, quality and cost expectations regardless of location of manufacture. Polaris currently is in phase two of a five phase, five-year project to award over $3 billion in new supply contracts which may or may not include the subject products. Polaris has invited over 400 U.S. companies the opportunity to compete for that business. |
| **Is the Chinese-origin product of concern sold as a final product or an input used in the production of a final product or products?** | Final Product |
| **Summary of Requestor Argument** | Polaris respectfully submits that USTR mitigate the impact of the Section 301 tariffs on Polaris' U.S. manufacturing jobs by exempting from the Section 301 tariffs all parts that are used in manufacturing, repair and sale of powersports vehicles including off-road vehicles, motorcycles, snowmobiles, and accessories and garments used with powersports vehicles. This can be accomplished by including the language in the attached draft Annex in a Federal Register Notice that amends Chapter 99 of the Harmonized Tariff Schedule of the United States (HTSUS). |
| **Did you submit exclusion requests for the Section 301 $34 billion (Docket ID: USTR-2018-0025), or the $16 billion (Docket ID: USTR-2018-0032) tariff actions?** | Yes |
| **Please comment on whether the particular product of concern is strategically important or related to "Made in China 2025" or other Chinese industrial programs. You must explain in the box below why you believe the product of concern is or is not strategically important or related to** | |

**"Made in China 2025" or other Chinese industrial programs.**

This product is not produced from strategic or advanced technologies. Further, it is not remotely close to the 10 categories that China is targeting for development. Moreover, it is not part of the "Four Foundations" of China's Made in China 2025 initiative (digital control machines, railway transportation equipment, aerospace and aeronautics, and power generation equipment). As stated above, one of China's goals is to move up the value chain, advancing from low-cost manufacturing to become a "global innovation power in science and technology." Polaris's imports of this product are not going to advance China up the value chain in any way. It is a mature technology and is not considered by China to be strategic or advanced. Moreover, Polaris has not encountered any forced technology requirements or suffered any IP theft. Likewise, Polaris is not aware of any forced intellectual property transfers or IP rights infringements having taken place with regard to this product or parts thereof, or of related technologies or manufacturing processes. In short, the additional tariffs on imports of this product that Polaris imports from China do not in any way influence the Chinese government to alter or change the policies and practices identified by USTR in its Section 301 Report. This product that Polaris imports simply has no connection to the targeted Chinese policies and practices identified in the USTR's Section 301 investigation.

## Attachments

| | |
|---|---|
| Re_USTR-2019-0005-5879.pdf | ⬇(/sfc/servlet.shepherd/document/download/069t00 |
| USTR-2019-0005-5879-AT-3191-Public Document | ⬇(/sfc/servlet.shepherd/document/download/069t00 |
| USTR-2019-0005-5879-AT-3193-Public Document | ⬇(/sfc/servlet.shepherd/document/download/069t00 |
| USTR-2019-0005-5879-AT-3192-Public Document | ⬇(/sfc/servlet.shepherd/document/download/069t00 |

## Public Responses and Organization Replies

EXECUTIVE OFFICE OF THE PRESIDENT
OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE
WASHINGTON, D.C. 20508

April 22, 2020

RE: Product Exclusion Request Number: USTR-2019-0005-5879

Polaris Industries Inc.:

I am pleased to notify you that the United States Trade Representative has determined to grant the above-referenced exclusion request submitted pursuant to the notice published at 84 FR 29576 ('the June 24 notice'). The exclusion determination is set out in a formal notice that has been submitted to Office of the Federal Register for publication ('the exclusion notice'). A pre-publication version of the exclusion notice has been posted on the USTR website, at
https://ustr.gov/sites/default/files/enforcement/301Investigations/%24200_Billion_Exclusions_Granted_April_2
.

An exclusion in response to your request has been granted by excluding from the additional tariffs products covered by a specially drafted description contained in the annex to the exclusion notice. The scope of the exclusion is governed by the scope of the 10-digit HTSUS subheadings and product descriptions in the annex to the product exclusion notice, and not by the product descriptions set out in any particular request for exclusion.

In accordance with the pre-publication version of the exclusion notice available April 20, 2020, the exclusion applies as of the September 24, 2018 effective date of the tariff action, and will expire on August 7, 2020. As stated in the exclusion notice, U.S. Customs and Border Protection will issue additional instructions on entry guidance and implementation.

