**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE**

| |
|---|
| **KEYSTONE AUTOMOTIVE OPERATIONS, INC.,** |
| Plaintiff, |
| **v.** |
| **UNITED STATES**, |
| Defendant. |

Court No. 21-00215

## PROPOSED ORDER

Upon consideration of Plaintiff's Motion for Summary Judgment, and all of the pleadings and papers on file herein, and after due deliberation, it is hereby —

**ORDERED** that Plaintiff's motion for summary judgment is granted; and it is further

**ORDERED** that the subject merchandise is properly classified in subheading 9903.88.56, HTSUS, and excluded from China Section 301 Tariffs by application of U.S. Note 20(iii)(213) to Subchapter III of Chapter 99, HTSUS, which provides for "[t]ire carrier attachments, roof racks, fender liners, side protective attachments, the foregoing of steel (described in statistical reporting number 8708.29.5060)"; and it is further

**ORDERED** that Defendant reliquidate the entries covered by this action with a refund of all duties and/or tariffs overpaid, plus interest, as provided by law.

HON. JENNIFER CHOE-GROVES, JUDGE

Dated: New York, New York

This _____day of _____, 2023.

Nonconfidential Redacted Copy

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE

|  |  |
|---|---|
| **KEYSTONE AUTOMOTIVE OPERATIONS, INC.,**<br><br>Plaintiff,<br><br>**v.**<br><br>**UNITED STATES**,<br><br>Defendant. | Court No. 21-00215 |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In accordance with Rule 56 of the Rules of the United States Court of International Trade ("USCIT"), Plaintiff, Keystone Automotive Operations, Inc. ("KAO"), hereby moves this Court for summary judgment. This Motion is supported by the separate statement of undisputed facts and exhibits, as well as the Plaintiff's memorandum in support of this motion.

For the reasons set out therein, Plaintiff submits that the merchandise which is the subject of this action is properly classified under primary subheading 8708.29.5060 of the Harmonized Tariff Schedule of the United States ("HTSUS"), and secondary subheading 9903.88.56, HTSUS. The subject merchandise is thus free of any China Section 301 tariffs by application of U.S. Note 20(iii)(213) to Subchapter III of Chapter 99, HTSUS, which provides for "[t]ire carrier attachments, roof racks, fender liners, side protective attachments, the foregoing of steel (described in statistical reporting number 8708.29.5060)."

WHEREFORE, Plaintiff respectfully requests that judgment be granted in its favor; and that the defendant United States and U.S. Customs and Border Protection be directed to reliquidate the entries subject to this action, classifying the subject merchandise under primary subheading 8708.29.5060, HTSUS, and secondary subheading 9903.88.56, HTSUS, and to refund to Plaintiff the excess duties and/or tariffs collected, together with interest, as provided by law.

Nonconfidential Redacted Copy

Respectfully submitted,

Dated:     7 December 2023

_____
Eric R. Rock, Attorney

Michael G. Hodes
Serhiy Kiyasov
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For Plaintiff Keystone Automotive Operations, Inc.*

2

Nonconfidential Redacted Copy

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

TABLE OF EXHIBITS TO COUNSEL DECLARATION ......................................... vi

INTRODUCTION ........................................................................................................ 1

TARIFF PROVISIONS AT ISSUE ............................................................................. 4

QUESTION PRESENTED FOR DECISION ............................................................... 6

SUMMARY OF THE ARGUMENT ........................................................................... 6

JURISDICTION ........................................................................................................... 7

STANDARD OF REVIEW ........................................................................................... 7

ARGUMENT ................................................................................................................ 10

I.      The Subject Merchandise Meets the Description of "… Side Protective Attachments, the Foregoing of Steel (Described in Statistical Reporting Number 8708.29.5060)." ........... 11

    A.      The Subject Merchandise is Described in Statistical Reporting Number 8708.29.5060, HTSUS ......................................................................... 13

    B.      The Subject Merchandise is Made of Steel .......................................... 13

    C.      The Subject Merchandise Attaches to a Motor Vehicle ...................... 14

    D.      The Subject Merchandise Protects the Sides of the Vehicle to Which it is Attached ............................................................................ 14

II.     The Subject Merchandise is Substantially Identical to Polaris's Product Intended for Coverage Which Resulted in the Language of the Exclusion .......................................... 16

III.    The Subject Merchandise's Protective Functionality is Superior to That of Polaris's Product Intended for Coverage Which Resulted in the Language of the Exclusion. ....... 18

IV.     The Subject Merchandise Was Entered on a Consumption Entry Within the Timeframe of the Exclusion ......................................................................................... 19

CONCLUSION ............................................................................................................. 20

i

Nonconfidential Redacted Copy

# TABLE OF AUTHORITIES

**Cases**

*ABB, Inc. v. United States*,
421 F.3d 1274 (Fed. Cir. 2005).........................................................................12

*Bausch & Lomb, Inc. v. United States*,
148 F.3d 1363 (Fed. Cir. 1998)........................................................................8, 9

*Baxter Healthcare Corp. of P.R. v. United States*,
182 F.3d 1333 (Fed. Cir. 1999).....................................................................15, 17

*CamelBak Prods., LLC v. United States*,
649 F.3d 1361 (Fed. Cir. 2011).........................................................................12

*Carl Zeiss, Inc. v. United States*,
195 F.3d 1375 (Fed. Cir. 1999).....................................................................14, 15

*Chevron Chem. Co. v. United States*,
59 F. Supp. 2d 1361 (Ct. Int'l Trade 1999) ..........................................................9

*Deckers Outdoor Corp. v. United States*,
714 F.3d 1363 (Fed. Cir. 2013)...........................................................................8

*Hewlett-Packard Co. v. United States*,
189 F.3d 1346 (Fed. Cir. 1999)...........................................................................8

*Link Snacks, Inc. v. United States*,
742 F.3d 962 (Fed. Cir. 2014).............................................................................8

*Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)...........................................................................................9

