Slip Op. 24-108

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **KEYSTONE AUTOMOTIVE OPERATIONS, INC.,** | |
| **Plaintiff,** | **Before: Jennifer Choe-Groves, Judge** |
| **v.** | **Court No. 21-00215** |
| **UNITED STATES,** | |
| **Defendant.** | |

## <u>OPINION AND ORDER</u>

[Denying both Plaintiff's and Defendant's motions for summary judgment and ordering a trial in a Customs classification matter.]

Dated: October 7, 2024

<u>Eric R. Rock</u>, <u>Michael G. Hodes</u>, and <u>Serhiy Kiyasov</u>, Rock Trade Law, LLC, of Chicago, IL, for Plaintiff Keystone Automotive Operations, Inc. <u>Austin J. Eighan</u> and <u>Lawrence R. Pilon</u> also appeared.

<u>Justin R. Miller</u>, Attorney-in-Charge, International Trade Field Office, and <u>Brandon A. Kennedy</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y. With them on the brief were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, and <u>Patricia M. McCarthy</u>, Director. Of Counsel was <u>Valerie Sorensen-Clark</u>, General Attorney, Office of the Assistant Chief Counsel for International Trade Litigation, U.S. Customs and Border Protection, of New York, N.Y. <u>Alexandra Khrebtukova</u> also appeared.

Choe-Groves, Judge: This case addresses whether various side bars, nerf

bars, and bars (collectively "subject merchandise") attached to motor vehicles are

considered "side protective attachments" as described in U.S. Note 20(iii)(213) to

Subchapter III of Chapter 99 of the Harmonized Tariff Schedule of the United

States ("HTSUS") and are therefore excluded from a 25% *ad valorem* rate of duty

applied to various products imported from the People's Republic of China

("China").  See Notice of Product Exclusion Extensions, 85 Fed. Reg. 48,600

(USTR Aug. 11, 2020) (China's acts, policies, and practices related to technology

transfer, intellectual property, and innovation); U.S. Note 20(iii)(213), Subchapter

III, Chapter 99, HTSUS.

Before the Court are cross-motions for summary judgment.  Pl.'s Mot.

Summ. J. & Mem. Law Supp. Pl.'s Mot. Summ. J. (Dec. 7, 2023) ("Pl.'s Br."),

ECF Nos. 48, 49; Def.'s Cross-Mot. Summ. J. & Mem. Law Supp. & Opp'n Pl.'s

Mot. Summ. J. (Feb. 16, 2024) ("Def.'s Br."), ECF Nos. 50, 51.

Keystone Automotive Operations, Inc. ("Plaintiff" or "Keystone") argues

that the subject merchandise are subject to the exclusion from the 25% *ad valorem*

rate of duty because they meet the description of "side protective attachments" that

are made of steel, were entered into the United States for consumption within the

timeframe provided in the exclusion notice, and were properly classified under ten-

digit HTSUS subheading 8708.29.5060.  Pl.'s Br. at 11–20.

The Government counters that the subject merchandise do not meet the

exclusion's description of "side protective attachments" made of steel because all

of Keystone's imported products consist of rubberized plastic steps mounted on steel bars that attach to the sides of vehicles and whose primary function and use is assisting an individual in entering and exiting a high road clearance vehicle by using the step pads. Def.'s Br. at 13–27.

For the reasons that follow, the Court denies both Plaintiff's and Defendant's cross-motions for summary judgment and will schedule a bench trial forthwith.

## ISSUE PRESENTED

Whether the subject merchandise meet the description of "side protective attachments" in U.S. Note 20(iii)(213) to Subchapter III of Chapter 99 of the HTSUS and are subject to an exclusion from the 25% *ad valorem* rate of duty.

## UNDISPUTED FACTS

Pursuant to USCIT Rule 56.3, Plaintiff and Defendant submitted separate statements of material facts and responses. Pl.'s Statement Undisputed Facts (Dec. 7, 2023) ("Pl.'s Facts"), ECF Nos. 48-1, 49-1; Def.'s Resp. Pl.'s Statement Undisputed Facts (Feb. 16, 2024) ("Def.'s Resp. Pl.'s Facts"), ECF Nos. 50-2, 51-2; Def.'s Statement Material Facts (Feb. 16, 2024) ("Def.'s Facts"), ECF Nos. 50-1, 51-1; Pl.'s Resp. Def.'s Statement Material Facts (Apr. 8, 2024) ("Pl.'s Resp. Def.'s Facts"), ECF Nos. 53-1, 54-1; Pl.'s Reply Def.'s Resp. Pl.'s Statement Undisputed Facts (Apr. 8, 2024) ("Pl.'s Reply"), ECF Nos. 53-2, 54-2. The following facts are not in dispute.

