**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE**

| |
|---|
| **KEYSTONE AUTOMOTIVE OPERATIONS, INC.,** |
| Plaintiff, |
| **v.** |
| **UNITED STATES**, |
| Defendant. |

Court No. 21-00215

## <u>PROPOSED ORDER</u>

Upon consideration of Plaintiff's Motion for Reconsideration or, in the Alternative, to Amend and Certify Order for Interlocutory Appeal and for Stay of Proceedings Pending Appeal, and after due deliberation, it is hereby —

**ORDERED** that Plaintiff's motion for reconsideration is granted; and it is further

**ORDERED** that Plaintiff's motion for summary judgment is granted; or, in the alternative,

**ORDERED** that Plaintiff's motion to amend and certify order for interlocutory appeal and for stay of the proceedings pending appeal is granted; and it is further

**ORDERED** that the Court's Opinion and Order of October 7, 2024, Slip Op. 24-108, is amended to include the following statement:

> This Order is hereby certified for immediate appeal pursuant to 28 U.S.C. § 1292(d)(1) on the grounds that such Order involves a controlling question of law with respect to which there is a substantial ground for difference of opinion and an immediate appeal from the Order may materially advance the ultimate termination of the litigation. The following question of law is hereby certified for immediate appeal:
>
> > Whether the language of the Federal Register notice requires that the product qualifies for the exclusion if it is simply capable of being described by the exclusion language and does not require analysis under GRIs and

ARIs as *eo nomine* or principal use provision given that GRIs and ARIs are applied unless context otherwise requires.

and it is further

**ORDERED** that any further proceedings in this matter in the United States Court of International Trade shall be stayed until such time as the United States Court of Appeals for the Federal Circuit has ruled upon Plaintiff's motion for interlocutory appeal and, if applicable, has rendered judgment on the merits of such interlocutory appeal, at which time this Court will issue a new schedule for further action, should such action be warranted.

_____

HON. JENNIFER CHOE-GROVES, JUDGE

Dated: New York, New York

This _____day of _____, 2024.

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| **KEYSTONE AUTOMOTIVE OPERATIONS, INC.,**<br><br>                           Plaintiff,<br><br>        **v.**<br><br>**UNITED STATES**,<br>                           Defendant. | Court No. 21-00215 |

### PLAINTIFF'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, TO AMEND AND CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR STAY OF PROCEEDINGS PENDING APPEAL

Pursuant to Rule 54(b) of the Rules of the United States Court of International Trade ("USCIT"), Plaintiff, Keystone Automotive Operations, Inc. ("KAO" or "Plaintiff"), respectfully requests that this Court reconsider the denial of Plaintiff's Motion for Summary Judgment (**ECF Nos. 48** and **49**) against Defendant, United States, in the Court's Opinion and Order issued as *Keystone Auto. Operations, Inc. v. United States*, No. 21-00215, 2024 Ct. Intl. Trade LEXIS 109 (Ct. Int'l Trade Oct. 7, 2024) (Slip Op. 24-108) (hereinafter, "Slip Opinion").

Should this Court deny Plaintiff's motion for reconsideration, Plaintiff respectfully requests that this Court amend the Slip Opinion to include a statement certifying the Court's ruling on Plaintiff's Motion for Summary Judgment (**ECF Nos. 48** and **49**) for interlocutory appeal pursuant to 28 U.S.C. § 1292(d)(1) on the grounds that the Slip Opinion involves a controlling question of law with respect to which there is a substantial ground for difference of opinion and an immediate appeal from such order may materially advance the ultimate termination of the litigation. Plaintiff further respectfully requests that this Court stay any further proceedings in this matter in the USCIT should the Court certify the Slip Opinion for interlocutory appeal.

## I.  INTRODUCTION AND SUMMARY OF THE ARGUMENT

At issue in this case is the applicability of a Section 301 tariff exclusion, which provides for "[t]ire carrier attachments, roof racks, fender liners, *side protective attachments, the foregoing of steel (described in statistical reporting number 8708.29.5060)*," to the subject side bars, nerf bars, and bars imported by Plaintiff.

Plaintiff filed its Motion for Summary Judgment on December 7, 2023. *See* **ECF Nos. 48** and **49**. Defendant filed its Cross-Motion for Summary Judgment and Memorandum of Law in Support Thereof and in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Cross-Motion") on February 16, 2024. *See* **ECF Nos. 50** and **51**. Plaintiff filed its Response in Opposition to Defendant's Cross-Motion for Summary Judgment and Reply in Further Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Response") on April 8, 2024. *See* **ECF Nos. 53** and **54**. Defendant filed its Reply Memorandum in Further Support of its Cross-Motion for Summary Judgment ("Defendant's Reply") on May 29, 2024. *See* **ECF Nos. 56** and **57**. Plaintiff filed its Sur-Reply to Defendant's Reply in Further Support of Defendant's Cross-Motion for Summary Judgment ("Plaintiff's Sur-Reply") on June 12, 2024. *See* **ECF Nos. 59** and **61**. An oral argument concerning both Plaintiff's and Defendant's motions for summary judgment in this matter was held on July 26, 2024. *See* **ECF Nos. 66** and **67**.

