**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE**

| |
|---|
| **KEYSTONE AUTOMOTIVE OPERATIONS, INC.,** |
| Plaintiff, |
| **v.** |
| **UNITED STATES**, |
| Defendant. |

Court No. 21-00215

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR
RECONSIDERATION OR, IN THE ALTERNATIVE, TO
AMEND AND CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR STAY
OF PROCEEDINGS PENDING APPEAL**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................... iii

I.      Introduction........................................................................................................ 1

II.     The Standard for A Motion for Reconsideration ................................................ 3

III.    The Standard For A Motion To Certify An Interlocutory Appeal..................... 10

IV.     Conclusion ....................................................................................................... 17

## **TABLE OF AUTHORITIES**

**Cases**

*Aromont USA, Inc. v. United States,*
*671 F.3d 1310, 1312 (Fed. Cir. 2012)* ...............................................................15

*In re Papst Licensing GmbH & Co. KG Litigation,*
*791 F. Supp. 2d 175, 182-83 (D.D.C. 2011)* ........................................................3

*Irwin Industrial Tool Co. v. United States,*
269 F. Supp. 3d 1294, 1301 (Ct. Int'l Trade 2017) .............................................3

*Keystone Auto. Operations, Inc. v. United States,*
*No. 21-00215, 2024 Ct. Intl. Trade LEXIS 109*
*(Ct. Int'l Trade Oct. 7, 2024) (Slip Op. 24-108)* .................................... 1, 14-15

*Schlumberger Tech. Corp. v. United States,*
*845 F.3d 1158, 1162 (Fed. Cir. 2017)* ..................................................................8

*Sigma-TaHealthScience, Inc. v. United States,*
*838 F.3d 1272, 1276 (Fed. Cir. 2016))* .................................................................8

*Singh v. George Washington University,*
*383 F. Supp. 2d 99, 101 (D.D.C. 2005)* ...............................................................3

*Thomas v. United States,*
No. 10-303C, 2013 U.S. Claims LEXIS 51, at 4 (Fed. Cl. Feb. 8, 2013) ...........4

*United States v. Kingshead Corp.,*
13 CIT 961, 962 (1989) .......................................................................................15

*United States v. UPS Customhouse Brokerage, Inc.,*
464 F. Supp. 2d 1364 (Ct. Int'l Trade 2006) .............................................2, 10, 13, 16

**Statutes**

28 U.S.C. § 1292(d)(1) ............................................................................................10

Harmonized Tariff Schedule of the United States

Additional U.S. Rule of Interpretation 1 ................................................................6

Additional U.S. Rule of Interpretation 1(a) ............................................. 5-8, 11, 13

Heading 8708 ................................................................................................ 9-10

U.S. General Rule of Interpretation 1 ........................................................................8

U.S. Note 20(iii), Subchapter III, Ch. 99 ................................................................5

**Other Authorities**

USCIT Rule 54(b) ................................................................................................ 2-3

USCIT Rule 59 .................................................................................................... 2-3

*Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (Aug. 11, 2020) ("*Federal Register Notice*") ...............................................................*4-8, 11-17*

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| **KEYSTONE AUTOMOTIVE OPERATIONS, INC.,** | |
| Plaintiff, | Court No. 21-00215 |
| **v.** | |
| **UNITED STATES**, | |
| Defendant. | |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, TO AMEND AND CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR STAY OF PROCEEDINGS PENDING APPEAL**

Pursuant to the Court's Order dated December 17, 2024, (ECF No. 73) Plaintiff, Keystone Automotive Operations, Inc., ("KAO" or "Plaintiff") submits this reply in further support of Plaintiff's Motion for Reconsideration or, in the Alternative, to Amend and Certify Order for Interlocutory Appeal and for Stay of Proceedings Pending Appeal (ECF No. 69) ("Plaintiff's Motion" or "Pl. Mot."). Plaintiff respectfully requests that the Court grant Plaintiff's Motion.

