Slip Op. 25-46

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **KEYSTONE AUTOMOTIVE OPERATIONS, INC.,** | |
| **Plaintiff,** | **Before: Jennifer Choe-Groves, Judge** |
| **v.** | **Court No. 21-00215** |
| **UNITED STATES,** | |
| **Defendant.** | |

## OPINION AND ORDER

[Denying in part and granting in part Plaintiff's Motion for Reconsideration or, in the Alternative, to Amend and Certify Order for Interlocutory Appeal and for Stay of Proceedings Pending Appeal.]

Dated:  April 18, 2025

Eric R. Rock, Austin J. Eighan, Lawrence R. Pilon, Michael G. Hodes, and Serhiy Kiyasov, Rock Trade Law, LLC, of Chicago, IL, for Plaintiff Keystone Automotive Operations, Inc.

Justin R. Miller, Attorney-in-Charge, International Trade Field Office, and Brandon A. Kennedy, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y.  With them on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M. McCarthy, Director.  Of Counsel was Valerie Sorensen-Clark, General Attorney, Office of the Assistant Chief Counsel for International Trade Litigation, U.S. Customs and Border Protection, of New York, N.Y.  Edward F. Kenney and Alexandra Khrebtukova also appeared.

Choe-Groves, Judge:  This case presents an issue of first impression for the Court regarding the proper review of a Section 301 tariff exclusion provision. Keystone Automotive Operations, Inc. ("Plaintiff" or "Keystone") argues that the Court should not have applied the standard tariff classification analysis of *eo nomine* versus a principal use provision, but rather:

> [T]he applicability of the exclusion is determined pursuant to the standard identified in the Federal Register notice published by the United States Trade Representative ("USTR") implementing the Section 301 tariff exclusion at issue, which requires that the product qualifies for the exclusion if it is simply capable of being described by the exclusion language and does not require analysis under the General Rules of Interpretation (GRIs) and Additional Rules of Interpretation (ARIs) as *eo nomine* or principal use provision given that GRIs and ARIs are applied unless context otherwise requires.

Pl.'s Mot. Reconsider. or Amend & Certify Inter. Appeal & Stay ("Pl.'s Mot.") at 3, ECF No. 69 (emphasis omitted).

Before the Court is Plaintiff's Motion for Reconsideration or, in the Alternative, to Amend and Certify Order for Interlocutory Appeal and for Stay of Proceedings Pending Appeal ("Plaintiff's Motion"), filed in response to this Court's denial of cross-motions for summary judgment, Keystone Automotive Operations, Inc. v. United States, 48 CIT __, __, 732 F. Supp. 3d 1339 (2024). Pl.'s Mot.  Defendant United States ("Defendant" or "Government") responded in opposition to Plaintiff's motion for reconsideration.  Def.'s Opp. Pl.'s Mot. ("Def.'s Opp."), ECF No. 74.  Plaintiff replied in further support if its motion.

Pl.'s Reply Supp. Pl.'s Mot. ("Pl.'s Reply"), ECF No. 75.  For the following

reasons, the Court grants in part and denies in part Plaintiff's motion.

## MOTION FOR RECONSIDERATION

### I.    Legal Standard

Plaintiff filed its motion for reconsideration pursuant to USCIT Rule 54(b).

Under USCIT Rule 54(b), any order or opinion "that adjudicates fewer than all the

claims or the rights and liabilities of fewer than all the parties [and] does not end

the action … may be revised at any time before the entry of a judgment

adjudicating all the claims and all the parties' rights and liabilities."  USCIT R.

54(b).  Rule 54(b) is appropriate because active issues still exist in this action and

no final judgment has yet been issued.[1]

A court may reconsider a non-final judgment pursuant to USCIT Rule 54

"'as justice requires,' meaning when the court determines that 'reconsideration is

necessary under the relevant circumstances.'"  Irwin Indus. Tool Co. v. United

States, 41 CIT __, __, 269 F. Supp. 3d 1294, 1300–01 (2017) (quoting Cobell v.

Norton, 355 F. Supp. 2d 531, 539 (D.D.C. 2005), aff'd, 920 F.3d 1356 (Fed. Cir.