Sincerely,

Joseph Barloon
General Counsel

adapters, put up for retail sale (described in statistical reporting number 8525.80.3010)

71) Indicator panels incorporating light emitting diodes (LEDs), black plastic vacuum form or injection molding backing, with digital or illuminated border, capable of displaying words (described in statistical reporting number 8531.20.0040)

72) Printed circuit board assemblies specially designed to control sound signals (alarms) in medical infusion pumps (described in statistical reporting number 8531.90.3000)

73) Wall-mounted receptacles conforming to types 1-15R, 5-15R or 5-20R of the National Electrical Manufacturers Association (NEMA), for a voltage not exceeding 1,000 V, with one or more standard sockets, whether or not incorporating one or more USB ports (described in statistical reporting number 8536.69.8000)

74) Controllers rated at 120 V, 60 Hz, suitable for electrically controlling hospital beds (described in statistical reporting number 8537.10.9170)

75) Electric power control bases, which switch an electric load between sources, either manually or automatically, for a voltage not exceeding 1,000 V (described in statistical reporting number 8537.10.9170)

76) Electric power control boards, designed for use in gas absorption refrigerators for recreational vehicles (described in statistical reporting number 8537.10.9170)

77) Printed circuit board assemblies specially designed to control medical infusion pumps (described in statistical reporting number 8537.10.9170)

78) T8 tubular fluorescent lamps, each measuring not less than 60 cm but not exceeding 118 cm in length (described in statistical reporting number 8539.31.0070)

79) Insulated electrical wiring harnesses with control cords, fitted with connectors, for a voltage not exceeding 1,000 V, for incorporation into gas absorption refrigerators for recreational vehicles (described in statistical reporting number 8544.42.9090)

80) Electrical insulators of ceramics, used in high-voltage, low-frequency electrical systems (described in statistical reporting number 8546.20.0030)

81) Ceramic electrical insulators of alumina for gas ignition electrode assemblies, each measuring at least 6.6 cm but not more than 11.5 cm in length and not more than 0.95 cm in diameter, weighing not more than 25 g (described in statistical reporting number 8546.20.0090)

82) Tire carrier attachments, roof racks, fender liners, side protective attachments, the foregoing of steel (described in statistical reporting number 8708.29.5060)

83) Road wheels of cast aluminum for vehicles of heading 8703, each measuring 30 cm or more but not exceeding 56 cm in diameter and 15 cm or more but not over 31 cm in width (whether described in statistical reporting number 8708.70.4545 prior to January 1, 2020 or described in statistical reporting number 8708.70.4548 post January 1, 2020)

84) Heater coils for use with the motor vehicles of headings 8701 to 8705, composed of steel, copper, aluminum and plastic, each not less than 184 mm and not more than 355 mm in height, not less than 350 mm and not more than 774 mm in length and not less than 32 mm and not more than 308 mm in width, each rated at not less than 6,300 kcal per hour and not more than 22,700 kcal per hour (described in statistical reporting number 8708.99.8180)

(210) Ceramic electrical insulators of alumina for gas ignition electrode assemblies, each measuring at least 6.6 cm but not more than 11.5 cm in length and not more than 0.95 cm in diameter, weighing not more than 25 g (described in statistical reporting number 8546.20.0090)

(211) Electrical insulators ("wire nuts") of plastics and steel (described in statistical reporting number 8546.90.0000)

(212) Devices for mounting phones on motor vehicle interiors without a Universal Serial Bus (USB) charging port (described in statistical reporting number 8708.29.5060)

(213) Tire carrier attachments, roof racks, fender liners, side protective attachments, the foregoing of steel (described in statistical reporting number 8708.29.5060)

(214) Guide pins and guide bolts designed for use in brakes and servo-brakes of subheading 8708.30 (described in statistical reporting number 8708.30.5090)

(215) Flange forgings of Society of Automotive Engineers ("SAE") 1035 carbon steel (described in statistical reporting number 8708.40.7570)

(216) Hub forgings of Society of Automotive Engineers ("SAE") 1035 carbon steel (described in statistical reporting number 8708.40.7570)

(217) Park gear blanks of Society of Automotive Engineers ("SAE") 1520 carbon steel (described in statistical reporting number 8708.40.7570)