*N. Am. Processing Co. v. United States*,
236 F.3d 695 (Fed. Cir. 2001)...........................................................................12

*Orlando Food Corp. v. United States*,
140 F.3d 1437 (Fed. Cir. 1998).........................................................................12

*Plexus Corp. v. United States*,
489 F. Supp. 3d 1379 (Ct. Int'l Trade 2020) .....................................................7, 8

*Rocknel Fastener, Inc. v. United States*,
267 F.3d 1354 (Fed. Cir. 2001).........................................................................14

Nonconfidential Redacted Copy

*R.T. Foods, Inc. v. United States*,
887 F. Supp. 2d 1351 (Ct. Int'l Trade 2012) ................................................7, 8

*Schlumberger Tech. Corp. v. United States*,
845 F.3d 1158 (Fed. Cir. 2017)...............................................................8

*SGS Sports Inc. v. United States*,
620 F. Supp. 3d 1365 (Ct. Int'l Trade 2023) .....................................8

*Shamrock Bldg. Materials, Inc. v. United States*,
619 F. Supp. 3d 1337 (Ct. Int'l Trade 2023) .........................14, 16

*Toy Biz, Inc. v. United States*,
248 F. Supp. 2d 1234 (Ct. Int'l Trade 2003) .....................................12

*United States v. Pan Pac. Textile Group Inc.*,
276 F. Supp. 2d 1316 (Ct. Int'l Trade 2003) .....................................9

*Universal Elecs. Inc. v. United States*,
112 F.3d 488 (Fed. Cir. 1997)...............................................................8

*Warner-Lambert Co. v. United States*,
407 F.3d 1207 (Fed. Cir. 2005)...............................................................9

## Statutes

19 U.S.C. § 1515 ........................................................................................7

19 U.S.C. § 1515(b) ..................................................................................7

19 U.S.C. § 2411(a)(1)..............................................................................1

28 U.S.C. § 1581(a) ..................................................................................7

28 U.S.C. § 2640(a) ..................................................................................7

28 U.S.C. § 2673(a) ..................................................................................7

Harmonized Tariff Schedule of the United States

    U.S. Note 20(iii), Chapter 99 ...............................................5, 10, 11, 12

    U.S. Note 20(iii)(213), Chapter 99 ....................................... *passim*

    U.S. Note 20(e) to Subchapter III, Chapter 99 ...................................10

iii

**Nonconfidential Redacted Copy**

U.S. Note 20(f) to Subchapter III, Chapter 99 ......................................................10

U.S. Note 20(xx)(82) to Subchapter III, Chapter 99 .................................................3

Subheading 8708.29.50 .............................................................................................10

Subheading 8708.29.5060 ................................................................................. *passim*

Subheading 9903.88.03 ............................................................................5, 9, 10, 11

Subheading 9903.88.56 ..................................................................................... *passim*

General Rule of Interpretation 1 ...............................................................................12

## **Other Authorities**

USCIT Rule 56 ............................................................................................................1

USCIT Rule 56(a) .......................................................................................................8

*Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,
82 Fed. Reg. 40,213 (Aug. 24, 2017)........................................................................1

*Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,
83 Fed. Reg. 14,906 (Apr. 6, 2018) ..........................................................................2

*Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,
83 Fed. Reg. 47,974 (Sept. 21, 2018) .......................................................................2

*Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,
84 Fed. Reg. 20,459 (May 9, 2019) ..........................................................................2

*Procedures for Requests To Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,
84 Fed. Reg. 29,576 (June 24, 2019) ........................................................................2

*Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,
85 Fed. Reg. 23,122 (April 24, 2020) ("*Initial Exclusion Notice*")....................3

iv

*Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,*
85 Fed. Reg. 48,600 (Aug. 11, 2020) ("*Exclusion Extension Notice*")  ................... *passim*

*Merriam Webster Online Dictionary* ................................................................15

Nonconfidential Redacted Copy

## <u>TABLE OF EXHIBITS TO COUNSEL DECLARATION</u>

| Exhibit | Description |
|---|---|
| A | Plaintiff's Initial Disclosure, Schedule A |
| B | Marketing Materials and Installation Instructions |
| C | SKU Dimensions of Side Protective Attachments |
| D | Deposition of Justin Fabbro |
| E | Deposition of Steve Kozak |
| F | Deposition of Liana Alvarez |
| G | Steve Kozak's Expert Report |
| H | Applications of Bars and Cost of Step Pads |
| I | Second Deposition of Justin Fabbro |
| J | Cost & Weight |

Nonconfidential Redacted Copy

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| KEYSTONE AUTOMOTIVE OPERATIONS, INC., <br><br>                  Plaintiff, <br><br>    **v.** <br><br> **UNITED STATES**, <br><br>                  Defendant. | Court No. 21-00215 |

### MEMORANDUM OF LAW IN SUPPORT OF
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In accordance with Rule 56 of the Rules of the United States Court of International Trade ("USCIT"), Plaintiff, Keystone Automotive Operations, Inc. ("KAO" or "Plaintiff"), hereby respectfully moves this Court for summary judgment and submits the following memorandum of law in support thereof.

### INTRODUCTION

This test case involves the analysis and application of the Section 301 tariff exclusion for "… side protective attachments, the foregoing of steel (described in statistical reporting number 8708.29.5060)" to various steel side bars, nerf bars, and bars that attach to motor vehicles and that provide protection to the side of the vehicle. Such interpretation and application of Section 301 tariff exclusion is an issue of first impression for this Court.

In 2017-2019, pursuant to Section 301 of the Trade Act of 1974 (*as amended*, 19 U.S.C. § 2411(a)(1)), the Office of the United States Trade Representative ("USTR") took various actions which culminated in the imposition of an additional 25 percent *ad valorem* duty on various products imported from China. *See Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology*

1

**Nonconfidential Redacted Copy**

*Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213, 40,213 (Aug. 24, 2017);

*Notice of Determination and Request for Public Comment Concerning Proposed Determination*

*of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology*

*Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018);

*Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to*

*Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974, 47,974 (Sept.