## I.    Procedural History

Plaintiff's import of the subject merchandise from China entered the United States through the Port of Newark, New Jersey, in November 2020.  Pl.'s Facts ¶ 4; Def.'s Resp. Pl.'s Facts ¶ 4; Protest No. 4601-21-126305, ECF No. 9-1.  The U.S. Customs and Border Protection ("Customs") liquidated the subject merchandise with a duty rate increase of 25% *ad valorem* under ten-digit HTSUS subheading 8708.29.5060 and HTSUS heading 9903.88.03 on February 5, 2021.  Pl.'s Facts ¶ 5; Def.'s Resp. Pl.'s Facts ¶ 5; Protest No. 4601-21-126305.  Customs reliquidated the subject merchandise on February 19, 2021.  Pl.'s Facts ¶ 6; Def.'s Resp. Pl.'s Facts ¶ 6; Compl. ¶ 21, ECF. No. 10; Ans. ¶ 21, ECF No. 17.  The subject merchandise were properly classified under ten-digit HTSUS subheading 8708.29.5060.  Pl.'s Facts ¶ 21; Def.'s Resp. Pl.'s Facts ¶ 21.

Plaintiff filed a timely protest challenging Customs' classification of the subject merchandise under HTSUS heading 9903.88.03 on March 9, 2021.  Pl.'s Facts ¶ 7; Def.'s Resp. Pl.'s Facts ¶ 7; Protest No. 4601-21-126305.  Keystone's protest was deemed denied by operation of law on April 8, 2021.  Pl.'s Facts ¶ 8; Def.'s Resp. Pl.'s Facts ¶ 8; Compl. ¶ 4; Ans. ¶ 4.  Keystone paid all duties, charges, and exactions assessed at liquidation pertaining to the subject merchandise.  Pl.'s Facts ¶ 10; Def.'s Resp. Pl.'s Facts ¶ 10; Compl. ¶ 6.  Plaintiff timely filed this action within 180 days of the protest being deemed denied.  Pl.'s

Facts ¶ 9; Def.'s Resp. Pl.'s Facts ¶ 9.  The matter was subsequently designated as

a test case.  Order (Dec. 20, 2021), ECF No. 22.  The Court held oral argument on

July 26, 2024.  Oral Arg. (July 26, 2024), ECF No. 66.

## II.    Description of Subject Merchandise

The subject merchandise consist of various side bars, nerf bars, and bars

designed for motor vehicles and come in various lengths of stainless-steel tubes

between 53.15 inches and 125.2 inches, either straight or curved at each end, in

widths between 4.02 inches and 13.23 inches, with or without welded end caps.

Pl.'s Facts ¶¶ 11–12; Def.'s Resp. Pl.'s Facts ¶¶ 11–12.  The subject merchandise

have mounting backets and fasteners and are usually purchased by an end-user of a

vehicle as pieces of after-market equipment.  Pl.'s Facts ¶¶ 13, 15; Def.'s Resp.

Pl.'s Facts ¶¶ 13, 15.  The vehicles on which the subject merchandise are generally

attached to are pick-up trucks, Jeeps, and off-road vehicles.  Pl.'s Facts ¶ 16; Def.'s

Resp. Pl.'s Facts ¶ 16.  On such vehicles, the subject merchandise are attached to

the frames on either side and serve as lowered steps that make it easier to get in

and out of lifted vehicles and wipe dirt off shoes.  Pl.'s Facts ¶¶ 16, 19; Def.'s

Resp. Pl.'s Facts ¶¶ 16, 19; Def.'s Facts ¶¶ 3–4, 7–8; Pl.'s Resp. Def.'s Facts ¶¶ 3–

4, 7–8.

The subject merchandise have a sleek and stylish look and provide a degree

of protection against stone pecking, road hazards, road debris, side impact, and

collisions with shopping carts and other objects.  Pl.'s Facts ¶ 18; Def.'s Resp. Pl.'s

Facts ¶ 18; Def.'s Facts ¶¶ 24–25; Pl.'s Resp. Def.'s Facts ¶¶ 24–25.  All models of

the subject merchandise contain plastic step features that allow users to use the

subject merchandise as step-ups into the vehicle.  Pl.'s Facts ¶ 19; Def.'s Resp.