Finally, the Court issued the Slip Opinion on October 7, 2024, denying both Plaintiff's and Defendant's motions for summary judgment "[b]ecause relevant material facts remain[ed] in dispute" and the applicability of the Section 301 tariff exclusion ("[t]ire carrier attachments, roof racks, fender liners, *side protective attachments, the foregoing of steel (described in statistical reporting number 8708.29.5060)*") was left to be determined at trial. *See* **ECF No. 68** at 23-24. Even though the Court did not reach a final decision, the Court established a standard of review

that will be applied to determine the outcome of this action at trial. Specifically, the Court concluded that:

> [T]he term "side protective attachments" in U.S. Note 20(iii)(213) to Subchapter III of Chapter 99 of the HTSUS is a ***principal use provision***. The Court construes the tariff provision "side protective attachments" under ARI 1 to mean steel products that are attached to the side of a vehicle and are used to protect the vehicle.

*See* **ECF No. 68** at 17 (emphasis added).

With due deference and respect to this Court's findings, Plaintiff believes that this Court misunderstood or misapprehended the initial issue presented by Plaintiff. As more fully explained *infra*, the Court began its analysis by stating the following on pages 13-14 of the Slip Opinion: "Thus, the Court must assess initially whether U.S. Note 20(iii) to Subchapter III of Chapter 99 of the HTSUS is a use provision as alleged by the Government or an *eo nomine* provision as alleged by Plaintiff." As such, the initial issue that this Court took up on review was "whether U.S. Note 20(iii) to Subchapter III of Chapter 99 of the HTSUS is a use provision as alleged by the Government or an *eo nomine* provision as alleged by Plaintiff." *Id*. However, this is not what Plaintiff initially alleged.

Rather, as articulated during the Oral Argument and in previous filings with this Court, Plaintiff's initial argument was that the applicability of the exclusion is determined pursuant to the standard identified in the Federal Register notice published by the United States Trade Representative ("USTR") implementing the Section 301 tariff exclusion at issue, which requires that the product qualifies for the exclusion if it is simply capable of being described by the exclusion language and does not require analysis under the General Rules of Interpretation (GRIs) and Additional Rules of Interpretation (ARIs) as *eo nomine* or principal use provision ***given that GRIs and ARIs are applied unless context otherwise requires***. *See* Plaintiff's Motion for Summary Judgment (**ECF Nos. 48** and **49**) at 11-13, Plaintiff's Response (**ECF Nos. 53** and **54**)

at 3-5, and Oral Argument (**ECF No. 67**) at 10:25-13:14; 17:19-20. In this case, context (the Federal Register notice) otherwise requires – it requires not to analyze the Section 301 tariff exclusion at issue under GRIs and ARIs. Put differently, the standard outlined in the Federal Register notice is completely different from the standard outlined in the GRIs and ARIs and does not require that the exclusion describe the product by a specific name (as an *eo nomine* provision) or describe its "principal use." The standard outlined in the Federal Register notice simply requires that the product in question meet the description of merchandise as set forth in the particular exclusion. Plaintiff's Motion for Summary Judgment (**ECF Nos. 48** and **49**) at 12; *Exclusion Extension Notice*, 85 Fed. Reg. at 48,601. Plaintiff notes that to the best of its understanding this argument (the significance of the phrase "unless context otherwise requires" in GRIs and ARIs and the prevailing standard outlined in Federal Register notice) was not discussed in the Slip Opinion.

As such, Plaintiff respectfully requests that this Court reconsider the denial of Plaintiff's Motion for Summary Judgment, address Plaintiff's argument that the language of the Federal Register notice requires that the product qualifies for Section 301 tariff exclusion if it is simply capable of being described by the exclusion language and does not require analysis under the GRIs and ARIs as *eo nomine* or principal use provision, and grant Plaintiff's Motion for Summary Judgment.

In the alternative, if this Court declines to reconsider the standard of review established in the Slip Opinion, Plaintiff respectfully requests that this Court certify the issue of the standard of review determined in the Slip Opinion for an interlocutory appeal pursuant to 28 U.S.C. § 1292(d)(1) on the grounds that the standard of review is a controlling question of law with respect to which there is a substantial ground for difference of opinion and an immediate appeal from such

order may materially advance the ultimate termination of the litigation, because trial will likely be unnecessary should the United States Court of Appeals for the Federal Circuit ("CAFC") accept Plaintiff's standard of review.

Specifically, there will be no trial required and judgment can be entered in favor of Plaintiff if the CAFC accepts the standard of review outlined in the Federal Register notice and proffered by Plaintiff, which requires that the product qualifies for the exclusion if it is simply capable of being described by the exclusion language, because the subject side bars, nerf bars, and bars are clearly capable of being described by the exclusion language, which provides for "[t]ire carrier attachments, roof racks, fender liners, *side protective attachments, the foregoing of steel (described in statistical reporting number 8708.29.5060)*." *Exclusion Extension Notice*, 85 Fed. Reg. at 48,601. Plaintiff must prevail under this standard without the need for trial because it is undisputed that these products are made of steel and are described in statistical reporting number 8708.29.5060 and Defendant conceded that these products are attached to the side of the vehicle, these products have some protective aspects, these products are an attachment to the car, and that looking at the words of the exclusion alone, the exclusion describes the product at issue. Oral Argument (**ECF No. 67**) at 51:5-17.