### I.    Introduction

Plaintiff does not dispute that this Court's Opinion and Order issued as *Keystone Auto. Operations, Inc. v. United States*, No. 21-00215, 2024 Ct. Intl. Trade LEXIS 109 (Ct. Int'l Trade Oct. 7, 2024) (Slip Op. 24-108) (hereinafter, "Slip Opinion") was thorough and detailed. However, Plaintiff believes that there is a novel issue as to the interpretation and applicability of Section 301 tariff exclusions that this Court may have overlooked in the Slip Opinion as discussed in Plaintiff's Motion and further explained below.

As to Plaintiff's request for reconsideration, in its Opposition to Plaintiff's Motion (ECF No. 74) ("Defendant's Response" or "Def. Resp."), United States ("Defendant") relies on United

States Court of International Trade ("USCIT") Rule 59, which is not the USCIT rule that governs Plaintiff's reconsideration request. Def. Resp. at 4. Rather, Plaintiff's reconsideration request is based on USCIT Rule 54(b), which employs a less rigorous standard than the standard for reconsideration of final judgments under USCIT Rule 59, as further explained below. Pl. Mot. at 5-6. Additionally, Defendant misleads the Court when it states that Plaintiff relitigates its position (*see* Def. Resp. at 5-9) because Plaintiff's reconsideration request is based on the standard of review of the tariff exclusion relied upon by Plaintiff, which Plaintiff believes this Court did not address. Defendant also incorrectly interprets the analytical framework used by this Court when determining whether to grant reconsideration request as requiring "manifest error" or "fundamental flaw." Def. Resp. at 5-9. Rather, as indicated in Plaintiff's Motion, this Court and other federal district courts have consistently granted requests for reconsideration when plaintiff's argument is misunderstood or misapprehended by the court (*see* Pl. Motion at 8-13), which is what Plaintiff believes has occurred in this case.

As to Plaintiff's request to certify a question of the standard of review of the tariff exclusion for an interlocutory appeal, Defendant fails to identify a clear standard for certification for an interlocutory appeal and does not focus on the case law adopted by this Court. Rather, Defendant references decisions of various federal district courts without identifying a clear standard established by this Court. Defendant's Response does not address this Court's controlling case law—*United States v. UPS Customhouse Brokerage, Inc.*, 464 F. Supp. 2d 1364 (Ct. Int'l Trade 2006)—cited and relied upon by Plaintiff, thereby conceding that such case law supports Plaintiff's position. As such, Plaintiff has clearly shown that: (1) the Slip Opinion involved a controlling question of law; (2) the Slip Opinion involved a question of law with respect to which there is

substantial ground for difference of opinion; and (3) an immediate appeal from the Slip Opinion

may materially advance the ultimate termination of the litigation.

As such, this Court should grant Plaintiff's Motion and provide any further such relief to

Plaintiff that this Court deems appropriate.

## II.      The Standard for A Motion for Reconsideration

Defendant relies on the following standard in its opposition to Plaintiff's Motion when

addressing Plaintiff's request for reconsideration:

> Motions for reconsideration under USCIT Rule 59 "do not permit an unsuccessful
> party to re-litigate a case, but are supposed to address a fundamental or significant
> flaw in the original proceeding. To that end, a court's previous decision will not be
> disturbed unless it is manifestly erroneous." *Since Hardware*, 37 F.Supp.3d at 1359
> (quotations omitted); *accord FMD Restoration, Inc. v. Baistar Mech., Inc.*, 320
> F.R.D. 320, 323 (D.D.C. 2017) (Federal Rule of Civil Procedure 59 "motions may
> not be used to reli[tig]ate old matters, or to raise arguments or present evidence that
> could have been raised prior to the entry of judgment" (quotation omitted)).

Def. Resp. at 4. However, Plaintiff's Motion is not a Rule 59 motion. Rather, Plaintiff's Motion is

based on USCIT Rule 54(b), which employes a less rigorous standard than the standard for

reconsideration of final judgments under USCIT Rule 59. Pl. Mot. at 5-6. Defendant failed to

recognize this and, as such, based its opposition on a more rigorous standard than otherwise

required.

Under USCIT Rule 54(b), as Plaintiff's Motion explains, "factors a court may weigh when

contemplating reconsideration include whether there has been a controlling or significant change

in the law or whether the court previously ***'patently' misunderstood the parties***, decided issues

beyond those presented, or failed to consider controlling decisions or data." *Irwin Industrial Tool

Co. v. United States*, 269 F. Supp. 3d 1294, 1301 (Ct. Int'l Trade 2017) (*quoting In re Papst

Licensing GmbH & Co. KG Litigation*, 791 F. Supp. 2d 175, 182-83 (D.D.C. 2011); *Singh v.