---

[1] Defendant opposes Plaintiff's motion for reconsideration, claiming that Keystone attempts merely to "re-litigate" the case and relies on an argument not supported by law.  Def.'s Opp. at 4–9.  Defendant asserts that Keystone failed to identify a "fundamental or significant flaw" in the Court's prior opinion as required by USCIT Rule 59.  Id.  As noted above, USCIT Rule 54(b) is appropriate because a final judgment has not yet been rendered in this case, and thus USCIT Rule 59 pertaining to final judgments is not appropriate here.

2019)).  The grounds for reconsideration include "an intervening change in the

controlling law, the availability of new evidence, the need to correct a clear factual

or legal error, or the need to prevent manifest injustice." Ford Motor Co. v. United

States, 30 CIT 1587, 1588 (2006); see also Irwin Indus. Tool, 41 CIT at __, 269 F.

Supp. 3d at 1301.

      The Court may also consider whether it "previously 'patently'

misunderstood the parties[.]" Irwin Indus. Tool Co., 41 CIT at __, 269 F. Supp. 3d

at 1301.  The party filing the motion to reconsider carries the burden of proving

that "some harm, legal or at least tangible," would accompany a denial of the

motion.  Cobell, 355 F. Supp. 2d at 540.  A motion for reconsideration is not an

opportunity for the losing party "to re-litigate the case or present arguments it

previously raised." Totes-Isotoner Corp. v. United States, 32 CIT 1172, 1173, 580

F. Supp. 2d 1371, 1374 (2008).

## II. Discussion

      Plaintiff asserts "that this Court misunderstood or misapprehended the initial

issue presented by Plaintiff." Pl.'s Mot. at 3.  Plaintiff claims that this Court

misunderstood Plaintiff's position as an *eo nomine* argument, when Plaintiff was

actually arguing that the exclusion set forth in U.S. Note 20(iii)(213) to Subchapter

III of Chapter 99 of the Harmonized Tariff Schedule of the United States

("HTSUS") should not be analyzed as a principal use or *eo nomine* provision under

the General Rules of Interpretation ("GRIs") or Additional Rules of Interpretation

("ARIs").  Id. at 8–11.

Instead, Plaintiff argues that "the applicability of the exclusion is determined

pursuant to the standard identified in the Federal Register notice published by the

United States Trade Representative ("USTR") implementing the Section 301 tariff

exclusion at issue, which requires that the product qualifies for the exclusion if it is

simply capable of being described by the exclusion language."  Id. at 3.  Plaintiff

avers that the Federal Register notice creates a "context" that "otherwise requires"

the Court to forego an *eo nomine* or principal use analysis under the GRIs or ARIs.

Id. at 3–4.  Plaintiff states "that to the best of its understanding this argument (the

significance of the phrase 'unless context otherwise requires' in GRIs and ARIs

and the prevailing standard outlined in Federal Register notice) was not discussed

in the Slip Opinion."  Id. at 4.

In other words, Plaintiff argues that the Federal Register language 'unless

context otherwise requires' creates a new legal standard that supersedes the normal

analysis under the GRIs and ARIs usually applied by courts in cases analyzing the

applicability of HTSUS to subject merchandise.

The Court conducted a traditional *eo nomine* versus principal use analysis in

its prior Opinion.  Keystone, 48 CIT at __, 732 F. Supp. 3d at 1348–52.  The Court

notes that in Plaintiff's response to Defendant's cross-motion for summary

judgment and reply in support of its own motion for summary judgment, Plaintiff

explained that its interpretation of the Section 301 exclusion provision is "akin" to

an *eo nomine* provision.  Pl.'s Resp. Def.'s Cross-Mot. Summ. J. & Reply Further

Supp. Pl.'s Mot. Summ. J. ("Pl.'s Resp. Br.") at 11–12, ECF Nos. 53, 54;

Keystone, 48 CIT at __,732 F. Supp. 3d at 1348 ("Thus, the Court must assess

initially whether U.S. Note 20(iii) to Subchapter III of Chapter 99 of the HTSUS is

a use provision as alleged by the Government or an *eo nomine* provision as alleged

by Plaintiff.").