(218) Stator shafts of Stahlwerk Annahutte ZF34C grade carbon steel (described in statistical reporting number 8708.40.7570)

(219) Front output shafts of Society of Automotive Engineers ("SAE") 1045 carbon steel suitable for use in automatic transmission systems for passenger motor vehicles (described in statistical reporting number 8708.99.6890)

(220) Hitches receivers of steel, not suitable for towing applications, each receiver to be clamped onto the rear bumper of a recreational vehicle, such bumpers being square in section and measuring not more than 102 mm on a side (described in statistical reporting number 8708.99.8180)

(221) Bicycles, not motorized, each having aluminum- or magnesium- alloy wheels both measuring more than 69 cm but not more than 71 cm in diameter, tires of cross-sectional diameter of 3.5 cm, aluminum frame, a polyurethane/carbon fiber cord drive belt, 3-, 7- or 12-speed rear hub and twist shifter (described in statistical reporting number 8712.00.2500)

(222) Single-speed bicycles having both wheels exceeding 63.5 cm in diameter, weighing less than 16.3 kg without accessories and not designed for use with tires having a cross-sectional diameter exceeding 4.13 cm (described in statistical reporting number 8712.00.2500)

(223) Bicycles, not motorized, having both wheels exceeding 63.5 cm in diameter, each having no more than three speeds and a coaster brake (described in statistical reporting number 8712.00.3500)

(224) Bicycles, including mountain-type, with drop bar, tubeless, folding (described in statistical reporting number 8712.00.4800)

(225) Bicycle frames, of carbon fiber, valued not over $600 each (described in statistical reporting number 8714.91.3000)

(226) Bicycle saddles, each having a cover of plastics, man-made textile fabrics or a combination of the two (described in statistical reporting number 8714.95.0000)

(227) Wheeled trailers suitable for towing behind an adult bicycle, each comprising a frame of aluminum with a hitch mechanism, weighing not more than 17.5 kg, with a capacity of not more than 46 kg, with those trailers designated for carrying children meeting

# Exhibit C



**Smittybilt Side Armor**

Exhibit D



  

| ACCESSORIES | HOME | ABOUT US | WHERE TO BUY | CONTACT US |

**ACCESSORIES**

AIR COMPRESSORS
ARCTIC FRIDGE
BLACK BOX
DEFENDER RACK
OVERLANDER HARD SHELL TENT
GEN2 OVERLANDER TENT
GEN1 OVERLANDER TENT
SCOUT TRAILER
TOW ACCESSORIES
TRAIL EQUIPMENT

**WINCH**

GEN3 WINCHES
GEN3 USER GUIDE
GEN2 WINCHES
GEN2 USER GUIDE

**JEEP JL/JT PRODUCTS**

ACCESSORIES
ARMOR
BUMPER / TIRE CARRIERS
SOFT GOODS
SEAT COVERS

**JEEP PRODUCTS**

ACCESSORIES
ARMOR
BUMPERS/TIRE CARRIERS
G.E.A.R.
HOOD / TAILGATE
JEEP SEATS AND SEAT COVERS
JEEP TOPS
LIGHTING
SIDE BARS
SOFT GOODS
SRC CAGE KITS
SRC ROOF RACK
STAINLESS STEEL & BLACK ACCESSORIES
STORAGE
TOW HOOK KIT
TUBE DOORS

**TRUCK PRODUCTS**

SURE STEP
NERF STEP
M1A2/M1 TRUCK
SMART COVER
CONTRACTORS RACK

**ATV PRODUCTS**

ATV WINCHES





# Smittybilt SRC Side Armor JK

The SRC Side Armor for the JK's utilize a one piece design and is manufactured from 1.75" .120 wall tubing. Each SRC Side Armor utilizes a dual girder system provides the ultimate protection for the sides and under section of your Wrangler. SRC Side Armor can be utilize as protection as well as a step at the same time. Every SRC Side Armor bolts up to your vehicle without any drilling or modifications, giving you the ultimate protection from wheel to wheel. All SRC Side Armors come finished in our signature series Matte Black Textured Powder Coat.