21, 2018) (giving notice of List 3 action and imposition of 10 percent duties on List 3 articles);

*Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to*

*Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459, 20,459 (May

9, 2019) (announcing that duties on List 3 articles would be increased to 25 percent beginning

the following day). This 25 percent *ad valorem* duty applied to subject steel side bars, nerf bars,

and bars imported by the Plaintiff herein from China.

     Following the imposition of the additional 25 percent *ad valorem* duty, the USTR

established a process by which importers could request that specific products classified within an

affected tariff provision be excluded from (that is, imported without application of) such duties.

*See Procedures for Requests To Exclude Particular Products From the September 2018 Action*

*Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer,*

*Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576 (June 24, 2019).

     As part of this exclusion process, for the period September 24, 2018, through August 7,

2020, the USTR granted an exclusion for "[t]ire carrier attachments, roof racks, fender liners,

**side protective attachments, the foregoing of steel (described in statistical reporting**

**number 8708.29.5060)**," covered under subheading 9903.88.45, Harmonized Tariff Schedule of

the United States ("HTSUS"), and described in U.S. Note 20(xx)(82) to Subchapter III of

**Nonconfidential Redacted Copy**

Chapter 99, HTSUS. *See Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 23,122 (April 24, 2020) (hereinafter "*Initial Exclusion Notice*").

The USTR later extended this exclusion, through the establishment of a new Note 20 exclusion with an identical product description, made "[e]ffective with respect to goods entered for consumption, or withdrawn from warehouse for consumption, on or after 12:01 a.m. eastern daylight time on August 7, 2020 and before 11:59 p.m. eastern daylight time on December 31, 2020…", covered under subheading 9903.88.56, HTSUS, and described in U.S. Note 20(iii)(213) to Subchapter III of Chapter 99, HTSUS. *See Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (August 11, 2020) (hereinafter "*Exclusion Extension Notice*"). The *Exclusion Extension Notice* specifically provides as follows:

> In accordance with the June 24 notice, the exclusions are available for ***any product that meets the description in the Annex***, regardless of whether the importer filed an exclusion request. Further, the scope of each exclusion is governed by the scope of the ten-digit HTSUS headings and ***product descriptions in the Annex*** to this notice . . .

85 Fed. Reg. at 48,601 (emphasis added).

The merchandise that is the subject of this action comprises various side bars, nerf bars, and bars (collectively, "Subject Merchandise") attached to motor vehicles that both protect the side of the vehicle to which they are attached and serve as a step-up into the vehicle. **Plaintiff's Statement of Undisputed Facts ("PSUF") 11-21.** Various models of the Subject Merchandise imported by KAO include 63 different stock-keeping units ("SKUs") and are identified in Schedule A to Plaintiff's Rule 26 Disclosures. **Exhibit (Ex.) A.** Various SKUs are also depicted in **Ex. B**. The Subject Merchandise was properly classified under primary subheading

Nonconfidential Redacted Copy

8708.29.5060, HTSUS, which specifically provides for "[p]arts and accessories of the motor vehicles of headings 8701 to 8705: Other parts and accessories of bodies (including cabs): Other: Other: Other." **PSUF 21**. Finally, the Subject Merchandise was entered into the United States on November 18, 2020, during which time the exclusion for side protective attachments of steel was in effect, under consumption entry number 600-1015721-6. **PSUF 4, 23**. At the time of entry, Plaintiff claimed the exclusion applied to its merchandise, but the United States Customs and Border Protection ("CBP") denied the exclusion and liquidated the entry with an additional 25% *ad valorem* duty attributable to the Section 301 tariff on products from China. **PSUF 5**. Plaintiff timely protested CBP's action and after the protest was deemed denied following a proper request for accelerated disposition, this action was commenced. **PSUF 7-10**.

KAO contends that, because the Subject Merchandise meets the exclusion description insofar as it constitutes "side protective attachments, the foregoing of steel (described in statistical reporting number 8708.29.5060)" and was entered for consumption within the timeframe provided for in the exclusion notice, the Subject Merchandise must be excluded from the additional 25% Section 301 duty.

## TARIFF PROVISIONS AT ISSUE

CBP liquidated the Subject Merchandise under primary subheading 8708.29.5060, HTSUS (2020 Rev. 26 for all references) which provides as follows:

**8708**    Parts and accessories of the motor vehicles of headings 8701 to 8705:
                 Other parts and accessories of bodies (including cabs):
**8708.29**             Other:
**8708.29.5060**                 Other; Other.

This subheading had an applicable *ad valorem* duty rate of 2.5%. Neither party disputes the applicable primary subheading for the Subject Merchandise.

4

Nonconfidential Redacted Copy

Additionally, CBP liquidated the Subject Merchandise under secondary subheading **9903.88.03**, HTSUS, which provides as follows:

> Except as provided in headings 9903.88.13, 9903.88.18, 9903.88.33, 9903.88.34, 9903.88.35, 9903.88.36, 9903.88.37, 9903.88.38, 9903.88.40, 9903.88.41, 9903.88.43, 9903.88.45, 9903.88.46, 9903.88.48, 9903.88.56, 9903.88.64, 9903.88.66, 9903.88.67 or 9903.88.68, articles the product of China, as provided for in U.S. Note 20(e) to this subchapter and as provided for in the subheadings enumerated in U.S. Note 20(f).

This subheading had an additional applicable 25% Section 301 duty.

KAO contends that the classification of the Subject Merchandise in subheading 9903.88.03, HTSUS, is incorrect, and the Subject Merchandise must be classified under secondary subheading **9903.88.56**, HTSUS. This subheading provides as follows:

> Effective with respect to entries on or after August 7, 2020, and through December 31, 2020, articles the product of China, as provided for in U.S. note 20(iii) to this subchapter, each covered by an exclusion granted by the U.S. Trade Representative.