Pl.'s Facts ¶ 19.

Plaintiff's imported products, including the subject merchandise, are sold

online through various websites and in physical retail locations and showrooms.

Def.'s Facts ¶ 27; Pl.'s Resp. Def.'s Facts ¶ 27.  Plaintiff is responsible for a

Facebook page for TrailFX products, which include the subject merchandise.

Def.'s Facts ¶ 19; Pl.'s Resp. Def.'s Facts ¶ 19.  Plaintiff's customers are able to

access Keystone's online product pages to read the product descriptions, refer to

the product pictures, and decide if they want to purchase the products.  Def.'s Facts

¶ 17; Pl.'s Resp. Def.'s Facts ¶ 17.  Plaintiff does not have any specific data or

metrics showing the percentage of customers who use the subject merchandise in a

certain manner or how often the customers use the subject merchandise.  Def.'s

Facts ¶ 26; Pl.'s Resp. Def.'s Facts ¶ 26.  For example, Defendant highlighted that

the A&A Auto Store's website sells products like the subject merchandise, nerf

bars, and steps in the category of exterior products, but does not sell them in the

"vehicle protection" subcategory of the exterior products category.  Def.'s Facts ¶¶

29–30; Pl.'s Resp. Def.'s Facts ¶¶ 29–30.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(a).  The Court

reviews classification cases de novo.  Cont'l Auto. Sys., Inc., v. United States, 46

CIT __, __, 589 F. Supp. 3d 1215, 1220 (2022); 28 U.S.C. § 2640(a)(1); Telebrands

Corp. v. United States, 36 CIT 1231, 1234, 865 F. Supp. 2d 1277, 1279–80 (2012).

The Court will grant summary judgment if "the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."  USCIT R. 56(a).  To raise a genuine issue of material fact, a party

cannot rest upon mere allegations or denials and must point to sufficient supporting

evidence for the claimed factual dispute to require resolution of the differing

versions of the truth at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–

49 (1986); Processed Plastics Co. v. United States, 473 F.3d 1164, 1170 (Fed. Cir.

2006); Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731 F.2d 831,

835–36 (Fed. Cir. 1984).

## DISCUSSION

### I.    Legal Framework

In a tariff classification dispute, "the court first considers whether 'the

government's classification is correct, both independently and in comparison with

the importer's alternative.'"  Shamrock Bldg. Materials, Inc. v. United States, 47

CIT __, __, 619 F. Supp. 3d 1337, 1342 (2023) (quoting Jarvis Clark Co. v. United

States, 733 F.2d 873, 878 (Fed. Cir. 1984)).  The plaintiff has the burden of

demonstrating that the government's classification is incorrect.  Jarvis Clark, 733

F.2d at 876.  Independent of the arguments presented, the Court has a statutory

mandate to "reach a correct result."  Id. at 878; see 28 U.S.C. § 2643(b).

 A two-step process guides the Court in determining the correct classification

of merchandise.  Ford Motor Co. v. United States, 926 F.3d 741, 748 (Fed. Cir.

2019) (citing ADC Telecomms., Inc. v. United States, 916 F.3d 1013, 1017 (Fed.

Cir. 2019)).  First, the Court ascertains the proper meaning of the terms in the tariff

provision.  Schlumberger Tech. Corp. v. United States, 845 F.3d 1158, 1162 (Fed.

Cir. 2017) (citing Sigma-Tau HealthScience, Inc. v. United States, 838 F.3d 1272,

1276 (Fed. Cir. 2016)).  Second, the Court determines whether the merchandise at

issue falls within the terms of the tariff provision.  Id.  The former is a question of

law, which the Court reviews de novo, and the latter is a question of fact, which the

Court reviews for clear error.  Id.  "[W]hen there is no dispute as to the nature of

the merchandise, then the two-step classification analysis 'collapses entirely into a

question of law.'"  Link Snacks, Inc. v. United States, 742 F.3d 962, 965–66 (Fed.

Cir. 2014) (quoting Cummins Inc. v. United States, 454 F.3d 1361, 1363 (Fed. Cir.

2006)).

 The classification of merchandise under the HTSUS is governed by the

General Rules of Interpretation ("GRIs") and, if applicable, the Additional U.S.

Rules of Interpretation ("ARIs"), which are both applied in numerical order.  BenQ

Am. Corp. v. United States, 646 F.3d 1371, 1376 (Fed. Cir. 2011) (citing N. Am.