## II. ARGUMENT

### A. <u>Denial of Plaintiff's Motion for Summary Judgment Must be Reconsidered</u>

Pursuant to USCIT Rule (R.) 54(b), "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Irwin Indus. Tool Co. v. United States*, 269 F. Supp. 3d 1294, 1300 (Ct. Int'l Trade 2017); USCIT R. 54(b). "USCIT Rule 54(b) mirrors Rule 54(b) of the Federal Rules of Civil Procedure." *Irwin Indus. Tool Co.*, 269 F. Supp. 3d at 1300; *see also* Fed. R. Civ. Proc.

54(b). "A court retains the power to revisit and revise interlocutory orders pursuant to Rule

54(b)." *See Irwin Indus. Tool Co.*, 269 F. Supp. 3d at n. 8. "[D]enial of a motion for summary

judgment is of course not a final decision but an interlocutory order." *Nadel & Sons Toy Corp. v.*

*United States*, 82 Cust. Ct. 302 (U.S. 1979). "[R]econsideration under Rule 54(b) of the Federal

Rules of Civil Procedure differs from reconsideration under Rules 59 and 60," which govern

reconsideration of final judgments. *L-3 Communs. Integrated Sys., L.P. v. United States*, 98 Fed.

Cl. 45, 48 (2011).[1] "Generally, a court has the discretion to grant a motion to reconsider brought

under Rule 54(b) 'as justice requires,' meaning when the court determines that 'reconsideration

is necessary under the relevant circumstances.'" *Irwin Indus. Tool Co.*, 269 F. Supp. 3d at 1300-

1301 (quoting *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005)). This is "a less

rigorous standard than the standard for reconsideration of final judgments." *Thomas v. United*

*States*, No. 10-303C, 2013 U.S. Claims LEXIS 51, at 4 (Fed. Cl. Feb. 8, 2013) (internal citation

omitted).

"Factors a court may weigh when contemplating reconsideration include whether there

has been a controlling or significant change in the law or whether the court previously 'patently'

misunderstood the parties, decided issues beyond those presented, or failed to consider

controlling decisions or data." *Irwin Indus. Tool Co.*, 269 F. Supp. 3d at 1301 (*quoting In re*

*Papst Licensing GmbH & Co. KG Litigation*, 791 F. Supp. 2d 175, 182-83 (D.D.C. 2011); *Singh*

*v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)). Beyond the factors

outlined above, the United States Court of Federal Claims has also recognized that justice may

require reconsideration when the Court "has made an error not of reasoning, but of

apprehension." *Thomas*, No. 10-303C, 2013 U.S. Claims LEXIS 51, at 4 (internal citation

---

[1] As the Federal Rules of Civil Procedure generally mirror the USCIT rules, "cases under FRCP are applicable in our court." *United States v. Optrex Am., Inc.*, 28 Ct. Int'l Trade 993, 995 n.3 (U.S. 2004).

omitted). Judge Cardozo (later Justice) has also recognized the importance of the motion to reconsider alerting to the fact that "[a] grievous wrong may be committed by some misapprehension or inadvertence by the judge for which there would be no redress, if this power did not exist." *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983) (citing *Belmont v. Erie Ry. Co.*, 52 Barb. 637, 641 (N.Y. App. Div. 1869).

The movant carries the burden of proving that "'some harm, legal or at least tangible,' would accompany a denial of the motion." *Irwin Indus. Tool Co.*, 269 F. Supp. 3d at 1301 (quoting *Cobell*, 355 F. Supp. 2d at 540).

This Court has previously granted motions for reconsideration where the Court misunderstood or misinterpreted the party's arguments. For example, in *Home Prods. Int'l, Inc. v. United States*, this Court reconsidered its order sustaining the United States Department of Commerce's ("Commerce") decision as to certain valuation methodologies because the Court "misinterpreted Defendant's argument," and, as a result of the reconsideration, remanded the decision back to Commerce. 837 F. Supp. 2d 1294, 1302-1303 (Ct. Int'l Trade 2012).

Additionally, various federal courts have consistently granted motions to reconsider interlocutory orders for similar reasons. *See United States v. Olsen*, No. 98 C 2170, 2001 U.S. Dist. LEXIS 10098, 88 A.F.T.R.2d (RIA) 2001-5342 (N.D. Ill. July 18, 2001) (reconsideration was appropriate where the court misapprehended and misunderstood the nature of the party's claim and overlooked another claim); *Gibbs v. Bank of Am., N.A.*, No. GJH-16-2855, 2017 U.S. Dist. LEXIS 187661 (D. Md. Nov. 13, 2017) (motion for reconsideration granted because the court misunderstood plaintiff's factual allegations); *United States v. Bos. Heart Diagnostics Corp.*, 296 F. Supp. 3d 155 (D.D.C. 2017) (motion for reconsideration granted in part because the Court was persuaded it overstated the obligations of laboratories with respect to making