George Washington University*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)) (emphasis added); Pl.

3

Mot. at 6. Beyond the factors outlined above, the United States Court of Federal Claims has also recognized that justice may require reconsideration when the Court "has made an ***error not of reasoning, but of apprehension***." *Thomas v. United States*, No. 10-303C, 2013 U.S. Claims LEXIS 51, at 4 (Fed. Cl. Feb. 8, 2013) (emphasis added) (internal citation omitted); Pl. Mot. at 6-7. In this case, it appears that the Court patently misunderstood or misapprehended the initial issue presented by Plaintiff, because the Court did not address the effect of the standard outlined in the Federal Register Notice (*see Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600, 48,601 (August 11, 2020) (hereinafter "Federal Register Notice") as ***context that otherwise requires*** the applicability of the General Rules of Interpretation ("GRIs") and—in particular to this case—the Additional Rules of Interpretation ("ARIs"). Put simply, the Court did not address Plaintiff's argument concerning the context (*i.e.*, the standard of review) provided in the Federal Register Notice published by the United States Trade Representative ("USTR") implementing the Section 301 tariff exclusion at issue.

Defendant states that "plaintiff did not advance this interpretative argument in its motion for summary judgment, or in its reply brief." Def. Resp. at 5. This is false. Much of Plaintiff's argument in its motion for summary judgment focused on the significance of the USTR's instructions in the Federal Register Notice (*i.e.*, the subject merchandise meeting the description in the Annex) when establishing the applicability of the exclusion, and not on the GRIs or ARIs. Plaintiff's Motion for Summary Judgment ("Pl. MSJ") at 13, 16. As such, Plaintiff not only raised this argument, but it was also Plaintiff's leading argument in establishing the applicability of the exclusion to the subject merchandise.

Next, Defendant argues that "[t]he Court accounted for the entirety of the statutory language—including the phrase 'unless the context requires otherwise' from U.S. Note 2, Subchapter III, Chapter 99, HTSUS—in its application of the GRIs, ARIs, and case law." Def. Resp. at 6. Plaintiff does not dispute that this language—unless the context requires otherwise— was referenced in the Slip Opinion. However, *referencing* the language does not necessarily equate to *accounting* for the language's effect on this case's analysis. The Court did not address the effect of the standard of review outlined in the Federal Register Notice on the applicability of the GRIs and ARIs, given that GRIs and ARIs, particularly ARI 1(a), are to be applied *unless context otherwise requires*. Pl. Mot. at 11. The phrase "unless context otherwise requires" is statutory language, and its effect should have been discussed and analyzed in light of the specific standard of review of the tariff exclusion outlined in the Federal Register Notice. Merely referencing such language without discussing and analyzing it defeats the purpose of including such language in the statute in the first place.

Defendant claims that Plaintiff's "interpretative argument is not supported by the Law." Def. Resp. at 6. Defendant devotes most of its remaining opposition to Plaintiff's reconsideration request to show that the exclusion at issue is part of the HTSUS because it is provided for in U.S. Note 20(iii) to Subchapter III of Chapter 99, HTSUS. This is of no consequence to the issue at hand. Plaintiff does not dispute this; however, the exclusion being part of the HTSUS does not preclude the use of the standard of review outlined in the Federal Register Notice. The Federal Register Notice provides language and/or context that requires departure from standard application of the GRIs, and, more significantly, the ARIs, as more fully explained below.

Defendant also states that the fact "[t]hat these exclusions are initially published in the Federal Register does not change the rules of statutory interpretation applicable to all headings of

the HTSUS, including the ones at issue in this case." Def. Resp. at 7. However, Defendant completely misses the point. The fact that the exclusions are initially published in the Federal Register does not affect anything in and of itself. However, the standard of review for determining the applicability of the exclusion is specifically provided in the Federal Register Notice. This standard, which is separate from the standard outlined in the GRIs and ARIs, does not require that the exclusion describe the product by a specific name (as an *eo nomine* provision) or describe its "principal use."