    Because the Court did not address Plaintiff's novel legal theory in its prior

Opinion, the Court grants in part Keystone's motion for reconsideration to discuss

the appropriate standard of review and to address Keystone's novel interpretative

theory.

## RECONSIDERATION OF MOTION FOR SUMMARY JUDGMENT

### I.    Background

    The Parties previously filed cross-motions for summary judgment.  Pl.'s

Mot. Summ. J. ("Pl.'s Br."), ECF Nos. 48, 49; Def.'s Cross-Mot. Summ. J. &

Mem. Law Supp. & Opp'n Pl.'s Mot. Summ. J. ("Def.'s Br."), ECF Nos. 50, 51.

Keystone argued that its subject merchandise fell within the exclusion from the

25% *ad valorem* rate of duty set forth in U.S. Note 20(iii)(213) to Subchapter III of

Chapter 99 of the HTSUS because the subject merchandise met the description of

"side protective attachments."  Pl.'s Br. at 6, 10–18.

U.S. Note 20(iii)(213) to Subchapter III of Chapter 99 of the HTSUS

provides an exclusion to the 25% *ad valorem* rate of duty for "[t]ire carrier

attachments, roof racks, fender liners, side protective attachments, the foregoing of

steel (described in statistical reporting number 8708.29.5060)" imported from the

People's Republic of China ("China").  U.S. Note 20(iii)(213), Subchapter III,

Chapter 99, HTSUS; see generally Notice of Product Exclusion Extensions

("Exclusion Notice"), 85 Fed. Reg. 48,600 (USTR Aug. 11, 2020)  (China's acts,

policies, and practices related to technology transfer, intellectual property, and

innovation).  In the Exclusion Notice, USTR explained that the exclusions, such as

the one set forth in U.S. Note 20(iii)(213), "are available for any product that meets

the description in the Annex, regardless of whether the importer filed an exclusion

request."  Exclusion Notice, 85 Fed. Reg. at 48,601.

The Government countered that the tariff provision is a principal use

provision.  Def.'s Br. at 13–16.  The Government explained that the exclusion

applied only to subject merchandise with the principal use of providing protection.

Id.  The Government argued that Keystone's subject merchandise were not eligible

for the Section 301 exclusion because the bars' primary function and use were to

serve as a step to assist individuals entering and exiting high road clearance vehicles.  Id. at 13–26.

In its response to the Government's motion for summary judgment, Keystone asserted that "neither the Exclusion Extension Notice, 85 Fed. Reg. at 48,601, nor any other relevant Federal Register Notices, dictate[d] when or how the various exclusions must be considered as *eo nomine* provisions or exclusions based on principal or actual use."  Pl.'s Resp. Br. at 12.  Keystone explained "that each exclusion stands for itself."  Id.  As more plainly stated in its motion for summary judgment, Plaintiff argued that the Court should abandon the traditional principal use and *eo nomine* dichotomy and instead only analyze whether Keystone's subject merchandise "meets the description" of the exclusion provision.  Pl.'s Br. at 6, 12–13.

In its prior Opinion, the Court began by assessing whether U.S. Note 20(iii)(213) to Subchapter III of Chapter 99 of the HTSUS is a principal use provision or an *eo nomine* provision.  Keystone, 48 CIT at __, 732 F. Supp. 3d at 1348–51.  The Government argued that U.S. Note 20(iii)(213) is a principal use provision.  Def.'s Br. at 13–14.  Plaintiff argued that U.S. Note 20(iii)(213) is not a principal use provision because "conditioning an exclusion on some additional characteristic or criterion that is not part of the exclusion's description—such as

principal use—will result in a limitation that is not provided for and not intended by the drafters of the exclusion language."  Pl.'s Resp. Br. at 12.

Applying ARI 1(a), the Court held that U.S. Note 20(iii)(213), Subchapter III, Chapter 99, HTSUS is a principal use provision and the subject merchandise must be used for protection of the vehicle to qualify for exclusion.  Keystone, 48 CIT at __, 732 F. Supp. 3d at 1349–50.  The Court also analyzed whether U.S. Note 20(iii)(213) is an *eo nomine* provision.  Id. at 1350–51.  The Court held that the exclusion is not an *eo nomine* provision based on the lack of evidence on the record showing that the term "side protective attachments" identified a product by a specific name or a product common in commerce, including Keystone's subject merchandise.  Id. at 1351.