- One piece design - manufactured from 1.75" .120 wall tubing
- Dual girder system provides the ultimate protection for the sides and under section of your Wrangler
- Provides protection and a step at the same time
- Bolts up without drilling or modifications to the vehicle
- Wheel to wheel for maximum protection
- Finished in the signature series Matte Black Textured Powder Coat

## Other Jeep Side Accessories

**SRC Side Armor**
**SRC Classic Sides JK**

California Residents: **WARNING**

## Vehicle Application

| Part Number | Year | Make | Model | Color | Other | Buy Now |
|---|---|---|---|---|---|---|
| **76633**<br>SRC Side Armor - 2 Door | 2007-2018 | Jeep | JK Wrangler | Textured Black | 🔧 | Buy Now |
| **76633LT**<br>SRC SIDE ARMOR LT - 2 Door - NEW<br>LIGHT TEXTURE AVAILABLE | 2007-2018 | Jeep | JK Wrangler | | | Buy Now |
| **76634**<br>SRC Side Armor - 4 Door | 2007-2018 | Jeep | JK Wrangler Unlimited | Textured Black | 🔧 | Buy Now |

TRAIL EQUIPMENT

PRESS

NEW PRODUCTS

LATEST NEWS

SMITTYBILT GARAGE

CATALOG

| Part Number | Year | Make | Model | Color | Other | Buy Now |
|---|---|---|---|---|---|---|
| **76634LT**<br>RC SIDE ARMOR LT - 4 Door - NEW<br>LIGHT TEXTURE AVAILABLE | 2007-2018 | Jeep | JK Wrangler | | | Buy Now |

Copyright © 2021 Smittybilt Inc. All rights reserved.

Home　Where to Buy　About Us　Careers　Contact Us　Catalog　Privacy Notice

Exhibit E





# Complaint Exhibit E

```
============================================================
```

CONFIDENTIALITY NOTICE:

This electronic mail message and any attached files contain information intended for
the exclusive use of the individual or entity to whom it is addressed and may contain
information that is proprietary, privileged, confidential and/or SUBJECT TO THE
ATTORNEY-CLIENT PRIVILEGE, OR THE ATTORNEY WORK PRODUCT PRIVILEGE.  If you are not the
intended recipient, you are hereby notified that any viewing, copying, disclosure or
distribution of this information may be subject to legal restriction or
sanction. Please notify the sender, by electronic mail or telephone, of any unintended
recipients and delete the original message without making any copies.

```
============================================================
```

**From:** NYSTROM, KIMBERLY <KIMBERLY.NYSTROM@CBP.DHS.GOV>
**Sent:** Thursday, February 4, 2021 8:59 AM
**To:** mhodes@rocktradelaw.com; Maria Hunter <mhunter@LKQCORP.com>
**Cc:** KINNER, CHRISTOPHER <CHRISTOPHER.KINNER@CBP.DHS.GOV>; BADGER, MARK R
<MARK.R.BADGER@cbp.dhs.gov>; NYSTROM, KIMBERLY <KIMBERLY.NYSTROM@CBP.DHS.GOV>; BRYANT-
PRINCIVIL, CONSUELA A <CONSUELA.A.BRYANTPRINCIVIL@cbp.dhs.gov>; MCKNIGHT, VERONICA
<VERONICA.MCKNIGHT@CBP.DHS.GOV>; LATIMORE, LA-TERA S <la-tera.s.latimore@cbp.dhs.gov>
**Subject:** RE: Response to CBP 29 dated 1/11/21-Entry 60010157216

Good morning Mr. Hodes,

Thank you for your response to our CBP CF29 and providing your position on Keystone's step bars.

We reached out to the National Import Specialist regarding exclusion eligibility on Keystone's nerf, side and step bars. Review of the invoices provided with the  protests specifically describe these as side steps and running boards. The manufacturer from the invoices, website  specifically describes these as side steps and running boards. Keystone distributes to many sellers who also market these as step feature accessory parts.

The main function of Keystone's nerf,  side and the like bars is to serve as steps, and not as protective accessories. We consider these step bars, which are not mentioned in the exclusion language.

Please note it is within your right if you  disagree with CBP, to  file  protests with AFR so they will go to HQ for their determination.

Thank you.

**Kim**

Kimberly Nystrom, Supervisory Import Specialist

Department of Homeland Security|U S Customs & Border Protection