This subheading was not subject to the additional 25% Section 301 duty.

U.S. Note 20(iii) to Chapter 99, HTSUS, states that, "[p]ursuant to the product exclusion process, the U.S. Trade Representative has determined that, as provided in heading 9903.88.56, the additional duties provided for in heading 9903.88.03 ***shall not apply*** to the following particular products, which are provided for in the enumerated statistical reporting numbers." (Emphasis added). Among the products that are provided for and listed under U.S. Note 20(iii) includes the following:

> *(213) Tire carrier attachments, roof racks, fender liners, **side protective attachments**, the foregoing of steel (**described in statistical reporting number 8708.29.5060**)*

(Emphasis added).

Nonconfidential Redacted Copy

As explained herein, the merchandise must be excluded from the additional 25% Section 301 duty pursuant to subheading 9903.88.56 and to **U.S. Note 20(iii)(213)** to Subchapter III of Chapter 99, HTSUS.

**QUESTION PRESENTED FOR DECISION**

Whether the Subject Merchandise meets the description of ". . . side protective attachments, the foregoing of steel (described in statistical reporting number 8708.29.5060)" that is provided for under the exclusion set forth in U.S. Note 20(iii)(213) to Subchapter III of Chapter 99, HTSUS, and is thus excluded from the additional 25% Section 301 duty per application of subheading 9903.88.56, HTSUS.

**SUMMARY OF THE ARGUMENT**

As discussed more fully below, the only criterion established by the USTR to qualify for the specific U.S. Note 20 exclusion (besides the entry timeframe) is that the product in question *meets the description* of merchandise set forth in the particular exclusion. *See* 85 Fed. Reg. at 48,601.

The identity of the Subject Merchandise is not in dispute. The Subject Merchandise attaches to the vehicle, protects the side of the vehicle, and serves as a step-up into the vehicle. **PSUF 11-21**. The Subject Merchandise is made of steel and contains additional plastic step pad features. **PSUF 14, 19-20**. It is undisputed that the Subject Merchandise is described in statistical reporting number 8708.29.5060, HTSUS. **PSUF 21**. The Subject Merchandise is also virtually identical to the product that resulted in the Section 301 exclusion at issue here. Finally, the Subject Merchandise was entered into the United States on consumption entry number 600-

6

**Nonconfidential Redacted Copy**

1015721-6 on November 18, 2020, which is within the timeframe set forth under subheading 9903.88.56, HTSUS, and provided for in the exclusion notice. **PSUF 4, 23**.

It follows that the Subject Merchandise meets the description of exclusion for "[t]ire carrier attachments, roof racks, fender liners, side protective attachments, the foregoing of steel (described in statistical reporting number 8708.29.5060)" as described in U.S. Note 20(iii)(213) to Subchapter III of Chapter 99, HTSUS, and provided in subheading 9903.88.56, HTSUS, and thus must be excluded from the additional 25% Section 301 duty.

## JURISDICTION

KAO brings this action pursuant to 19 U.S.C. § 1515. The Court has exclusive jurisdiction over any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930 pursuant to 28 U.S.C. § 1581(a). 28 U.S.C. § 1581(a) (2022). Protest number 4601-21-126305, which is at issue in this action, was timely filed and subsequently "deemed" denied pursuant to 19 U.S.C. § 1515(b) on April 8, 2021. **PSUF 7-8**. KAO timely filed the summons in this action on May 4, 2021, after having paid the liquidated duties in accordance with 28 U.S.C. § 2673(a). 28 U.S.C. § 2673(a) (2022); **PSUF 9-10**. Thus, the Court has jurisdiction over this action.

## STANDARD OF REVIEW

When reviewing the denial of a protest and a classification challenge, the Court "does not defer to [CBP's] decisions" and instead applies the *de novo* standard of review to "the record made before the court." *R.T. Foods, Inc. v. United States*, 887 F. Supp. 2d 1351, 1354–55 (Ct. Int'l Trade 2012), *aff'd*, 757 F.3d 1349 (Fed. Cir. 2014) (citations omitted); 28 U.S.C. § 2640(a) (2022); *see also Plexus Corp. v. United States*, 489 F. Supp. 3d 1379, 1389 (Ct. Int'l Trade 2020).

Nonconfidential Redacted Copy

A two-step analysis guides the Court in ascertaining the appropriate classification of merchandise: (1) determining the proper meaning of the terms in the tariff provision; and (2) confirming whether the subject merchandise falls within the parameters of the tariff provision. *SGS Sports Inc. v. United States*, 620 F. Supp. 3d 1365, 1371 (Ct. Int'l Trade 2023); *Hewlett-Packard Co. v. United States*, 189 F.3d 1346, 1348 (Fed. Cir. 1999). While the first prong serves as a question of law, the second is a question of fact. *SGS Sports Inc.*, 620 F. Supp. 3d at 1371.

In cases where "there is no dispute as to the nature of the merchandise, then the two-step classification analysis collapses entirely into a question of law," and the Court may resolve a classification dispute as a matter of law on a motion for summary judgment. *Link Snacks, Inc. v. United States*, 742 F.3d 962, 965–66 (Fed. Cir. 2014) (citations omitted); *see also Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1163 (Fed. Cir. 2017). Thus, summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. USCIT R. 56(a); *see also Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1371 (Fed. Cir. 2013); *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998); *Plexus Corp.*, 489 F. Supp. 3d at 1388.

While CBP is generally afforded a "statutory presumption of correctness in its classification decisions, this does not apply to pure issues of law in a summary judgment motion before the Court," as the Court has an obligation to independently "decide the legal issue of the proper meaning and scope of HTSUS terms." *R.T. Foods, Inc.*, 887 F. Supp. 2d at 1354 (*citing Universal Elecs. Inc. v. United States*, 112 F.3d 488, 491-92 (Fed. Cir. 1997) ("[p]ure questions of law, such as the proper interpretation of a particular tariff provision or term…lie within the domain of the courts…and the presumption [of correctness] carries no force as to questions of

Nonconfidential Redacted Copy

law.")); *Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005) (citation omitted).