Processing Co. v. United States, 236 F.3d 695, 698 (Fed. Cir. 2001)).  GRI 1

instructs that, "for legal purposes, classification shall be determined according to

the terms of the headings and any relative section or chapter notes."  GRI 1.

"Absent contrary legislative intent, HTSUS terms are to be 'construed [according]

to their common and popular meaning.'"  Baxter Healthcare Corp. of P.R. v.

United States, 182 F.3d 1333, 1337 (Fed. Cir. 1999) (alteration in original)

(quoting Marubeni Am. Corp. v. United States, 35 F.3d 530, 534 (Fed. Cir. 1994)).

     Chapter 99 of the HTSUS includes U.S. Notes, which are enacted by

Congress or proclaimed by the President.  See, e.g., Maple Leaf Mktg., Inc. v.

United States, 45 CIT __, __, 528 F. Supp. 3d 1365, 1370 (2021) ("The President

implemented the tariffs by modifying Subchapter III of Chapter 99 of the

Harmonized Tariff Schedule of the United States ('HTSUS') to add a new note and

a new tariff provision under the heading 9903.80.01.").  "Unless the context

requires otherwise, the general notes and rules of interpretation, the section notes,

and the [chapter notes]" apply to Chapter 99.  U.S. Note 2, Subchapter III, Chapter

99, HTSUS.  Generally, these Notes only relate to specific headings at the eight-

digit level, so they are "not binding for determining prima facie classifiability," but

they are "persuasive as to what Congress intended." Sarne Handbags Corp. v.

United States, 24 CIT 309, 317–18 (2000).

　　In construing the terms of the headings, the Court "may rely upon its own

understanding of the terms used and may consult lexicographic and scientific

authorities, dictionaries, and other reliable information sources." Carl Zeiss, Inc. v.

United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citing Baxter Healthcare

Corp. of P.R., 182 F.3d at 1337–38)).  The Court may also consult the Harmonized

Commodity Description and Coding System's Explanatory Notes ("Explanatory

Notes"), which "are not legally binding or dispositive," Kahrs Int'l, Inc. v. United

States, 713 F.3d 640, 645 (Fed. Cir. 2013), but "provide a commentary on the

scope of each heading of the Harmonized System" and are "generally indicative of

proper interpretation of the various provisions." H.R. Rep. No. 100–576, 549

(1988), reprinted in 1988 U.S.C.C.A.N. 1547, 1582; see also E.T. Horn Co. v.

United States, 367 F.3d 1326, 1329 (Fed. Cir. 2004).  Tariff terms are defined

according to the language of the headings, the relevant section and chapter notes,

the Explanatory Notes, available lexicographic sources, and other reliable sources

of information.

## II.    Relevant HTSUS Headings and U.S. Note 20(iii)(213)

　　Effective September 24, 2018, the Office of the United States Trade

Representative ("USTR") "imposed additional duties on goods of China with an

annual trade value of approximately $200 billion as part of the Section 301

investigation of China's acts, policies, and practices related to technology transfer,

intellectual property, and innovation."  Notice of Product Exclusion Extensions, 85

Fed. Reg. at 48,600.  Relevant to this case are goods classifiable under HTSUS

heading 9903.88.03, which covers "articles the product of China, as provided for in

U.S. note 20(e) to this subchapter and as provided for in the subheadings

enumerated in U.S. note 20(f)" except the goods covered in, among others, HTSUS

heading 9903.88.56.  Heading 9903.88.03, HTSUS.

>    U.S. Note 20(e) provides that:

> For the purposes of heading 9903.88.03, products of China, as provided
> for in this note, shall be subject to an additional 25 percent ad valorem
> rate of duty. The products of China that are subject to an additional 25
> percent ad valorem rate of duty under heading 9903.88.03 are products
> of China that are classified in the subheadings enumerated in U.S. note
> 20(f) to subchapter III.  All products of China that are classified in the
> subheadings enumerated in U.S. note 20(f) to subchapter III are subject
> to the additional 25 percent ad valorem rate of duty imposed by heading
> 9903.88.03, except products of China granted an exclusion by the U.S.
> Trade Representative and provided for in . . . (15) heading 9903.88.56
> and U.S. note 20(iii) to subchapter III of chapter 99.