medical necessity determinations); *Vision Metals, Inc. v. SMS Demag, Inc.* (*In re Vision Metals, Inc.*), 327 B.R. 719 (Bankr. D. Del. 2005) (motion for reconsideration granted because the court committed a legal error); *Carnival Corp. v. Rolls-Royce PLC*, No. 08-23318-CIV, 2010 U.S. Dist. LEXIS 124324 (S.D. Fla. Nov. 22, 2010) (motion for reconsideration granted in part because the summary judgment was granted based on an argument that was never addressed by either party); *Douglas Press v. Tabco Inc.*, No. 00 C 7338, 2003 U.S. Dist. LEXIS 4177 (N.D. Ill. Mar. 18, 2003) (motion for reconsideration granted in part because the court made the decision "outside the adversarial issues that were presented").

With due deference and respect to this Court's findings, Plaintiff believes that, similar to this Court's decision in *Home Products International* and other federal cases outlined *supra*, this Court "patently" misunderstood or misapprehended the initial issue presented by Plaintiff. In the Slip Opinion this Court stated as follows on pages 13-14: "Thus, the Court must assess initially whether U.S. Note 20(iii) to Subchapter III of Chapter 99 of the HTSUS is a use provision as alleged by the Government or an *eo nomine* provision as alleged by Plaintiff." Thus, as we understand, the initial issue that this Court took up on review was "whether U.S. Note 20(iii) to Subchapter III of Chapter 99 of the HTSUS is a use provision as alleged by the Government or an *eo nomine* provision as alleged by Plaintiff." *Id*. However, this is not what Plaintiff initially alleged.

Rather, Plaintiff's initial argument was that the applicability of the exclusion is determined pursuant to the standard identified in the Federal Register notice published by the USTR implementing Section 301 tariff exclusion at issue. *See Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600, 48,601 (August 11, 2020) (hereinafter "*Exclusion Extension*

*Notice*"). Under this standard, a product qualifies for the applicable exclusion if it is simply capable of being described by the exclusion language and does not require analysis under GRIs and ARIs as *eo nomine* or principal use provision given that GRIs and ARIs are applied ***unless context otherwise requires***. *See* Plaintiff's Motion for Summary Judgment (**ECF Nos. 48** and **49**) at 11-13, Plaintiff's Response (**ECF Nos. 53** and **54**) at 3-5, and Oral Argument (**ECF No. 67**) at 10:25-13:14; 17:19-20. To the best of Plaintiff's understanding, this argument (the significance of the phrase "unless context otherwise requires" in GRIs and ARIs) was not discussed in the Slip Opinion.

Plaintiff notes that the Slip Opinion briefly refers to the standard of review under the GRIs and ARIs citing U.S. Note 2, Subchapter III, Chapter 99, HTSUS: "***Unless the context requires otherwise***, the general notes and ***rules of interpretation***, the section notes, and the chapter notes ***apply to Chapter 99***." Slip Opinion at 9 (emphasis added) (internal citation omitted). The "rules of interpretation" in this statement refer to the GRIs and ARIs. The Slip Opinion then proceeds to discuss the traditional classification analysis under the GRIs and ARIs without addressing whether in this case "context requires otherwise," as noted in U.S. Note 2, Subchapter III, Chapter 99, HTSUS. This language ("context requires otherwise") was highlighted by Plaintiff several times during Oral Argument on July 26, 2024, as requiring Section 301 tariff exclusions be analyzed through means other than the application of GRIs and ARIs, as well as not requiring a determination of whether the exclusion is an *eo nomine* or a "principal use" provision. *See* Oral Argument (**ECF No. 67**) at 10:25-13:14; 17:19-20.

Moreover, as GRI 1 clearly states, "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes ***and, provided such headings or notes do not otherwise require, according to the following provisions***." Emphasis

added. Further, ARI 1(a), which establishes a framework for the "principal use" classification analysis, clearly states that "principal use" is only utilized "*[i]n the absence of special language or context which otherwise requires*." Emphasis added.

Finally, U.S. Note 1, Subchapter III, Chapter 99, HTSUS, which precedes the U.S. Note cited in the Slip Opinion and described *supra*, states that "*[t]he provisions of this chapter relate* to legislation and *to executive* and administrative *actions* pursuant to duly constituted authority." Emphasis added.

In this case, the USTR took executive action upon the direction form the President of the United States to implement and extend Section 301 tariff exclusions, such as the exclusion at issue in this case, by issuing Federal Register notices. *See Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 23,122 (April 24, 2020) (hereinafter "*Initial Exclusion Notice*"); *Exclusion Extension Notice*, 85 Fed. Reg. 48,600 (August 11, 2020) (hereinafter "*Exclusion Extension Notice*"); Plaintiff's Motion for Summary Judgment (**ECF Nos. 48** and **49**) at 2-3.