Defendant's only argument is that, because the exclusion is described in a Chapter Note within the HTSUS, its interpretation must only be guided by the GRIs and ARIs. However, this reasoning renders the qualifying language of GRIs and ARIs—that GRIs and ARIs are applied unless there is language or context that otherwise requires—completely meaningless. Specifically, the drafters intended for the GRIs and ARIs to be a part of the HTSUS. As such, GRIs and ARIs were drafted to apply to provisions that are parts of the HTSUS. However, the drafters knew that there could be circumstances where there is special language or context—whether embedded within the HTSUS or provided in other publications relevant to the analysis—that supersedes the use of ARI 1(a) "principal use" analysis even if the provision itself is incorporated into the HTSUS. If the decision whether to apply ARIs stopped at whether the provision is part of the HTSUS, the preamble to ARI 1—"[i]n the absence of special language or context which otherwise requires"— would be meaningless, because the GRIs and, more significantly, the ARIs only exist insofar as they are used to provide interpretive rules within the HTSUS. However, this preamble to ARI 1 clearly creates an exception for interpreting provisions within the HTSUS to account for scenarios, such as here, where "special language or context" requires a different interpretation.

In this case, this Court determined that the exclusion at issue is a "principal use" provision, thereby invoking the analysis to be applied under ARI 1(a). However, the qualifying language preceding ARI 1(a) clearly states that "principal use" analysis is only utilized "[i]n the absence of special language or context which otherwise requires." This case presents the exact sort of scenario predicted by the drafters. The standard outlined in the Federal Register Notice is completely different from the standard outlined in the GRIs and ARIs and does not require that the exclusion describe the product by a specific name (as an *eo nomine* provision) or describe its "principal use." Specifically, the Federal Register Notice explains that a product qualifies for the exclusion if it is simply capable of being described by the exclusion language ("the exclusions ***are available for any product*** that ***meets the description*** in the Annex"). It is not the exclusion itself, but the language in the Federal Register Notice, which constitutes "special language or context" in this case. That language—"available for any product that meets the description in the Annex"— requires analysis under a standard that serves completely different objectives than ARI 1(a)'s "principal use" analysis. Plaintiff believes that the Court has not addressed this issue.

Defendant also claims that "Keystone provides no authority for its proposition that the Federal Register 'provides a clearly identified standard' for exclusions incorporated into the HTSUS that differs from and supplants the well-established rules of statutory interpretation in the GRIs and the ARIs." Def. Resp. at 8. First, the standard of review of the tariff exclusion is an issue of first impression for this Court or any other court in the United States. As such, of course there is no caselaw that is directly on point when interpreting the exclusion at issue. Second, the Federal Register Notice indeed identifies a standard that is very clear: "***exclusions are available for any product that meets the description in the Annex***." The standard of determining whether a product "meets the description" that is set forth in the Annex standard does not require that the exclusion

describe the product by a specific name (as an *eo nomine* provision) or describe its "principal use." This standard is clear and unambiguous, and by no means does it require a determination under ARI 1(a) as a "principal use" provision.

Defendant states, with no explanation, that "[t]here is no meaningful distinction between the instruction from the Federal Register notice for exclusions ('meets the description in the Annex'), *see* Pl. Mot. at 12, and the instruction from GRI 1 (that 'classification shall be determined according to the terms of the headings')." Def. Resp. at 8. This statement is not only completely baseless, but wrong. The standard of review in the Federal Register Notice—whether a product "***meets the description in the Annex***"—and the instruction from ARI 1(a)—that "a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use"—are totally different. This "principal use" analysis under ARI 1(a) is wholly unnecessary for determining whether a product "meets the description in the Annex" of one or more Section 301 exclusions. As long as the product meets the description of merchandise set forth in a Note 20 exclusion—no matter to what degree—the Federal Register Notice instructs that the exclusion "is available to" the article.