The Court then analyzed whether Keystone's subject merchandise are "side protective attachments" under a principal use analysis.  Id. at 1351–52.  The Court applied the Carborundum factors to the undisputed facts on the record and held that the undisputed facts were insufficient for the Court to fully analyze whether the subject merchandise were commercially fungible with the side protective attachments described in the exclusion.  Id.  The Court denied the cross-motions for summary judgment and ordered that the case proceed to a bench trial.  Id. at 1353.

## II.    Applicable Law on Tariff Classification

### a.  Jurisdiction and Standard of Review

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a).

The Court reviews classification cases de novo based on the record made before

the Court.  28 U.S.C. § 2640(a); Cont'l Auto. Sys., Inc. v. United States, 46 CIT

__, __, 589 F. Supp. 3d 1215, 1220 (2022); Telebrands Corp. v. United States, 36

CIT 1231, 1234, 865 F. Supp. 2d 1277, 1279–80 (2012).

The Court will grant summary judgment if "the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."  USCIT R. 56(a).  To raise a genuine issue of material fact, a

party cannot rest upon mere allegations or denials and must point to sufficient

supporting evidence for the claimed factual dispute to require resolution of the

differing versions of the truth at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248–49 (1986); Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,

731 F.2d 831, 835–36 (Fed. Cir. 1984).

### b.  Legal Framework

The HTSUS is the statutory basis that governs the classification of

merchandise imported into the United States.  See Wilton Indus., Inc. v. United

States, 741 F.3d 1263, 1266 (Fed. Cir. 2013).  The HTSUS is the United States'

implementation of the international Harmonized System, which was drafted and is

maintained by the Harmonized System Committee ("HSC") of the World Customs

Organization ("WCO"), formally the Customs Cooperation Council.  See Michael

Simon Design, Inc. v. United States, 609 F.3d 1335, 1336 (Fed. Cir. 2010); Sharp

Microelectronics Tech., Inc. v. United States, 122 F.3d 1446, 1451 (Fed. Cir.

1997).

On August 23, 1988, Congress enacted the Omnibus Trade and

Competitiveness Act of 1988, which adopted the new tariff nomenclature: the

HTSUS.  Pub. L. No. 100–418, 102 Stat. 1107 (1988); Marubeni Am. Corp. v.

United States, 35 F.3d 530, 532 (Fed. Cir. 1994).  The United States adopted the

HTSUS pursuant to The Trade Act of 1974, 19 U.S.C. §§ 2101–2495, which

"mandated that the United States participate in the development of an international

product nomenclature known as the Harmonized System."  Marubeni Am. Corp.,

35 F.3d at 532.  The HTSUS became effective on January 1, 1989.  Id.

Under the Act, the United States agreed to actively review the HTSUS,

promote the uniform application of the International Convention on the

Harmonized Commodity Description and Coding System, keep its tariffs current

with amendments from the WCO, and ensure that the HTSUS keeps current with

changes in technology and changes in patterns of international trade.  19 U.S.C. §§

3005–3010; see also Michael Simon Design, Inc., 609 F.3d at 1336.

To facilitate its purpose of promoting a uniform interpretation of the

Harmonized System, the HSC published the Explanatory Notes to the Harmonized

System.  See BASF Corp. v. United States, 35 CIT 1478, 1481 (2011).  The

Explanatory Notes provide commentary on the scope of the tariff schedule

headings, as well as on the legal texts, including rules of interpretation.  See H.R.

Conf. Rep. No. 100–576, 100th Cong., 2d Sess. 549 (1988) at 26–27, reprinted in

1988 U.S.C.C.A.N. 1547, 1582.

According to the HTSUS's Preface, the legal text of the HTSUS includes all

provisions enacted by Congress, "including 'Section and Chapter notes.'"  Honda

of Am. Mfg., Inc. v. United States, 607 F.3d 771, 773 (Fed. Cir. 2010).  The

Section and Chapter Notes "are not optional interpretive rules, but are statutory

law."  Park B. Smith, Ltd. v. United States, 347 F.3d 922, 926 (Fed. Cir. 2003).