Summary judgment in a classification action is particularly appropriate where, as here, "there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is." *Bausch & Lomb, Inc.*, 148 F.3d at 1365. In determining whether a genuine issue of fact exists, the Court reviews the evidence submitted and draws all inferences in favor of the party opposing the motion. *United States v. Pan Pac. Textile Group Inc.*, 276 F. Supp. 2d 1316, 1318–19 (Ct. Int'l Trade 2003); *see also Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But even if there are "differences in the factual positions advanced by each party," summary judgment remains appropriate unless there are "genuine issues of material fact in dispute." *Chevron Chem. Co. v. United States*, 59 F. Supp. 2d 1361, 1363 (Ct. Int'l Trade 1999).

Here, no dispute exists as to the nature of the Subject Merchandise. The Subject Merchandise comprises various side bars, nerf bars, and bars made of steel that attach to the vehicle, afford protection to the side of the vehicle to which they are attached, and serve as a step-up into the vehicle. **PSUF 11-20**. Additionally, there is no dispute that the Subject Merchandise is properly classified under primary subheading 8708.29.5060, HTSUS. **PSUF 21**. The only open issue for the Court is to determine the proper meaning, scope, and interpretation of the Section 301 tariff exclusion provided for under subheading 9903.88.56, HTSUS, and described in U.S. Note 20(iii)(213) to Subchapter III of Chapter 99, HTSUS.

As detailed in this memorandum and related supporting materials, CBP's classification of the Subject Merchandise under secondary subheading 9903.88.03, HTSUS, is improper, as that subheading explicitly *does not apply* to articles provided for in—among other provisions—

9

subheading 9903.88.56, HTSUS.  Instead, the Subject Merchandise should be classified under primary subheading 8708.29.5060, HTSUS, and secondary subheading 9903.88.56, HTSUS. The Subject Merchandise is excluded from the 25% Section 301 duty pursuant to subheading 9903.88.56 and U.S. Note 20(iii)(213) to Subchapter III of Chapter 99, HTSUS, which specifically describes "[t]ire carrier attachments, roof racks, fender liners, side protective attachments, the foregoing of steel (described in statistical reporting number 8708.29.5060)." Accordingly, KAO is entitled to summary judgment as a matter of law.

## ARGUMENT

The analysis and application of the Section 301 tariff exclusion language provided for in the U.S. Note 20 to Subchapter III of Chapter 99, HTSUS, is an issue of first impression for this Court. U.S. Note 20(e) to Subchapter III of Chapter 99, HTSUS, specifically provides as follows:

> For the purposes of heading 9903.88.03, products of China, as provided for in this note, shall be subject to an additional 25 percent ad valorem rate of duty. **The products of China that are subject to an additional 25 percent ad valorem rate of duty under heading 9903.88.03 are products of China that are classified in the subheadings enumerated in U.S. Note 20(f) to subchapter III**. All products of China that are classified in the subheadings enumerated in U.S. Note 20(f) to subchapter III are subject to the additional 25 percent ad valorem rate of duty imposed by heading 9903.88.03, **except products of China granted an exclusion by the U.S. Trade Representative and provided for in [...] heading 9903.88.56 and U.S. Note 20(iii) to subchapter III of chapter 99**.

U.S. Note 20(e) to Subchapter III of Chapter 99, HTSUS. (Emphasis added).

Further, subheading 8708.29.50, HTSUS, is specifically enumerated in U.S. Note 20(f) to Subchapter III of Chapter 99, HTSUS. Thus, the products of China that are classified in subheading 8708.29.50, HTSUS, are subject to the additional 25 percent *ad valorem* rate of duty imposed by subheading 9903.88.03, **except for products of China granted an exclusion by the USTR and provided for in, among others, subheading 9903.88.56 and U.S. Note 20(iii) to Subchapter III of Chapter 99**.

10

Nonconfidential Redacted Copy

The Subject Merchandise is properly classified under primary subheading 8708.29.5060, HTSUS, which specifically provided for "[p]arts and accessories of the motor vehicles of headings 8701 to 8705: Other parts and accessories of bodies (including cabs): Other: Other: Other." **PSUF 21**. Thus, to be excluded from the additional 25% Section 301 duty imposed by subheading 9903.88.03, the Subject Merchandise must qualify for one of the exclusions provided for in, among others, subheading 9903.88.56 and U.S. Note 20(iii) to Subchapter III of Chapter 99.

Subheading 9903.88.56, HTSUS, effective for entries made on or after August 7, 2020, and through December 31, 2020, specifically provides for "articles the product of China, as provided for in U.S. Note 20(iii) to this subchapter, each covered by an exclusion granted by the U.S. Trade Representative." Among other exclusions set forth in U.S. Note 20(iii), the additional 25% Section 301 duty imposed by heading 9903.88.03 does not apply to "[t]ire carrier attachments, roof racks, fender liners, *side protective attachments, the foregoing of steel (described in statistical reporting number 8708.29.5060)*" entered between August 7, 2020, and December 31, 2020. *See* subheading 9903.88.56 and U.S. Note 20(iii)(213) to Subchapter III of Chapter 99, HTSUS (emphasis added).

## I.     The Subject Merchandise Meets the Description of "… Side Protective Attachments, the Foregoing of Steel (Described in Statistical Reporting Number 8708.29.5060)."

Unless specifically indicated otherwise, the General Rules of Interpretation ("GRIs") and the Additional Rules of Interpretation ("ARIs") provide the analytical framework for the interpretation of the tariff provisions within each chapter, heading, and subheading to classify imported merchandise. *See N. Am. Processing Co. v. United States*, 236 F.3d 695, 698 (Fed. Cir.