U.S. Note 20(e), Subchapter III, Chapter 99, HTSUS.  U.S. Note 20(f) states that

"[h]eading 9903.88.03 applies to all products of China that are classified in the

following 8-digit subheadings, except products of China granted an exclusion by

the U.S. Trade Representative and provided for in . . . heading 9903.88.56 and U.S.

note 20(iii) to subchapter III of chapter 99." U.S. Note 20(f), Subchapter III,

Chapter 99, HTSUS.

On August 11, 2020, the USTR issued a Federal Register Notice stating that

certain products from China would be excluded from the 25% *ad valorem* rate of

duty imposed on goods from China classified under 5,757 full and partial

subheadings of the HTSUS. Notice of Product Exclusion, 85 Fed. Reg. at 48,601.

Each exclusion was governed by the scope of ten-digit HTSUS subheadings, and

the accompanying product descriptions were provided in Annexes for Extensions

of Certain Product Exclusions from Tranche 3. Id. Subchapter III to Chapter 99 of

the HTSUS was modified by inserting heading 9903.88.56, which was "[e]ffective

with respect to entries on or after August 7, 2020, and through December 31, 2020,

articles the product of China, as provided for in U.S. note 20(iii) to [Subchapter

III], each covered by an exclusion granted by the U.S. Trade Representative."

Heading 9903.88.56, HTSUS.

At issue in this case is U.S. Note 20(iii) to Subchapter III of Chapter 99 of

the HTSUS, which provides that:

> The U.S. Trade Representative determined to establish a process by
> which particular products classified in heading 9903.88.03 and
> provided for in U.S. notes 20(e) and 20(f) to this subchapter could be
> excluded from the additional duties imposed by heading 9903.88.03.
> See 83 Fed. Reg. 47974 (September 21, 2018) and 84 Fed. Reg. 29576
> (June 24, 2019). Pursuant to the product exclusion process, the U.S.
> Trade Representative has determined that, as provided in heading

9903.88.56, the additional duties provided for in heading 9903.88.03
shall not apply to the following particular products . . . :

   . . .

(213) Tire carrier attachments, roof racks, fender liners, side
protective attachments, the foregoing of steel (described in
statistical reporting number 8708.29.5060).

U.S. Note 20(iii)(213), Subchapter III, Chapter 99, HTSUS.

  HTSUS subheading 8708.29.5060 covers:

    8708  Parts and accessories of the motor vehicles of headings 8701 to 8705:

      8708.29  Other:

         8708.29.50  Other:

            8708.29.5060   Other

Subheading 8708.29.5060, HTSUS.  The Parties do not dispute that the subject

merchandise are classifiable under the ten-digit HTSUS subheading 8708.29.5060.

See Pl.'s Facts ¶ 21; Def.'s Resp. Pl.'s Facts ¶ 21.

  **III.**    **Analysis of "Side Protective Attachments" as Used in U.S. Note
20(iii)(213)**

      **A.**    **Whether "Side Protective Attachments" is a Principal Use
Provision**

As noted previously, the Court first considers whether the Government's

classification of the subject merchandise is correct, both independently and

compared to the importer's alternative.  See Shamrock Bldg. Materials, 619 F.

Supp. 3d 1342; Jarvis Clark, 733 F.2d at 876.  Thus, the Court must assess initially

whether U.S. Note 20(iii) to Subchapter III of Chapter 99 of the HTSUS is a use

provision as alleged by the Government or an *eo nomine* provision as alleged by

Plaintiff.

An *eo nomine* provision describes articles by specific names.  S.C. Johnson

& Son Inc. v. United States, 999 F.3d 1382, 1388 (Fed. Cir. 2021) (citing

Schlumberger Tech Corp., 845 F.3d at 1164)).  A principal use provision classifies

articles based on their principal or actual use.  Schlumberger Tech Corp., 845 F.3d

at 1164; see also R.T. Foods, Inc. v. United States, 757 F.3d 1349, 1355 (Fed. Cir.

2014).

Defendant contends in its cross-motion for summary judgment that U.S.

Note 20(iii) is a principal use provision.  Def.'s Br. at 13–14.  Defendant asserts

that "side protective attachments" should be understood as a principal use

provision because the phrase "side protective attachments" does not describe a

product by a specific name that is common in commerce, which Defendant argues

would be indicative of an *eo nomine* provision.  Id. at 14.