As discussed in Plaintiff's Motion for Summary Judgment, the Federal Register notice published by the USTR implementing the Section 301 tariff exclusion at issue in this case provides a clearly identified standard for this Court to interpret and apply the exclusion. *See* Plaintiff's Motion for Summary Judgment (**ECF Nos. 48** and **49**) at 12. Specifically, the USTR explains that "*the exclusions are available for any product that meets the description in the Annex, regardless of whether the importer filed an exclusion request*." *Exclusion Extension Notice*, 85 Fed. Reg. at 48,601 (emphasis added); Plaintiff's Motion for Summary Judgment (**ECF Nos. 48** and **49**) at 12. Thus, the only criterion established by the USTR to qualify for the specific U.S. Note 20 exclusion (besides the entry timeframe) is that the product in question meet the description of merchandise

set forth in the particular exclusion. *See* Plaintiff's Motion for Summary Judgment (**ECF Nos. 48** and **49**) at 12. Imposing any additional characteristic or criterion will result in a limitation that is not provided for and not intended by the drafters of the exclusion language. Plaintiff's Motion for Summary Judgment (**ECF Nos. 48** and **49**) at 12.

Put differently, the standard outlined in the Federal Register notice is completely different from the standard outlined in the GRIs and ARIs and does not require that the exclusion describe the product by a specific name (as an *eo nomine* provision) or describe its "principal use." The standard outlined in the Federal Register notice simply requires that the product in question meet the description of merchandise set forth in the particular exclusion. Plaintiff's Motion for Summary Judgment (**ECF Nos. 48** and **49**) at 12; *Exclusion Extension Notice*, 85 Fed. Reg. at 48,601. Once again, the Slip Opinion fails to address this.

Specifically, the Slip Opinion does not address the effect of the standard outlined in the Federal Register notice on the applicability of GRIs and ARIs given that GRIs and ARIs are applied ***unless context otherwise requires***. Plaintiff believes that this may be "an error not of reasoning, but of apprehension," and reconsideration is the proper recourse. *Thomas*, No. 10-303C, 2013 U.S. Claims LEXIS 51, at 4 (internal citation omitted).

As Judge Cardozo (later Justice) has recognized, the importance of the motion to reconsider is to alert to the fact that "[a] grievous wrong may be committed by some misapprehension or inadvertence by the judge for which there would be no redress, if this power did not exist." *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983) (citing *Belmont v. Erie Ry. Co.*, 52 Barb. 637, 641; 1869 N.Y. App. Div. LEXIS 1). As such, should this Court not address an alternative standard of review as required by U.S. Notes 1 and 2, Subchapter III, Chapter 99, HTSUS, and the Federal Register notices, grievous wrong

may be committed by some misapprehension or inadvertence for which there would be no redress because the subsequent trial on this matter will focus on presenting evidence based on the wrong standard of review.

For this same reason, "legal [harm] would accompany a denial of [this] motion" because Plaintiff will be deprived from addressing the issue at trial as to what should be the proper standard of review. *Irwin Indus. Tool Co.*, 269 F. Supp. 3d at 1301 (quoting *Cobell*, 355 F. Supp. 2d at 540). Specifically, this Court's decision to analyze subject the subject Section 301 tariff exclusion as a "principal use" provision results in a limitation that is not provided for and not intended by the drafters of the exclusion language.

If this Court grants Plaintiff's motion for reconsideration, this case becomes a non-issue. Specifically, should this Court adopt the standard of review outlined in the Federal Register notice, which only requires that a particular product be described by the terms of the exclusion (without the exclusion describing the product by specific name or describing the "principal use" of the product), the subject side bars, nerf bars, and bars, meet the description of the Section 301 tariff exclusion. Specifically, Defendant admitted during the Oral Argument as follows:

5    THE COURT:  So, does the government dispute that

6 the product is attached to the side of the vehicle?

7    MR. KENNEDY:  We do not dispute that, Your Honor.

8    THE COURT:  Does the government dispute that the

9 product is has some protective aspect to it?

10    MR. KENNEDY:  We do not dispute that, Your Honor.

11    THE COURT:  Okay.  And does the government dispute

12 that it is an attachment to a car?

12

13      MR. KENNEDY:  We do not dispute that, Your Honor.

14      THE COURT:  Okay.  So, if we were just looking at

15 the words of the note which is side protective attachment,

16 there's no dispute over that?

17      MR. KENNEDY:  If it were eo nomine…

Oral Argument (**ECF No. 67**) at 51:5-17. As such, there is no dispute that the subject nerf bars, side bars, and bars are described by the language of the exclusion, specifically, "side protective attachments, the foregoing of steel (described in statistical reporting number 8708.29.5060)."

Plaintiff respectfully requests that this Court reconsider the denial of Plaintiff's Motion for Summary Judgment and address Plaintiff's argument that the language of the Federal Register notice requires that a product qualifies for the exclusion if it is simply capable of being described by the exclusion language. As such, the applicable exclusion does not require any analysis under the GRIs and ARIs as an *eo nomine* or principal use provision.