Defendant states that "to qualify for an exclusion from the section 301 duties, the product must meet the parameters of the language of the exclusion from the tariff, which is contained as a note associated with a secondary heading (in Chapter 99) of the HTSUS." Def. Resp. at 8. In support of this claim, Defendant relies on two cases: *Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1162 (Fed. Cir. 2017) and *Sigma-Tau HealthScience, Inc. v. United States*, 838 F.3d 1272, 1276 (Fed. Cir. 2016). Neither of these cases discussed exclusion from Section 301

8

duties. *Schlumberger* involved a dispute over the tariff classification of goods under competing headings within HTSUS Chapter 69, while *Sigma-Tau* involved a dispute involving competing headings within HTSUS Chapter 29.  Both cases had been decided before Section 301 duties were imposed and before any exclusions were granted. As such, no weight should be given to either case.

Defendant correctly points out that "[h]ere, there is no dispute that the imported goods are classified under primary subheading 8708.29.5060." Def. Resp. at 8-9. However, Defendant then makes an inference that is not logical:

> It would be contrary to law to classify a good in a primary HTSUS subheading using the traditional tools of statutory interpretation—here, in subheading 8708.29.5060—and thereafter not apply the same standard to the exclusion itself that cites to that same HTSUS subheading—here, secondary heading 9903.88.56, HTSUS on the basis of the exclusions contained at U.S. note 20(iii) to Subchapter III of Chapter 99 (which covers, among other goods, "[t]ire carrier attachments, roof racks, fender liners, side protective attachments, the foregoing of steel (described in statistical reporting number 8708.29.5060)").

Def. Resp. at 9. In fact, it would not be logical to apply the same analysis to classify a good in a primary HTSUS subheading and determine the applicability of the exclusion.

In this case, the subject merchandise is classified under Heading 8708, HTSUS, which provides for "[p]arts and accessories of the motor vehicles of headings 8701 to 8705." This is undisputed. However, if this Court was tasked with determining whether this Heading covers the subject merchandise, this Court would first have to decide whether this Heading is an *eo nomine* or a "principal use" provision. If this Court decided that Heading 8708 was an *eo nomine* provision, it would have to determine whether Heading 8708 applied to the subject merchandise using the *eo nomine* analysis. Then, following Defendant's proposed analysis, this Court would have to determine the applicability of the exclusion to the subject merchandise using the "principal use" analysis. Alternatively, if this Court decided that Heading 8708 was a "principal use" provision, it

would have to determine whether Heading 8708 applied to the subject merchandise using the "principal use" analysis. Then, following Defendant's proposed analysis, this Court would have to determine the applicability of the exclusion to the subject merchandise using the "principal use" analysis. However, to be classified in Heading 8708 as a "principal use" provision, the subject merchandise would have to be principally used as a part or accessory of the motor vehicle of headings 8701 to 8705. If the same "principal use" analysis is then applied to determine whether the subject merchandise is covered by the exclusion, the Court would have to engage in another "principal use" analysis to determine whether the subject merchandise is principally used as a "side protective attachment." However, this would not be possible; it would have been already determined that the subject merchandise is principally used as a part or accessory of the motor vehicle under headings 8701 to 8705. As such, it would not be logical to apply the traditional classification analysis under GRIs and ARIs to determine the applicability of the tariff exclusion.

Because the Court did not address this issue in the Slip Opinion, Plaintiff's request for reconsideration should be granted.

### III.    The Standard For A Motion To Certify An Interlocutory Appeal

Plaintiff identified an established standard for certifying an interlocutory appeal that this Court has adopted. Specifically, to certify a question for interlocutory appeal pursuant to 28 U.S.C. § 1292(d)(1): "(1) there must be a question of law, (2) it must be controlling, (3) it must be contestable, and (4) its resolution must promise to speed up the litigation." *United States v. UPS Customhouse Brokerage, Inc.*, 464 F. Supp. 2d 1364, 1371 (Ct. Int'l Trade 2006); Pl. Mot. at 15. In *UPS Customhouse Brokerage*, plaintiff filed a motion to certify its summary judgment claims that were rejected by this Court for an interlocutory appeal. *UPS Customhouse Brokerage, Inc.*, 464 F. Supp. 2d at 1367. Even though "this Court [was] confident in its reasoning and holding . . ., the substantive question of law presented therein nevertheless satisfie[d] the requirements

necessary to be certified for interlocutory appeal to the [CAFC]." *Id.* at 1367. Similarly, here, Plaintiff satisfied the requirements necessary to have the issue of the standard of review certified for interlocutory appeal.