Chapter 99 of the HTSUS includes U.S. Notes, which are enacted by

Congress or proclaimed by the President.  See Maple Leaf Mktg., Inc. v. United

States, 45 CIT __, __, 528 F. Supp. 3d 1365, 1370 (2021) ("The President

implemented the tariffs by modifying Subchapter III of Chapter 99 of the

Harmonized Tariff Schedule of the United States ('HTSUS') to add a new note and

a new tariff provision under the heading 9903.80.01.").  "Unless the context

requires otherwise, the general notes and rules of interpretation, the section notes,

and the [notes to prior HTSUS chapters]" apply to Chapter 99.  U.S. Note 2,

Subchapter III, Chapter 99, HTSUS.   The exclusion at issue is incorporated into the HTSUS as part of a note of Chapter 99, and Chapter 99 contains secondary headings that carry additional duties for certain goods.

For decades, courts have applied the GRIs and the ARIs when determining "[t]he proper classification of merchandise entering the United States." Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998); StarKist Co. v. United States, 29 F.4th 1359, 1361 (Fed. Cir. 2022) ("The interpretation of HTSUS provisions is undertaken through General Rules of Interpretation ("GRIs") and the Additional U.S. Rules of Interpretation ("ARIs")." (citing BASF Corp. v. United States, 482 F.3d 1324, 1325–26 (Fed. Cir. 2007)).   "The application of the GRIs and ARIs is rigid." StarKist Co., 29 F.4th at 1361.   In a case "where a party disputes a classification under a particular subheading, [courts] apply GRI 1 as a substantive rule of interpretation." Id.

"There are two types of HTSUS headings, *eo nomine* and use provisions." S.C. Johnson & Son Inc. v. United States, 999 F.3d 1382, 1388 (Fed. Cir. 2021); Apple Inc. v. United States, 964 F.3d 1087, 1093 (Fed. Cir. 2020); see Aromont USA, Inc. v. United States, 671 F.3d 1310, 1312 (Fed. Cir. 2012); Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999); see also GRK Canada, Ltd. v. United States, 761 F.3d 1354, 1361 (Fed. Cir. 2014) (Reyna, J. Dissenting) ("A foundational tenet of tariff classification law is that *eo nomine* provisions are

distinct from use provisions and do not depend on the principal or actual use of the

imported merchandise in the United States."). "An eo nomine provision 'describes

an article by a specific name,' whereas a use provision describes articles according

to their principal or actual use." Schlumberger Tech. Corp. v. United States, 845

F.3d 1158, 1164 (Fed. Cir. 2017) (quoting Aromont, 671 F.3d at 1312).

Determining whether a tariff provision is an *eo nomine* provision or a use

provision is one of the first determinations that a court makes in a classification

analysis. E.g., S.C. Johnson & Son, Inc. v. United States, 42 CIT __, __, 335 F.

Supp. 3d 1294, 1299 (2018) ("The first issue concerns whether Plaintiff's

merchandise is prima facie classifiable under HTSUS Heading 3923. The court

must assess whether HTSUS Heading 3923 is an *eo nomine* provision or a use

provision at the outset, as that distinction guides the analysis."); Schlumberger

Tech. Corp., 845 F.3d at 1164 ("We first must assess whether the subject Headings

constitute *eo nomine* or use provisions because different rules and analysis will

apply depending upon the heading type.").

For example, ARI 1 only applies to tariff classifications when the

classification decision is controlled by use. Primal Lite, Inc. v. United States, 182

F.3d 1362, 1363 (Fed. Cir. 1999). Then, different subsections of ARI 1 will apply

based on whether the provision is an "actual use" or "principal use" provision. Id.

ARI 1(a) governs "principal use" provisions, while ARI 1(b) governs "actual use"

provisions."  Id.