11

2001); *Toy Biz, Inc. v. United States*, 248 F. Supp. 2d 1234, 1242 (Ct. Int'l Trade 2003) (*citing*

*Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998)). The GRIs and

ARIs are applied in numerical order, and if an "earlier rule resolves a classification question, the

court does not look to subsequent rules." *ABB, Inc. v. United States*, 421 F.3d 1274, 1276 (Fed.

Cir. 2005); *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011). GRI 1

specifically provides that the classification of goods must be determined according to the terms

of the headings of the tariff schedule ***and any relative section or chapter notes***. GRI 1 (emphasis

added).

In this case, the Section 301 exclusion at issue, "[t]ire carrier attachments, roof racks,

fender liners, ***side protective attachments, the foregoing of steel (described in statistical***

***reporting number 8708.29.5060)***," is specifically provided for in U.S. Note 20(iii)(213) to

Subchapter III of Chapter 99, HTSUS. (Emphasis added). As subheading 9903.88.56

encompasses articles that are "provided for in U.S. Note 20(iii)," per GRI 1, the classification of

the Subject Merchandise must be determined according to the description set forth in U.S. Note

20(iii)(213) to Subchapter III of Chapter 99, HTSUS.

The Federal Register notice published by the USTR implementing Section 301 exclusion

at issue in this case provides a clearly identified standard for this Court to interpret and apply the

exclusion. Specifically, the USTR explains that "the exclusions are available for any product that

***meets the description*** in the Annex, regardless of whether the importer filed an exclusion

request." *Exclusion Extension Notice*, 85 Fed. Reg. at 48,601 (emphasis added). Thus, the only

criterion established by the USTR to qualify for the specific U.S. Note 20 exclusion (besides the

entry timeframe) is that the product in question ***meets the description*** of merchandise set forth in

**Nonconfidential Redacted Copy**

the particular exclusion. Imposing any additional characteristic or criterion will result in a limitation that is not provided for and not intended by the drafters of the exclusion language.

Put simply, to be excluded from the additional 25% Section 301 duty per the application of U.S. Note 20(iii)(213) to Chapter 99, HTSUS, the Subject Merchandise must meet the description of "side protective attachments, the foregoing of steel (described in statistical reporting number 8708.29.5060)." The relevancy of the phrase "described in statistical reporting number 8708.29.5060" is that the Subject Merchandise must also be used for "motor vehicles," because heading 8708 provides for "[p]arts and accessories of the motor vehicles of headings 8701 to 8705." Breaking this exclusion description down into its individual characteristics, the Subject Merchandise must: (A) be described in statistical reporting number 8708.29.5060; (B) be made of steel; (C) attach to a motor vehicle; and (D) protect the sides of the motor vehicle to which it is attached. As explained below, all these characteristics are met.

### A.      The Subject Merchandise is Described in Statistical Reporting Number 8708.29.5060, HTSUS

It is undisputed that the Subject Merchandise is properly classified under primary subheading 8708.29.5060, HTSUS, which specifically provides for "[p]arts and accessories of the motor vehicles of headings 8701 to 8705: Other parts and accessories of bodies (including cabs): Other: Other: Other." **PSUF 21**. As the primary tariff classification of the merchandise is not in dispute, this characteristic is met.

### B.      The Subject Merchandise is Made of Steel

Uncontroverted expert and fact testimony (including testimony by CBP's representative) and marketing materials clearly show that the Subject Merchandise is made of steel. **PSUF 14**. The Subject Merchandise is imported and sold to the end user ready for installation, including

13

mounting brackets and fasteners. **PSUF 15**. All models of the Subject Merchandise contain plastic step features (step pads) allowing the Subject Merchandise to also serve as a step-up into the vehicle to which it is attached. **PSUF 19**. However, plastic step pads cover an insignificant area on the steel bars at issue. *See* Subject Merchandise images in **Ex. B**. Moreover, plastic step pads account for an insignificant percentage of the cost [███████████████] in relation to the overall cost of the Subject Merchandise. **PSUF 20**. Because it is undisputed that the Subject Merchandise is made of steel, this characteristic is met.

###### C.    The Subject Merchandise Attaches to a Motor Vehicle

It is undisputed, and supported by testimony (including testimony by CBP's representative) and installation instructions, that the Subject Merchandise attaches to the frame on either side of motor vehicles classified in HTSUS Headings 8701-8705: generally, pick-up trucks, Jeeps, and off-road vehicles. **PSUF 16-18**. When attached, the Subject Merchandise extends the length of the vehicle from approximately the end of the rear door to the front of the front door, on each side of the vehicle. **PSUF 17**. Because it is undisputed that the Subject Merchandise attaches to a motor vehicle, this characteristic is met.

###### D.    The Subject Merchandise Protects the Sides of the Vehicle to Which it is Attached

Absent contrary legislative intent, "HTSUS terms are to be construed according to their common and commercial meanings," which are presumed to be the same. *Shamrock Bldg. Materials, Inc. v. United States*, 619 F. Supp. 3d 1337, 1342 (Ct. Int'l Trade 2023); *Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354, 1356 (Fed. Cir. 2001); *see also Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir.1999). To establish the common meaning of a term, "a court may consult lexicographic and scientific authorities, dictionaries, and other reliable

Nonconfidential Redacted Copy

information sources." *Carl Zeiss*, 195 F.3d at 1379 (*citing Baxter Healthcare Corp. of P.R. v. United States*, 182 F.3d 1333, 1337 (Fed. Cir. 1999)).

According to Merriam-Webster's online dictionary, the term "protect" (of which "protective" is the adjective form) means "to cover or shield from exposure, injury, damage, or destruction." *Protect, Merriam Webster Online Dictionary, available at* https://www.merriam-webster.com/dictionary/protect (last visited December 4, 2023). Based on the common meaning of the term "protect" in the adjective form, the Subject Merchandise must have the characteristics of covering or shielding the article to which it is attached from exposure, injury, damage, or destruction. As explained below, it does.