Plaintiff argues, on the contrary, that U.S. Note 20(iii) is not a principal use

provision because "conditioning an exclusion on some additional characteristic or

criterion that is not part of the exclusion's description—such as principal use—will

result in a limitation that is not provided for and not intended by the drafters of the

exclusion language."  Pl.'s Resp. Def.'s Cross-Mot. Summ. J. & Reply Further

Supp. Pl.'s Mot. Summ. J. (Apr. 8, 2024) ("Pl.'s Resp. Br.") at 12, ECF Nos. 53,

54. Plaintiff asserts that U.S. Note 20(iii) should be treated as an *eo nomine*

provision and that the subject merchandise are classifiable as "side protective

attachments" because the products are made of steel, attach to motor vehicles, and

protect the sides of the vehicle. Pl.'s Br. at 13–16; Pl.'s Resp. Br. at 11–20.

A principal use provision does not need to expressly use the words "used

for." S.C. Johnson & Son Inc., 999 F.3d at 1389 (citation omitted). Generic terms

that are preceded by an adjective that suggests a manner of use can constitute a

principal use provision. Id. (citing Stewart-Warner Corp. v. United States, 748

F.2d 663, 667 (Fed. Cir. 1984)).

ARI 1(a), which governs use provisions, provides that:

> 1. In the absence of special language or context which otherwise
>    requires—
>    (a) a tariff classification controlled by use (other than actual
>        use) is to be determined in accordance with the use in the
>        United States at, or immediately prior to, the date of
>        importation, of goods of that class or kind to which the
>        imported goods belong, and the controlling use is the
>        principal use[.]

ARI 1(a). Principal use "has been defined as the use 'which exceeds any other

single use.'" Aromont USA, Inc. v. United States, 671 F.3d 1310, 1312 (Fed. Cir.

2012) (emphasis omitted) (quoting Lenox Collections v. United States, 20 CIT 194,

196 (1996)).

The relevant provision at issue is "side protective attachments, the foregoing of steel."  U.S. Note 20(iii)(213), Subchapter III, Chapter 99, HTSUS.  This provision contains two adjectives, "side" and "protective," which modify the noun "attachments."  Although the term "protective" is an adjective, in the context of "side protective attachments," it modifies the word "attachments" in a way that convincingly suggests that the attachments on the side of the vehicle must be used in a protective manner.  See Stewart-Warner Corp., 748 F.2d at 667 (explaining that employing a term to modify another generic term "compels one to consider some aspect of use" as opposed to using a "purely descriptive" term).

The Oxford English Dictionary defines "protective" as "[h]aving the quality, character, or effect of protecting someone or something; preservative; defensive." *Protective*, OXFORD ENGLISH DICTIONARY (2d ed. revised 2007).  This dictionary definition is informative and leads the Court to conclude that the phrase "side protective attachments" inherently suggests use because the phrase connotes that an attachment that is described by U.S. Note 20(iii) is an article that *protects* the vehicle on the side on which it is attached.  See U.S. Note 20(iii)(213), Subchapter III, Chapter 99, HTSUS.  The Court agrees with Defendant that "something that is 'protective' is something whose use or function is to provide protection, *i.e.*, covering or shielding something from exposure, injury, damage, or destruction." Def.'s Reply Mem. Further Supp. Cross-Mot. Summ. J. ("Def.'s Reply Br.") (May

29, 2014) at 8, ECF Nos. 56, 57.  In other words, the attachment on the side must

be used to protect the vehicle, and the adjective "protective" suggests a manner of

use constituting a principal use provision.  See S.C. Johnson & Son Inc., 999 F.3d

at 1389.

As an aside, the Court concludes that "side protective attachments" does not

require that only the side of the vehicle must be protected (as opposed to, for

example, the bottom or other parts of the vehicle being protected).  If the provision

were intended to require only the protection of the side of the vehicle, the language

would presumably have been written as "side-protective attachments," which

would have indicated a more specific intention of protecting the side of the vehicle.

Because the two adjectives "side" and "protective" are not written as one

combined term, the Court concludes that a less specific meaning was intended, that

the attachment would be located on the side of the vehicle, and must be used in a

protective manner.

The Court concludes that the term "side protective attachments" in U.S.

Note 20(iii)(213) to Subchapter III of Chapter 99 of the HTSUS is a principal use

provision.  The Court construes the tariff provision "side protective attachments"

under ARI 1 to mean steel products that are attached to the side of a vehicle and are

used to protect the vehicle.