**B.  <u>Alternatively, the Issue of the Standard of Review Must be Certified for an Interlocutory Appeal</u>**

Should this Court decline to reconsider the denial of Plaintiff's Motion for Summary Judgment and the standard of review established in the Slip Opinion, this Court must certify the issue of the standard of review determined in the Slip Opinion for an interlocutory appeal pursuant to 28 U.S.C. § 1292(d)(1). Such a certification is justified on the grounds that the standard of review is a controlling question of law with respect to which there is a substantial ground for difference of opinion and an immediate appeal from such order may materially advance the ultimate termination of the litigation, because trial will likely be unnecessary should the CAFC accept Plaintiff's standard of review.

The denial of a motion for summary judgment is not a final decision of a district court (28 U.S.C. § 1295(a)(1)), and, therefore, is not ordinarily appealable. *Semcon Tech, LLC v. Micron Tech.*, Inc., 660 F. App'x 908 (Fed. Cir. 2016) (internal citation omitted). However:

> A [US]CIT judge may certify an order not otherwise immediately appealable provided 'a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation.

*United States v. UPS Customhouse Brokerage, Inc.*, 464 F. Supp. 2d 1364, 1367 (Ct. Int'l Trade 2006); 28 U.S.C. § 1292(d)(1). Plaintiff recognizes that "this provision is to be applied sparingly and only in exceptional cases where intermediate appeal may avoid protracted and expensive litigation." *UPS Customhouse Brokerage, Inc.*, 464 F. Supp. 2d at 1370 (internal citation omitted).

In this case, Plaintiff is seeking to certify the question of the standard of review as to the applicability of the Section 301 tariff exclusion, which constitutes a "pure" controlling question of law with respect to which there is a substantial ground for difference of opinion and an immediate appeal from that order may materially advance the ultimate termination of the litigation because trial will likely be unnecessary should the CAFC accept Plaintiff's standard of review. Moreover, this is an exceptional case where intermediate appeal will avoid protracted and expensive litigation because the trial will likely be unnecessary should the CAFC accept Plaintiff's standard of review. As such, all factors for the certification for interlocutory appeal are satisfied as more fully explained *infra*.

In *UPS Customhouse Brokerage*, plaintiff filed a motion to certify its summary judgment claims rejected by this Court for an interlocutory appeal. *UPS Customhouse Brokerage, Inc.*, 464 F. Supp. 2d at 1367. Even though "this Court [was] confident in its reasoning and holding …, the

substantive question of law presented therein nevertheless satisfie[d] the requirements necessary to be certified for interlocutory appeal to the [CAFC]." *Id*. at 1367.

"Section 1292(d) sets forth three requirements for certifying an order not otherwise immediately appealable." *Id*. at 1371. "The order must (1) involve a controlling question of law (2) with respect to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.*; 28 U.S.C. § 1292(d). "This statutory provision may also be read as delimiting four statutory criteria: (1) there must be a question of law, (2) it must be controlling, (3) it must be contestable, and (4) its resolution must promise to speed up the litigation." *Id.* (internal citation omitted). All elements must be present before this Court will grant an interlocutory order. *Id*.

### i.    Plaintiff Presented a "Pure" Question of Law for Certification

The first requirement of § 1292(d) is that there be a "question of law." *Id.*; 28 U.S.C. § 1292(d)(1). "A question of law is one involving the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Id.* Internal citation omitted. "To be a reviewable interlocutory order, the case must turn on a pure question of law, something the court of appeals can decide quickly and cleanly without having to study the record." *Id.* Internal citation omitted. In *UPS Customhouse Brokerage*, this Court concluded that a "pure" question of law was presented "because the relevant issue … was limited to the interpretation of the monetary penalty language in § 1641(d)(2)(A)." *Id*.

In this case, Plaintiff likewise seeks to certify a "pure" question of law for an interlocutory appeal to the CAFC. Specifically, the question Plaintiff is seeking to certify for an appeal is as follows:

15

> Whether the language of the Federal Register notice requires that the product qualifies for the exclusion if it is simply capable of being described by the exclusion language and does not require analysis under GRIs and ARIs as *eo nomine* or principal use provision given that GRIs and ARIs are applied unless context otherwise requires.

This question involves an interpretation of statutory provision because the Section 301 tariff exclusion at issue is provided for in the Harmonized Tariff Schedule of the United States ("HTSUS"). Also, the CAFC can decide this issue "quickly and cleanly" without having to study the record. The CAFC would only need to review the relevant portion of the HTSUS, Federal Register notices, and GRIs and ARIs to determine how all these sources interact with each other and affect the standard of review. There is no need for the CAFC to review any of this Court's factual findings.

As such, the question that Plaintiff is seeking to certify for an interlocutory appeal to the CAFC constitutes a "pure" question of law.

### ii.    Plaintiff Presented a Controlling Question of Law for Certification

The second criteria for certification of an interlocutory order pursuant to § 1292(d) is that the question of law be "controlling." *Id.*; 28 U.S.C. § 1292(d)(1). "In order for the question of law to be 'controlling,' it need not resolve the action in its entirety." *UPS Customhouse Brokerage, Inc.*, 464 F. Supp. 2d at 1371.

> Controlling questions of law that fall within this category of dispositive issues include the question of whether a claim exists as a matter of law, the question of whether a defense that will defeat the claim is available, and questions as to subject matter jurisdiction, proper venue, personal jurisdiction, and standing to maintain the action.