As to the first two factors—presence of a question of law that is also controlling— Defendant conceded that there is a question of law: "Plaintiff's new and novel interpretative argument arguably involves a question of law." Def. Resp. at 14. However, Defendant went on to summarily conclude that, "[b]ecause [Plaintiff's] argument contravenes the well established and long settled legal framework for tariff classification, it should not be viewed as controlling." Def. Resp. at 14. To be clear, Plaintiff is not challenging the legal framework for tariff classification. Rather, Plaintiff is challenging whether the applicability of a Section 301 tariff exclusions must be determined only pursuant to traditional classification analysis under the GRIs and, particularly, ARI 1(a).

Further, Defendant does not rely on this Court's standard when determining whether a question of law is controlling to certify it for an interlocutory appeal. Specifically, Defendant states as follows:

> As to whether a "pure question of law" is "controlling," there does not appear to be a set standard in the Federal Circuit. However, district courts have "consider[ed] whether: reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases." *In re Facebook*, 986 F.Supp.2d at 534 (internal quotation marks omitted). Courts have noted that questions of law are "controlling" when they "materially affect the outcome of litigation in the district court," *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1981), making the first and third requirements for certification "closely connected." *In re Facebook*, 986 F.Supp.2d at 536.

Def. Resp. at 12. As such, none of these frameworks focus on whether the proponent's "argument contravenes the well established and long settled legal framework." Rather, pursuant to the

standard summarized by Defendant, in this case, determining the applicability of the tariff exclusion based on the standard identified in the Federal Register Notice will result in summary disposition of this action in favor of Plaintiff, because Defendant conceded that there is no dispute that the term "side protective attachments" describes the subject merchandise. Pl. Mot. at 20. Even if adoption of the standard of review propounded by Plaintiff does not result in summary disposition of this action (*e.g.*, the decision could be remanded to this Court), the adoption of the standard of review propounded by Plaintiff will ultimately conclude the litigation as described above. Finally, the certified issue has precedential value for a large number of cases, because the issue to be certified (*i.e.*, the standard of review for determining the applicability of Section 301 tariff exclusions to imported merchandise) will be utilized by this Court and a large swath of the trade community for years to come. As such, the issue to be certified presents a controlling question of law.

As to the third factor—whether the controlling question of law is contestable or whether there is a substantial ground for difference of opinion—Defendant argues that Plaintiff failed to show any differing opinion as to the law because it "fail[ed] to identify any legal authority to support its argument that exclusions, which are directly incorporated into the HTSUS, constitute context that require a departure from the GRIs, ARIs, and established case law which instruct how to interpret tariff terms." Def. Resp. at 15. This argument is flawed on multiple levels.

First, as Plaintiff explained above, it is not the exclusion itself that constitutes context that requires departure from the GRIs and ARIs. Rather, it is the standard of review identified in the Federal Register Notice—where exclusions are available to imported merchandise that "meets the description set forth in the Annex"—that constitutes "special language or context" that otherwise governs the matter. Second, Defendant's reference to "established case law which instruct[s] how

to interpret tariff terms" is misleading, seemingly to conflate tariff exclusions with tariff terms.

There is no established case law, in this Court or in any other court in the United States, that has

determined how to interpret the applicability of tariff exclusions. Third, Defendant fails to adhere

to the standard that it itself summarized when determining that there is a difference of opinions.

Specifically, Defendant stated that "[t]his element is satisfied when '(1) there is conflicting

authority on the issue, or (2) *the issue is particularly difficult and of first impression' in the*

*Circuit*." Def. Resp. at 12 (emphasis added). The issue of the applicability of tariff exclusions here

is particularly difficult because of conflicting standards—the "meets the description" standard set

forth in the Federal Register Notice versus the "principal use" analysis in ARI 1(a)—and both this

Court and the parties are interpreting and applying said standards differently. It is also clear that

this is an issue of first impression, because neither this Court nor any other court in the United

States has addressed the applicability of Section 301 tariff exclusions in the past. Finally,

Defendant cites unrelated authority while ignoring this Court's prior opinions when determining

whether there is a substantial ground for difference of opinion. In *UPS Customhouse Brokerage*,

this Court found this requirement to be satisfied based on the following:

> Clearly, there is a difference of opinion between Customs and Defendant as to the
> interpretation of § 1641(d)(2)(A). *That difference of opinion gave rise to the*
> *present litigation*. Further, this Court finds that the ground on which the parties
> differ in the statutory interpretation is "substantial." Defendant's interpretation
> could seriously curtail Plaintiff's ability to enforce the laws and regulations
> applicable to customs brokers. Conversely, and from Defendant's perspective, the
> interpretation of § 1641(d)(2)(A) adopted by Customs and affirmed by this Court
> may expose customs brokers to increased penalties for their failure to satisfy
> statutory and regulatory obligations. In addition, as Defendant points out, the
> interpretation of the penalty maximum in § 1641(d)(2)(A) is one of first impression
> and "*has a potentially significant and wide-reaching impact* on the entire customs
> brokerage industry."

464 F. Supp. 2d at 1372 (emphasis added); Pl. Mot. at 18. Essentially, this Court has clearly

established that a substantial ground for difference of opinion exists where there is a substantial

difference of opinion between the parties, that difference of opinions gave rise to the litigation, and the legal question is an issue of first impression that has a potentially significant and wide-ranging impact on the industry. Pl. Mot. at 18. As explained in detail above and in the Plaintiff's Motion on page 18, all these elements are met. As such, there is clearly a contested controlling question of law and substantial ground for difference of opinions.

As to the fourth factor—whether the resolution of the issue to be certified for an interlocutory appeal will materially advance the ultimate termination of the litigation—Defendant again summarily concluded that Plaintiff did not satisfy this element because "both the legal standard that the Court applied and the conclusion that it reached on this issue were correct, and plaintiff has failed to cite to legal authorities in support of its position, that would suggest that the Court's decision is erroneous." Def. Resp. at 16. This is not relevant to this Court's analysis. In fact, it does not speak at all as to whether the resolution of the issue to be certified for an interlocutory appeal will materially advance the ultimate termination of the litigation.

As Defendant stated, "[t]o satisfy this standard, the party seeking certification should come forward with something more than mere conjecture in support of its claim that certification may save the court and the parties substantial time and expense." Def. Resp. at 13. As stated in Plaintiff's Motion, if the question of the standard of review is certified for appeal before the United States Court of Appeals for the Federal Circuit ("CAFC"), and the CAFC reverses this Court's decision and adopts the proper standard of review as outlined in the Federal Register Notice, this litigation will likely come to a swift end. Pl. Mot. at 19. This is because there will be no need to decide whether the tariff exclusion at issue is an *eo nomine* or a "principal use" provision. Pl. Mot. at 19. There will also be no need to hold a bench trial to hear the application of the *Carborundum* factors to determine the principal use of the subject merchandise, or to make a subsequent

determination as to the group of goods that are commercially fungible with the subject merchandise. *Slip Op. 24-108* at p. 24 (Oct. 7, 2024). Rather, this Court will simply need to determine whether the subject merchandise "meets the description" of merchandise described in the Note 20 exclusion language, ***a point which Defendant has already conceded***. Pl. Mot. at 19-20. As such, a successful interlocutory appeal in the CAFC will save this Court and the parties substantial time and expense by ending the litigation without the need for prolonged and expensive pre-trial, trial, and post-trial proceedings.

Defendant also states, but does not rely on, the following: "[s]ubstantial time and expense are not saved when 'litigation of the remaining issues may be completed expeditiously.'" *United States v. Kingshead Corp.*, 13 CIT 961, 962 (1989). In *Kingshead*, this Court stated as follows:

> It is apparent to the Court that litigation of the remaining issues may be completed expeditiously. After the final judgment, Kingshead would be able to appeal the entire result in substantially the same time as had the certification been granted. If the Court's decision on the merits is reversed, the subsequent proceedings on this level will take no more time than the proceedings following a successful interlocutory appeal.