### III.    Analysis

Plaintiff contends that according to USTR's intent as the drafter of the

Section 301 exclusion provisions, the Court should abandon the traditional

principal use and *eo nomine* dichotomy and instead only analyze whether

Keystone's subject merchandise "meets the description" of the exclusion

provision.  Pl.'s Br. at 6.[2]

At the outset, the Court observes that an *eo nomine* analysis of whether a

product is described by the terms of a tariff provision is identical to Keystone's

view that the product should be analyzed as whether it "meets the description" of

the exclusion provision.  There is no discernible difference between Keystone's

proffered analysis of whether a product "meets the description" or an *eo nomine*

analysis.  Thus, Keystone's argument seems to be that the Court should be

precluded from performing a principal use analysis for Section 301 exclusions.

See Pl.'s Mot. at 3–4, 8–13.

Keystone avers that the GRIs and ARIs that govern tariff classification

analyses do not apply in certain contexts.  Id. at 11–13. Keystone hinges its

---

[2] Notably, Plaintiff does not allege that an inherent conflict exists between the
language of the exclusion and the HTSUS provision. Thus, the proper theory of
interpretation is the central issue.

argument on two phrases, one from U.S. Note 2, Subchapter III, Chapter 99, of the

HTSUS and one from the USTR's Exclusion Notice.

Keystone avers that the phrase "[u]nless the context requires otherwise," in

the introduction to U.S. Note 2, Subchapter III, Chapter 99, of the HTSUS was

intended to instruct the courts that "the general notes and rules of interpretation,

the section notes, and the chapter notes" may not apply to Chapter 99's provisions

in certain circumstances. <u>Id.</u> at 9.  Keystone asserts that the phrase "the exclusions

are available for any product that meets the description in the Annex" found in the

Exclusion Notice published by the USTR in the Federal Register establishes a new

description-based standard of review and supplants longstanding judicial precedent

on interpreting HTSUS provisions.  <u>Id.</u> at 10; Pl.'s Reply at 5–10; <u>see</u> Exclusion

<u>Notice</u>, 85 Fed. Reg. at 48,601.  Keystone argues that "the applicability of the

exclusion is determined pursuant to the standard identified in the Federal Register

notice published by the United States Trade Representative ("USTR")

implementing the Section 301 tariff exclusion at issue, which requires that the

product qualifies for the exclusion if it is simply capable of being described by the

exclusion language."  Pl.'s Mot. at 3.

Keystone avers that the Federal Register notice creates a "context" that

"otherwise requires" the Court to forego an *eo nomine* or principal use analysis

under the GRIs or ARIs.  <u>Id.</u> at 3–4.  Keystone maintains that the Exclusion Notice

published in the Federal Register promulgated a new description-based standard of

review for courts to apply.  Id. at 9.

At no point in any of its briefing before this Court does Plaintiff cite to a

legal authority that supports its theory.  Plaintiff provides no justification for this

Court to abandon long-standing precedent governing its interpretation of HTSUS

headings and subheadings due to vague language in a Federal Register notice or a

Chapter Note in the HTSUS.  Plaintiff fails to support its assertion that the Court

should deviate from interpreting the HTSUS in accordance with the GRIs and

ARIs.

Keystone did not cite to any source – either legislative history or case law –

that supports its argument that the phrase "unless the context requires otherwise" in

the Federal Register established a new standard of review for courts that supplants

the applicability of the GRIs and ARIs or the traditional dichotomy of *eo nomine*

and use provisions.  For example, Keystone asserts that "the drafters knew that

there could be circumstances where there is special language or context—whether

embedded within the HTSUS or provided in other publications relevant to the

analysis—that supersedes the use of ARI 1(a) 'principal use' analysis even if the

provision itself is incorporated into the HTSUS[,]" but Keystone fails to support

this assertion with any source of legal authority.  Pl.'s Reply at 6.  Keystone avers

that "[i]t is not the exclusion itself, but the language in the Federal Register Notice,

which constitutes 'special language or context' in this case[,]" but again Keystone

fails to support this contention with any source of legal authority.  Id. at 7.