Uncontroverted expert reports,[1] and expert and fact testimony clearly show that the Subject Merchandise *protects*, or shields, the side of the motor vehicle to which it is attached from exposure, damage, and/or destruction. **PSUF 16-18**. Specifically, the Subject Merchandise provides superior stone pecking protection to the side of the vehicle. **PSUF 18.a**. "Stone pecking" is an automotive industry term that refers to an action where stones or similar substances, such as pebbles or grit, are caught in the tread on a tire, retained, and subsequently expelled. **PSUF 18.a.i.** Without protection, the expulsion of the substance from the tire impacts the vehicle, which creates a paint imperfection and leads to paint erosion and corrosion of the vehicle's sheet metal. **PSUF 18.a.i.**

Additionally, the expert report and export testimony indisputably show that the Subject Merchandise protects the side of the vehicle from damage caused by various road hazards and

---

[1] Mr. Stephen Kozak's expert report, attached as **Exhibit G**, analyzes stone pecking protection qualities of the Subject Merchandise and is based on Mr. Kozak's Computer-Aided Design ("CAD") study (performed by Roush Engineering under Mr. Kozak's direct supervision) of the sample of the Subject Merchandise (SKU # TGL414309P). The CAD study is attached as Exhibit A to the expert report. Mr. Kozak's resume is attached as Exhibit B to the expert report. The Government has provided neither an expert report nor a rebuttal expert report.

Nonconfidential Redacted Copy

road debris. **PSUF 18.b, c.** Further, the testimony of CBP's representative confirms that the Subject Merchandise protects the vehicle from side impacts. **PSUF 18.d.** Finally, the expert testimony confirms that the Subject Merchandise enhances mild anti-collision protective capabilities with shopping carts and other potential hazards that would cause damage to the vehicle's exterior. **PSUF 18.e.**

All of these instances are illustrative of how the Subject Merchandise clearly covers or shields the side of the motor vehicle to which it is attached from exposure, damage, and/or destruction caused by stones, road hazards, road debris, side impacts, shopping carts, and other things. **PSUF 18**. Thus, the Subject Merchandise "protects" the side of the motor vehicle to which it is attached, and this characteristic is also met.

Because the Subject Merchandise is described in statistical reporting number 8708.29.5060, is made of steel, attaches to a motor vehicle, and protects the sides of the motor vehicle to which it is attached, it meets all of the necessary characteristics set forth in the description of the Section 301 tariff exclusion provided for in U.S. Note 20(iii)(213) to Chapter 99, HTSUS, under subheading 9903.88.56, HTSUS.

II.     **The Subject Merchandise is Substantially Identical to Polaris's Product Intended for Coverage Which Resulted in the Language of the Exclusion.**

It is acknowledged that "the scope of each exclusion is governed by the scope of the ten-digit HTSUS headings and product descriptions in the Annex to this notice, and not by the product descriptions set out in any particular request for exclusion." *Exclusion Extension Notice*, 85 Fed. Reg. at 48,601. Nonetheless, the Court "may consult lexicographic and scientific authorities, dictionaries, and *other reliable information sources*" to ascertain the appropriate common and commercial meaning of a term. *Shamrock Bldg. Materials*, 619 F. Supp.at 1379

Nonconfidential Redacted Copy

(citing *Baxter Healthcare Corp. of P.R. v. United States*, 182 F.3d 1333, 1337 (Fed. Cir. 1999)) (emphasis added). Where a dispute arises as to how a product exclusion description is set forth in U.S. Note 20 to Subchapter III, Chapter 99, HTSUS, the request for exclusion may certainly include information that is relevant, or even important, to the Court's analysis. Specifically, a product description and information set out in the exclusion request may not necessarily be determinative on its own, but it is a source of information that may guide how the exclusion language ultimately came to be.

Here, the original exclusion application—the exclusion request and accompanying materials submitted to the USTR—is instrumental in interpreting the scope of what it is to be a "side protective attachment," and thus in assessing the applicability of the subject Section 301 exclusion to the Subject Merchandise. The term "side protective attachment" itself is not found anywhere else in the HTSUS, and thus could not have been the subject of any kind of interpretation—by this Court, CBP, or otherwise—prior to its usage in U.S. Note 20 to Subchapter III, Chapter 99, HTSUS. Outside of examining the specific language of the exclusions, as performed in Section I *infra*, the materials used in the development of this exclusion provision—including the original application—may well serve as the most reliable information source to determine USTR's intent in crafting and issuing the exclusion language covering "side protective attachments."

Originally, Polaris Industries Inc. ("Polaris") submitted an application for exclusion from Section 301 tariffs for merchandise described as, among others, "side armor protection." **PSUF 22**. On April 22, 2020, the USTR granted Polaris's application for an exclusion, modifying the language from "side armor protection" to "side protective attachments." **PSUF 23**. The intended item for coverage was specifically referred to in the application as "Smittybilt-branded metal

Nonconfidential Redacted Copy

fabrication." **PSUF 27**. Polaris's exclusion application contained an attachment of the image of the item intended for coverage entitled "Smittybilt Side Armor." **PSUF 28**.

Online marketing materials published on Smittybilt's website indisputably confirm that Smittybilt Side Armor (the item intended for coverage) "can be utilized[d] as protection as well as a step at the same time" and "provides protection and a step at the same time." **Compl. Ex. D**, at 31 of 39. Further, the expert in this case has confirmed that just like the Subject Merchandise, Smittybilt Side Armor has a surface that would be used to enter and exit the vehicle and afford protection to the side of the vehicle. **PSUF 29**.

Thus, the uncontroverted expert report and expert testimony and the underlying materials from the exclusion request confirm that the Subject Merchandise is utilized for the exact same purpose as Polaris's Smittybilt Side Armor – to protect the side of the vehicle and serve as a step. Just like the Smittybilt Side Armor, the Subject Merchandise affords stone pecking protection to the side of the vehicle and protects the side of the vehicle from road hazards and debris as well as assists with entering and exiting the vehicle. **PSUF 18-21, 22-33**. Thus, the intended item for coverage and Subject Merchandise are substantially identical.