### B.    Whether "Side Protective Attachments" is an *Eo Nomine* Provision

Notwithstanding the Court's conclusion that the tariff provision at issue is a principal use provision as alleged by Defendant, the Court also considers whether the tariff provision is an *eo nomine* provision as alleged by Plaintiff.  An *eo nomine* provision describes articles by specific names and includes all forms of the named article, even the article's improved forms.  Ford Motor Co., 926 F.3d at 750; see Schlumberger Tech Corp., 845 F.3d at 1164; see, e.g., Otter Prods., LLC v. United States, 834 F.3d 1369, 1375–76 (Fed. Cir. 2016) (concluding that HSTUS heading 4202 is an *eo nomine* provision that described articles by their specific names because HTSUS heading 4202 covers, among other things "[t]runks, suitcases, vanity cases, attache cases, briefcases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters, and similar containers").

U.S. Note 20(iii)(213) to Subchapter III of Chapter 99 of the HTSUS lists "side protective attachments" as products that are excluded from the 25% *ad valorem* rate of duty.  U.S. Note 20(iii)(213), Subchapter III, Chapter 99, HTSUS. The Court observes that the term "side protective attachments" as it is used in U.S. Note 20(iii)(213) does not refer to the specific name of products.  As discussed at

oral argument, there are no products called "side protective attachments."   Oral

Arg. Tr. ("Oral Arg.") at 19:16–20:8, 52:2–4, 57:17–24, ECF No. 67.

Relevant to this analysis, the Court observes that Polaris Inc. (not a party to

this litigation) submitted the original request for an exclusion from Section 301

tariffs to USTR for parts used in the manufacture, repair, and service of

powersports vehicles, including Polaris' "Smittybilt side armor" products.  Compl.

Ex. A.  In response, USTR granted an exclusion to Polaris.  Rather than using the

phrase "side armor" or another term for Polaris' products, however, USTR

included the term "side protective attachments" in U.S. Note 20(iii) to cover

Polaris' "side armor" products.  Plaintiff argues that its nerf bars, side bars, and

bars are similar to Polaris' Smittybilt side armor products, and therefore should be

treated as excluded "side protective attachments" under U.S. Note 20(iii).

The following are examples of Plaintiff's products:




Pl.'s Br. Ex. B-1 at 37, 55.

Plaintiff admitted at oral argument that its products are not called "side protective attachments," but suggested that the phrase is a description of a class or kind of good that are attached to the side of a vehicle.  <u>See</u> Oral Arg. at 19:16–20:8. The Court is persuaded by Defendant's counterargument that there is no evidence on the record that Plaintiff or anyone else in the automotive industry uses the term "side protective attachments" in commerce.  <u>See</u> Def.'s Reply Br. at 3.  Defendant also notes that "the evidence in the record shows that the subject merchandise is commonly referred to as truck steps, step bars, steps, side steps, nerf bars with steps, or side bars with steps."  <u>Id.</u>

It is well-established that a heading is *eo nomine* when it describes a commodity by a specific name, usually one common in commerce.  <u>Orlando Food Corp. v. United States</u>, 140 F.3d 1437, 1441 (Fed. Cir. 1998).  Because there is no evidence on the record establishing that the term "side protective attachments" identifies an article or a product by a specific name, or a product common in commerce, the Court concludes that "side protective attachments" is not an *eo nomine* provision.

### C.   Whether Plaintiff's Products are "Side Protective Attachments" Under a Principal Use Analysis

A "principal use" provision is defined as one in which the use "exceeds any other *single* use" in the context of ARI 1(a).  Aromont USA, Inc., 671 F.3d at 1312.  Principal use provisions require the Court to determine whether the group of goods are "commercially fungible with the imported goods" in order to identify the use "which exceeds any other single use."  Id.  In analyzing whether the subject merchandise in this case are commercially fungible, the Court considers the Carborundum factors, which are

> [1] use in the same manner as merchandise which defines the class; [2] the general physical characteristics of the merchandise; [3] the economic practicality of so using the import; [4] the expectation of the ultimate purchasers; [5] the channels of trade in which the merchandise moves; [6] the environment of the sale, such as accompanying accessories and the manner in which the merchandise is advertised and displayed; and [7] the recognition in the trade of this use.

Id. at 1313 (citing United States v. Carborundum, 63 C.C.P.A. 98, 102, 536 F.2d 373, 377 (1976)).  ARI 1(a) requires examination of the principal use not only of Plaintiff's subject merchandise, but also of all similar merchandise.