19 James Wm. Moore et al., *Moore's Federal Practice* P 203.31[2] (3d ed. 2006) (interpreting § 1292(b)). "A controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal." *Id*. "However, the order need not be determinative of any of the plaintiff's claims on the merits." *Id*. "Controlling means serious to

the conduct of the litigation, either practically or legally." *Id*. (internal citations omitted). "All that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *Id*.

Following this analysis in *UPS Customhouse Brokerage*, this Court concluded that UPS raised a controlling question of law because if the interpretation of the underlying statute was erroneous, reversible error would have resulted in final appeal. *Id.* at 1372. Further, the resolution of the statutory interpretation was "serious to the conduct of that litigation because the statutory provision delimited the extent to which plaintiff could recover the penalties it had sought to impose upon defendant." *Id*. "Likewise, a ruling contrary to that rendered in the initial decision could [have] affect[ed] plaintiff's ability to prosecute its claims in [that] matter." *Id*.

In the case at hand, Plaintiff likewise presented a controlling question of law for certification. First, just like in *UPS Customhouse Brokerage*, if the standard of review applied to the subject Section 301 tariff exclusion is erroneous, reversible error would result in final appeal. Further, resolution of the interpretation of the Section 301 tariff exclusion is serious to the conduct of this litigation because this interpretation determines the burden of proof and level of factual evidence each party needs to present at trial. Finally, should the CAFC adopt the standard of review specifically provided for in the Federal Register notice and proffered by Plaintiff, the case becomes a non-issue because Defendant has repeatedly admitted that the subject side bars, nerf bars, and bars are described by the terms of the exclusion.

As such, the question of law that Plaintiff is seeking to certify for an interlocutory appeal to the CAFC is clearly controlling.

### iii.     There is Substantial Ground for Difference of Opinion

The next statutory requirement that must be satisfied is that there be "a substantial ground for difference of opinion." *Id*.; 28 U.S.C. § 1292(d). In *UPS Customhouse Brokerage*, this Court found this requirement to be satisfied based on the following:

> Clearly, there is a difference of opinion between Customs and Defendant as to the interpretation of § 1641(d)(2)(A). That difference of opinion gave rise to the present litigation. Further, this Court finds that the ground on which the parties differ in the statutory interpretation is "substantial." Defendant's interpretation could seriously curtail Plaintiff's ability to enforce the laws and regulations applicable to customs brokers. Conversely, and from Defendant's perspective, the interpretation of § 1641(d)(2)(A) adopted by Customs and affirmed by this Court may expose customs brokers to increased penalties for their failure to satisfy statutory and regulatory obligations. In addition, as Defendant points out, the interpretation of the penalty maximum in § 1641(d)(2)(A) is one of first impression and "has a potentially significant and wide-reaching impact on the entire customs brokerage industry."

464 F. Supp. 2d at 1372. Essentially, this Court has clearly established that a substantial ground for difference of opinion exists where there is a substantial difference of opinion between the parties, that difference of opinions gave rise to the litigation, and the legal question is an issue of first impression that has a potentially significant and wide-ranging impact on the industry.

In this case, just like in *UPS Customhouse Brokerage*, all these requirements are met. First, here there is a difference of opinion between the Defendant (United States, including one of its agencies – United States Customs and Border Protection ("CBP")) and Plaintiff as to how Section 301 tariff exclusion must be analyzed. This difference of opinion gave rise to the present litigation. Further, the analysis and applicability of the Section 301 tariff exclusion language is an issue of first impression for this Court. Finally, the standard of review set forth in this litigation as to how the applicability of Section 301 tariff exclusions must be determined is guaranteed to have a significant and wide-ranging impact on the entire trade community because Section 301 tariffs exclusions are likely to stay and this standard will determine a roadmap for the government, trade, and this Court to use for years to come.

As such, there is substantial ground for difference of opinion as to the standard of review applicable to the analysis of Section 301 tariff exclusions.

### iv.    Resolution of This Issue on Interlocutory Appeal Will Materially Advance the Ultimate Termination of the Litigation

The final requirement of § 1292(d) is that resolution of the issue on interlocutory appeal "materially advance the ultimate termination of the litigation." *Id.*; 28 U.S.C. § 1292(d)(1). In *UPS Customhouse Brokerage*, this Court found this requirement to be satisfied based on the following:

> If the CAFC accepts the certified question on interlocutory appeal, it may affirm or reverse this Court's opinion in *UPS I*. If a reversal is ordered, the CAFC need not do so for the reasons Defendant propounds. However, if a reversal does occur for either reason argued by Defendant, this litigation will likely come to a swift end. Decision in Defendant's favor may prevent Plaintiff from pursuing any penalties against Defendant or may significantly reduce the amount of penalties available to Customs from UPS. On the other hand, if the CAFC were to affirm this Court's order in *UPS I*, the parties might be spurred to settlement, thereby avoiding the expense and delayed outcome associated with trial or awaiting decision on the pending motion for summary judgment. Although, as a general principle, this Court does not envision protracted and expensive litigation related to this matter, the Court recognizes Defendant's interest in possibly concluding this matter sooner rather than later.