*Id.* Here, however, litigation of the remaining issues cannot be completed expeditiously. If the case proceeds without an interlocutory appeal, this Court has held that it will hold a bench trial to hear arguments over the application of the multi-factor *Carborundum* factors to: (1) make a preliminary determination as to the principal use of the subject merchandise; and (2) make a subsequent determination "as to the group of goods that are commercially fungible with" the subject merchandise. *Slip Op. 24-108 at 24* (Oct. 7, 2024*); citing Aromont USA, Inc. v. United States*, 671 F.3d 1310, 1312 (Fed. Cir. 2012) (*internal citations omitted*). There will be prolonged and expensive pre-trial, trial, and post-trial proceedings. However, if the CAFC adopts the standard outlined in the Federal Register Notice, this case will likely end without the need for further trial,

because Defendant has already conceded that the subject merchandise meets the description set forth in the relevant Section 301 exclusion. Pl. Mot. at 19-20.

Defendant also states that, "[i]n examining the criteria of whether an immediate appeal may materially advance the ultimate termination of the litigation, this court must assess the probability that its decision, of which an immediate appeal is sought, is in error as well as the extent to which additional time and expense may be saved by an interlocutory appeal." Def. Resp. at 13. To this point, Defendant claims that "plaintiff has failed to cite to legal authorities in support of its position, that would suggest that the Court's decision is erroneous." Def. Resp. at 16. Again though, Plaintiff has clearly identified the legal standard for interpreting and applying the exclusion at issue here in its motion for summary judgment. Specifically, Plaintiff used the standard promulgated by the USTR in the Federal Register Notice: "***the exclusions are available for any product that meets the description in the Annex***." (Emphasis added.) The Federal Register Notice itself is the legal authority that supports Plaintiff's position. The Federal Register Notice is what caused the resulting language of the exclusion in the first place. The Federal Register Notice is explicitly cited in the Note 20 exclusions as the source of the "product exclusion process" by which the USTR has established the exclusions. As such, and as the Federal Register Notice included explicit language that "***the exclusions are available for any product that meets the description*** in the Annex," the applicability of the exclusion must be determined based on that standard.

Finally, Defendant has completely failed to address the case relied upon by Plaintiff—*United States v. UPS Customhouse Brokerage, Inc.*, 464 F. Supp. 2d 1364 (Ct. Int'l Trade 2006). In that case, this Court adopted the standard of review cited by Plaintiff when certifying an issue for an interlocutory appeal, and an interlocutory appeal was granted in that case. Even though "this

16

Court [was] confident in its reasoning and holding …, the substantive question of law presented therein nevertheless satisfie[d] the requirements necessary to be certified for interlocutory appeal to the [CAFC]." *Id*. at 1367. Similarly, here, Plaintiff satisfied the requirements necessary to have the issue of the standard of review certified for interlocutory appeal.

## IV.    Conclusion

Plaintiff respectfully requests that this Court reconsider its decision issued in the Slip Opinion and grant Plaintiff's motion for summary judgment. Alternatively, because all requirements of 28 U.S.C. § 1292(d)(1) are satisfied, Plaintiff respectfully requests that this Court certify the following question for appeal in the CAFC:

> Whether the language of the Federal Register notice requires that the product qualifies for the exclusion if it is simply capable of being described by the exclusion language and does not require analysis under GRIs and ARIs as *eo nomine* or principal use provision given that GRIs and ARIs are applied unless context otherwise requires.

Should this question be certified for an interlocutory appeal in the CAFC, Plaintiff respectfully requests that this Court stay any further proceedings in this matter in the USCIT pending the resolution of the appeal in the CAFC.

Respectfully submitted,

Dated:    January 29, 2025

_____
Eric R. Rock, Attorney

Serhiy Kiyasov
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For Plaintiff Keystone Automotive Operations, Inc.*

17

## <u>CERTIFICATE OF SERVICE</u>

I, Eric R. Rock, one of the attorneys for the Plaintiff, certify that copy of the Plaintiff,

Keystone Automotive Operations, Inc.'s Reply In Further Support Of Plaintiff's Motion For

Reconsideration Or, In The Alternative, To Amend And Certify Order For Interlocutory Appeal

And For Stay Of Proceedings Pending Appeal was served on all parties by filing a copy via

CM/ECF this Wednesday, January 29, 2025.


Dated:    January 29, 2025

Eric R. Rock, Attorney

Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For Plaintiff Keystone Automotive Operations, Inc.*