Keystone attempts to flip established precedent on its head and structure its

interpretative framework as one in which application of the GRIs, ARIs, and *eo*

*nomine*/use analysis are a last resort, and instead, argues that tariff exclusions

should be analyzed first according to "context."  Pl.'s Mot. at 3–4, 9–11.  In this

case, Keystone explains that "a product qualifies for the applicable exclusion if it is

simply capable of being described by the exclusion language and does not require

analysis under GRIs and ARIs as *eo nomine* or principal use provision given that

GRIs and ARIs are applied unless context otherwise requires."  Id. at 9.  Keystone

acknowledges its failure to support its argument with any legal source and explains

that "the standard of review of the tariff exclusion is an issue of first impression for

this Court or any other court in the United States."  Pl.'s Reply at 7.

This Court has "an independent responsibility to decide the legal issue of the

proper meaning and scope of HTSUS terms," Warner-Lambert Co. v. United

States, 407 F.3d 1207, 1209 (Fed. Cir. 2005) (citing Rocknel Fastener, Inc. v.

United States, 267 F.3d 1354, 1358 (Fed. Cir. 2001)), and must determine

"whether the government's classification is correct, both independently and in

comparison with the importer's alternative." Jarvis Clark Co. v. United States, 733

F.2d 873, 878 (Fed. Cir. 1984).  As explained above, the classification of

merchandise under the HTSUS is governed by the principles set forth in the GRIs

and the ARIs.  See Orlando Food Corp., 140 F.3d at 1439.  The GRIs are applied

in numerical order, and the court may only apply subsequent GRIs if the

classification of the imported goods cannot be accomplished by reference to a

preceding GRI.  Carl Zeiss, Inc., 195 F.3d at 1379; Mita Copystar Am. v. United

States, 160 F.3d 710, 712 (Fed. Cir. 1998).  GRI 1 states that "for legal purposes,

classification shall be determined according to the terms of the headings and any

relative Section or Chapter Notes and, provided such headings or Notes do not

otherwise require, according to the [remaining GRIs.]" GRI 1, HTSUS.

The Court observes that Plaintiff's argument regarding the apparent intent of

USTR as the "drafters of the exclusion language" is ambiguous at best.  The

HTSUS Chapter Notes and the Federal Register notice regarding the Section 301

exclusion provisions do not state that a principal use analysis is prohibited, nor do

the provisions state that the GRIs and ARIs shall not be applied.  The Section 301

exclusion provisions also do not attempt to impose any standards of review that

might apply to the U.S. Court of International Trade or the U.S. Court of Appeals

for the Federal Circuit ("CAFC").

Moreover, the Court notes that the Government argued in its briefs and

during oral argument that the Section 301 exclusion provision at issue was a

principal use provision, Def.'s Br. at 13–27; Def.'s Opp. 2–4, rather than

advocating for Keystone's view that USTR was a "drafter" who intended for the Court to avoid a principal use and *eo nomine* analysis. If USTR's intent in drafting the Section 301 tariff exclusion provision was to circumvent the principal use and *eo nomine* analysis, then presumably the Defendant would have made this argument before the Court as an advocate on behalf of the Government. The U.S. Department of Justice would have been in the best position to clarify any drafting intent held by its client agency USTR in written briefs and oral arguments before this Court. Instead of advocating for USTR's supposed intent that Keystone espouses, the Government made the contrary argument that the Section 301 exclusion was a principal use provision.

The Court holds that there is no basis to depart from the standard rules of tariff interpretation for the Section 301 exclusion provisions. No precedential support for Keystone's proposed standard of review exists. To the extent that Plaintiff moves this Court to reconsider and grant Plaintiff's motion for summary judgment on the basis of this novel theory, Plaintiff's motion is denied. The Court's prior ruling denying the cross-motions for summary judgment, holding that U.S. Note 20(iii)(213) to Subchapter III of Chapter 99 of the HTSUS is a principal use provision, and setting this case for a bench trial remains unchanged.

## IV.    Certification for Interlocutory Appeal

In the alternative, Keystone asks that the court certify the following question

for interlocutory appeal to the CAFC pursuant to 28 U.S.C. § 1292(d)(1):

> Whether the language of the Federal Register notice requires that the
> product qualifies for the exclusion if it is simply capable of being
> described by the exclusion language and does not require analysis under
> GRIs and ARIs as *eo nomine* or principal use provision given that GRIs
> and ARIs are applied unless context otherwise requires.