Additionally, as indicated above, Polaris's exclusion application contained an attachment of the image of Smittybilt Side Armor. **Compl. Ex. D**, at 29 of 39. Visual comparison of the Subject Merchandise (see **Ex. B**) and Polaris's Smittybilt Side Armor (**Compl. Ex. D**, at 29 of 39) confirms that except for certain design differences, the products are substantially identical.

**III.    The Subject Merchandise's Protective Functionality is Superior to That of Polaris's Product Intended for Coverage Which Resulted in the Language of the Exclusion.**

Uncontested expert testimony has established that, with respect to the "protective" functionality of the Subject Merchandise, KAO's products may, in fact, exhibit even more

**Nonconfidential Redacted Copy**

effective stone pecking protection than Polaris's Smittybilt Side Armor**. PSUF 30-33**. The expert explained that the gaps between the bars in Polaris's product, holes, and/or large rectangular openings would allow the stones to pass through and contact the body side of the vehicle. **PSUF 31**. There would be small areas that would shield the body side, but there would be other areas that would allow the stones to pass through. **PSUF 31**. Other potential hazards (*e.g.*, road debris, bolts, nails) could also pass through the opening in Polaris's product and impinge against the side of the vehicle, which is not the case with KAO's product. **PSUF 30-33**. Thus, the expert witness concluded that KAO's product exhibits superior protective qualities to Polaris's product. **PSUF 33.**

It follows that the Subject Merchandise and Polaris's Smittybilt Side Armor are not only used for the same purpose, but the Subject Merchandise's stone pecking protection functionality is superior to that of Polaris's product.

Because the Subject Merchandise has all the features described in the exclusion for "…**side protective attachments, the foregoing of steel (described in statistical reporting number 8708.29.5060)**," is substantially identical to Polaris's product that resulted in the language of the exclusion, and is functionally superior to Polaris's product, the Subject Merchandise clearly meets the description of the subject exclusion.

**IV.    The Subject Merchandise Was Entered on a Consumption Entry Within the Timeframe of the Exclusion.**

The exclusion for "[t]ire carrier attachments, roof racks, fender liners, side protective attachments, the foregoing of steel (described in statistical reporting number 8708.29.5060)" described in U.S. Note 20(iii)(213) to Subchapter III of Chapter 99, HTSUS was to be "[e]ffective with respect to goods entered for consumption, or withdrawn from warehouse for

Nonconfidential Redacted Copy

consumption, on or after 12:01 a.m. eastern daylight time on August 7, 2020 and before 11:59

p.m. eastern daylight time on December 31, 2020…," under subheading 9903.88.56, HTSUS.

*Exclusion Extension Notice*, 85 Fed. Reg. at 48,602.

The Subject Merchandise was entered into the United States on November 18, 2020,

under consumption entry number 600-1015721-6. **PSUF 4**. This date falls in between August 7,

2020, and December 31, 2020. It follows that the Subject Merchandise was entered for

consumption within the timeframe provided for in the exclusion notice.

Based on the foregoing, KAO respectfully submits that the Subject Merchandise meets

the description of the exclusion for "[t]ire carrier attachments, roof racks, fender liners, **side**

**protective attachments, the foregoing of steel (described in statistical reporting number**

**8708.29.5060**)." *See* subheading 9903.88.56 and U.S. Note 20(iii)(213) to Subchapter III of

Chapter 99, HTSUS. (Emphasis added). Further, the Subject Merchandise was entered for

consumption within the timeframe provided for in the exclusion notice. Thus, the Subject

Merchandise must be excluded from the additional 25% Section 301 duty.

## <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff, Keystone Automotive Operations, Inc.,

respectfully submits that summary judgment should be entered in its favor, classifying the

Subject Merchandise under primary subheading 8708.29.5060, HTSUS, and secondary

subheading 9903.88.56, HTSUS, and, thus, be reliquidated with an exclusion from the 25%

Section 301 duty pursuant to U.S. Note 20(iii)(213) to subchapter III of chapter 99, HTSUS,

which specifically provides for "[t]ire carrier attachments, roof racks, fender liners, side

protective attachments, the foregoing of steel (described in statistical reporting number

8708.29.5060)."

Nonconfidential Redacted Copy

Respectfully submitted,

Dated:   __7 December 2023____

_____
Eric R. Rock, Attorney

Michael G. Hodes
Serhiy Kiyasov
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For Plaintiff Keystone Automotive Operations, Inc.*

21

Nonconfidential Redacted Copy

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Eric R. Rock, hereby certify that this brief complies with the 14,000 word-count limitation of the United States Court of International Trade set forth in Standard Chambers Procedure § 2(B)(1) because this brief contains 5,808 words. In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare this brief.

Respectfully submitted,

Dated: ___7 December 2023___    _____
Eric R. Rock, Attorney

Michael G. Hodes
Serhiy Kiyasov
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For Plaintiff Keystone Automotive Operations, Inc.*

22

Nonconfidential Redacted Copy

## CERTIFICATE OF SERVICE

I, Eric R. Rock, one of the attorneys for the plaintiff, certify that copies of the Plaintiff

Keystone Automotive Operations, Inc.'s Motion for Summary Judgement and Memorandum in

Support thereof, Declaration of Counsel, Statement of Undisputed Facts, and Exhibits were

served on all parties by sending a copy via the U.S. Court of International Trade's CM/ECF

System and email, this Thursday, December 7, 2023, addressed to each party or its attorney of

record at the address(es) listed below.

Brandon A. Kennedy
U.S. Department of Justice
International Trade Field Office
*Lead Attorney*
Brandon.A.Kennedy@usdoj.gov


Dated:   December 7, 2023

_____
Eric R. Rock, Attorney

Michael G. Hodes
Serhiy Kiyasov
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For Plaintiff Keystone Automotive
Operations, Inc.*

23

**Nonconfidential Redacted Copy**