The undisputed facts establish that the subject merchandise have steel and plastic characteristics and that they are attached to the frames on either side of a motor vehicle.  Pl.'s Facts ¶¶ 14, 16, 19–20; Def.'s Resp. Pl.'s Facts ¶¶ 14, 16, 19–20.  The undisputed facts demonstrate that the subject merchandise are sold online

and that on the A&A Auto Store's website, the subject merchandise, particularly

the nerf bars and step bars, are sold under the category of exterior products, but not

within the "vehicle protection" subcategory of the exterior products category.

Def.'s Facts ¶¶ 29–30; Pl.'s Resp. Def.'s Facts ¶¶ 29–30.  The undisputed facts also

show that Plaintiff does not have any specific data or metrics showing the manner

in which Keystone's customers use the subject merchandise or how often they use

them in a specific manner or for a specific purpose.  Def.'s Facts ¶ 26; Pl.'s Resp.

Def.'s Facts ¶ 26.

　　　Although the undisputed facts describe some of the general physical

characteristics of the subject merchandise and the environment in which the subject

merchandise are sold, the Parties dispute whether the subject merchandise are used

in the same manner as the side protective attachments that are excluded from the

25% *ad valorem* rate of duty.  See Def.'s Br. at 23–25; Pl.'s Resp. Br. at 28–29.

The Parties dispute, for example, whether Plaintiff's side bars, nerf bars, and bars

are used principally for protection of the vehicle or are used principally as devices

on which to step into an elevated vehicle such as a truck or SUV.  See Def.'s Br. at

8, 13–16; Pl.'s Resp. Br. at 20–23.  The Parties also dispute how Plaintiff's side

bars, nerf bars, and bars compare to the Smittybilt side armor products that were

granted the exclusion from Section 301 tariffs by USTR.  See Pl.'s Br. at 18; Def.'s

Br. at 28–29; Pl.'s Resp. Br. at 2–3, 7–11.  The undisputed facts do not show what

the expectations of the ultimate purchasers of the subject merchandise are or

whether products that meet the description of "side protective attachments" are

sold in a different environment than the subject merchandise.  See Def.'s Facts ¶¶

26, 29–30; Pl.'s Resp. Def.'s Facts ¶¶ 26, 29–30.  There is also a dispute whether

the primary use of Plaintiff's side bars, nerf bars, and bars is for stepping into

higher vehicles, rather than a secondary use of protecting the vehicles, and whether

this would affect if the subject merchandise can be deemed to have the same

function and principal use as the side protective attachments provided for in U.S.

Note 20(iii)(213) to Subchapter III of Chapter 99 of the HTSUS.  See Def.'s Br. at

16–20; Pl.'s Resp. Br. at 24–26; Def.'s Reply Br. at 11–15.

        The undisputed facts are not sufficient for the Court to fully analyze whether

the subject merchandise are commercially fungible with the side protective

attachments described in U.S. Note 20(iii)(213) to Subchapter III of Chapter 99 of

the HTSUS.  The undisputed facts do not adequately address all the Carborundum

factors, particularly the factors regarding the use of the subject merchandise in the

same manner as the side protective attachments, the economic practicality of so

using the import, the expectation of the ultimate purchasers, and the recognition in

the trade of the use of the subject merchandise.  Because relevant material facts

remain in dispute, the Court is unable to grant either Plaintiff's or Defendant's

motion for summary judgment at this stage of litigation.

## CONCLUSION

For the foregoing reasons, the Court will hold a bench trial to make a preliminary determination as to the principal use of the subject merchandise and a subsequent determination "as to the group of goods that are commercially fungible with the imported goods."  <u>Aromont</u>, 671 F.3d at 1312 (quoting <u>Primal Lite, Inc. v. United States</u>, 182 F.3d 1362, 1365 (Fed. Cir. 1999)).  After making these determinations at trial, the Court will decide whether the subject merchandise are commercially fungible with the side protective attachments described in U.S. Note 20(iii)(213) to Subchapter III of Chapter 99 of the HTSUS, and are therefore excluded from the 25% *ad valorem* rate of duty as provided for under HTSUS heading 9903.88.56.

Accordingly, it is hereby:

**ORDERED** that Plaintiff's Motion for Summary Judgment, ECF Nos. 48, 49, is denied; and it is further

**ORDERED** that Defendant's Cross-Motion for Summary Judgment, ECF Nos. 50, 51, is denied; and it is further

**ORDERED** that a bench trial will be held on a date to be determined.

   /s/ Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated:    October 7, 2024
              New York, New York