464 F. Supp. 2d at 1372-73. This logic also applies to the case at hand.

In this case, if the issue of the standard of review is certified for an appeal in the CAFC and the CAFC orders a reversal and adopts the proper standard of review as outlined in the Federal Register notice and proffered by Plaintiff, "this litigation will likely come to a swift end." This is because there will be no need to decide whether the Section 301 tariff exclusion at issue is an *eo nomine* or a "principal use" provision. Rather, this Court will simply need to determine whether the subject merchandise is capable of being described by the exclusion language.

In this case, it is clear that the subject side bars, nerf bars, and bars are described by the exclusion language because Defendant has admitted during the Oral Argument as follows:

> 5        THE COURT:  So, does the government dispute that
>
> 6 the product is attached to the side of the vehicle?
>
> 7        MR. KENNEDY:  We do not dispute that, Your Honor.
>
> 8        THE COURT:  Does the government dispute that the
>
> 9 product is has some protective aspect to it?
>
> 10        MR. KENNEDY:  We do not dispute that, Your Honor.
>
> 11        THE COURT:  Okay.  And does the government dispute
>
> 12 that it is an attachment to a car?
>
> 13        MR. KENNEDY:  We do not dispute that, Your Honor.
>
> 14        THE COURT:  Okay.  So, if we were just looking at
>
> 15 the words of the note which is side protective attachment,
>
> 16 there's no dispute over that?
>
> 17        MR. KENNEDY:  If it were eo nomine…

Oral Argument (**ECF No. 67**) at 51:5-17. As such, there is no dispute that the subject nerf bars, side bars, and bars are described the language of the exclusion, specifically as, "side protective attachments, the foregoing of steel (described in statistical reporting number 8708.29.5060)," which should conclude this litigation in favor of Plaintiff.

Because this litigation will likely come to a swift end if the CAFC adopts the standard of review outlined in the Federal Register notice proffered by Plaintiff, the resolution of the issue on interlocutory appeal will materially advance the ultimate termination of the litigation.

Further, because all requirements of 28 U.S.C. § 1292(d)(1) are satisfied, Plaintiff

respectfully requests that this Court certify the following question for appeal in the CAFC:

> Whether the language of the Federal Register notice requires that the product qualifies for the exclusion if it is simply capable of being described by the exclusion language and does not require analysis under GRIs and ARIs as *eo nomine* or principal use provision given that GRIs and ARIs are applied unless context otherwise requires.

Should this question be certified for an interlocutory appeal in the CAFC, Plaintiff

respectfully requests that this Court stay any further proceedings in this matter in the USCIT

pending the resolution of the appeal in the CAFC.

### III. CONCLUSION

Because this Court misunderstood or misapprehended Plaintiff's initial argument, Plaintiff

respectfully requests that this Court reconsider the denial of Plaintiff's Motion for Summary

Judgment, address Plaintiff's argument that the language of the Federal Register notice requires

that the product qualifies for Section 301 tariff exclusion if it is simply capable of being described

by the exclusion language and does not require analysis under the GRIs and ARIs as *eo nomine* or

principal use provision, and grant Plaintiff's Motion for Summary Judgment.

Should this Court deny Plaintiff's motion for reconsideration, Plaintiff respectfully

requests that this Court amend the Slip Opinion to include a statement certifying the question of

the standard of review for interlocutory appeal pursuant to 28 U.S.C. § 1292(d)(1) on the grounds

that the Slip Opinion involves a controlling question of law with respect to which there is a

substantial ground for difference of opinion and an immediate appeal from such order may

materially advance the ultimate termination of the litigation. Plaintiff further respectfully requests

that this Court stay any further proceedings in this matter in the USCIT should this Court certify

the Slip Opinion for interlocutory appeal.

WHEREFORE, Plaintiff respectfully requests that this Court reconsider its findings in the Slip Opinion and grant Plaintiff's Motion for Summary Judgment. Alternatively, should this Court deny to reconsider its findings in the Slip Opinion and grant Plaintiff's Motion for Summary Judgment, Plaintiff respectfully requests that this Court amend the Slip Opinion to include a statement certifying the Court's ruling on Plaintiff's Motion for Summary Judgment for interlocutory appeal and staying any further proceedings in this matter in the USCIT pending the appeal in the CAFC.

Respectfully submitted,

Dated:    November 6, 2024

Eric R. Rock, Attorney

Serhiy Kiyasov
Austin J. Eighan
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For Plaintiff Keystone Automotive Operations, Inc.*

## CERTIFICATE OF SERVICE

I, Eric R. Rock, one of the attorneys for the plaintiff, certify that copies of Plaintiff's

Motion for Reconsideration or, in the Alternative, to Amend and Certify Order for Interlocutory

Appeal and for Stay of Proceedings Pending Appeal were served on all parties by filing a copy

via the U.S. Court of International Trade's CM/ECF System this Wednesday, November 6, 2024.


Respectfully submitted,

Dated:   November 6, 2024

_____
Eric R. Rock, Attorney

Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For Plaintiff Keystone Automotive*
*Operations, Inc.*