Pl.'s Mot. at 15–16.  Before a court certifies an issue for interlocutory appeal, there

must be (1) "a controlling question of law on which there is substantial difference

of opinion; and (2) immediate appeal must materially advance the ultimate

termination of the litigation."  Totes-Isotoner Corp., 32 CIT at 1180, 580 F. Supp.

2d at 1379 (citing Volkswagen of Am., Inc. v. United States, 22 CIT 280, 284, 4 F.

Supp. 2d 1259, 1263 (1998)).  Keystone must satisfy both elements for this Court

to consider certifying its question for interlocutory appeal.  See Irwin Indus. Tool

Co., 269 F. Supp. 3d at 1300 (noting that "a court has the discretion to grant a

motion to reconsider brought under Rule 54(b)").  Keystone fails to satisfy this

two-part standard.

To determine if a 'substantial ground for difference of opinion' exists under

§ 1292(b), courts must examine to what extent the controlling law is unclear."

Couch v. Telescope Inc., 611 F.3d 629, 633 (9th Cir. 2010).  A substantial ground

for difference of opinion exists when "the circuits are in dispute on the question

and the court of appeals of the circuit has not spoken on the point, if complicated

questions arise under foreign law, or if novel and difficult questions of first

impression are presented." Id. (quoting 3 Federal Procedure, Lawyers Edition §

3:212 (2010)).  The losing party's mere disagreement with the ruling is not enough.

See Totes-Isotoner Corp., 32 CIT at 1180, 580 F. Supp. 2d at 1379 (citing First

Am. Corp. v. Al–Nahyan, 948 F.Supp. 1107, 1116 (D.D.C. 1996)).

Keystone's argument in support of its unique interpretation theory is devoid

of any conflicting law.  Keystone points to no circuit split or inconsistent opinions

within this jurisdiction.  While this may be an issue of first impression in the sense

that "neither this Court nor any other court in the United States has addressed the

applicability of Section 301 tariff exclusions in the past," Pl.'s Reply at 13, this is

not the first new tariff provision or exclusion to be implemented.  As noted in the

section above, Keystone has failed to cite any support for its assertion that a certain

phrase or term in any Federal Register notice can supplant the standard rules

governing interpretation of the HTSUS or that the courts must start anew in

defining standards of review each time a new tariff provision or exclusion is

implemented.

Although Keystone has failed to show that any substantial ground for

difference of opinion exists, even if Keystone's proposed question was certified for

appeal, it would not "materially advance the ultimate termination of the litigation."

Totes-Isotoner Corp., 32 CIT at 1180, 580 F. Supp. 2d at 1379.  In determining

whether an interlocutory appeal would materially advance the ultimate termination

of the litigation, the court "must assess the probability that its decision, of which an

immediate appeal is sought, is in error as well as the extent to which additional

time and expense may be saved by an interlocutory appeal."  Marsuda-Rodgers

Int'l v. United States, 13 CIT 886, 887 (1989).

        Keystone is proposing that this Court abandon long-standing precedent on

statutory interpretation of HTSUS provisions and apply a new interpretative

theory.  If the CAFC accepted Keystone's appeal, it would need to adopt

Keystone's novel, unsubstantiated theory and set forth new legal standards for this

Court to apply to the facts of this case.  Not only is that unlikely, but it also would

not put this case on the fast-track to termination.  The CAFC would likely remand

the case back to this Court with a new legal standard, and the Court would

essentially start all over again to apply new law.

        Because Keystone failed to satisfy both conditions for interlocutory appeal,

the Court denies Keystone's motion to amend and certify for interlocutory appeal

and for stay of proceedings pending appeal.

## CONCLUSION

Accordingly, it is hereby

**ORDERED** that Plaintiff's Motion for Reconsideration, ECF No. 69, is granted in part and denied in part, and it is further

**ORDERED** that Plaintiff's Motion to Amend and Certify Order for Interlocutory Appeal and for Stay of Proceedings Pending Appeal, ECF No. 69, is denied, and it is further

**ORDERED** that a bench trial will be held on a date to be determined.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated:      April 18, 2025
           New York, New York